UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
WESTPORT INSURANCE CORPORATION,

                Plaintiff,

    -against-

PATRICIA HENNESSEY, ESQ., and COHEN,
HENNESSEY, BIENSTOCK & RABIN, P.C.
f/k/a COHEN, HENNESSEY, BIENSTOCK, P.C.,

                Defendants.

-------------------------------------------------------------------X

Case No.:  07 CIV 06726

# Memorandum of Law in Support of Plaintiff and Counterclaim-Defendant Westport Insurance Corporation's Motion for Summary Judgment

WILSON, ELSER, MOSKOWITZ, EDELMAN &
DICKER, LLP
Attorneys for Plaintiff and Counterclaim-Defendant
WESTPORT INSURANCE CORPORATION
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000
File No.: 005302.00249

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 2

STATEMENT OF FACTS ................................................................................................... 3

SUMMARY JUDGMENT STANDARD ............................................................................. 6

ARGUMENT ........................................................................................................................ 8

POINT ONE

EXCLUSION B, THE PRIOR KNOWLEDGE PROVISION OF
THE 2006 POLICY, PRECLUDES COVERAGE OF THE
UNDERLYING ASHER MALPRACTICE ACTION .......................................................... 8

POINT TWO

EXCLUSION B OF THE 2006 POLICY IS CLEAR AND UNAMBIGUOUS AND
MUST BE ENFORCED ACCORDINGLY .......................................................................... 20

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

American Home Products Corp. v. Liberty Mutual Insurance Co., 565 F. Supp. 1485 (S.D.N.Y. 1983), aff'd as modified, 748 F.2d 760 (2d Cir. 1984) .....................21

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986) ...........................7

Bickerstaff v. Vassar College, 196 F.3d 435 (2d Cir. 1999) ...............................................7

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ................................................................6, 7

Chubb Insurance Co. v. Hartford Fire Insurance Co., 1999 U.S. Dist. LEXIS 15362, 97 Civ. 6935, 1999 WL. 760206 (S.D.N.Y. Sept. 27, 1999) ..........................20

Constitution Reins. Corp. v. Stonewall Insurance Co., 980 F. Supp. 124 (S.D.N.Y. 1997), aff'd without opinion, 182 F.3d 899 (2d Cir. 1999) (citing Freedom Gravel Prods., Inc. v. Michigan Mut. Ins. Co., 819 F.Supp. 275, 277 (W.D.N.Y. 1993) ......................................................................................................7

Coregis Insurance Co. v. Wheeler, 24 F. Supp. 2d 475 (E.D. Pa. 1998) ...........................22

Ehrgood v. Coregis Insurance Co., 59 F. Supp. 2d 438 (M.D.Pa. 1998) ..........................22

Goldberger & Dubin, 2006 U.S. Dist. LEXIS 31329 (S.D.N.Y.2006) ............11, 12, 13, 14

Knight v. U.S. Fire Insurance Co., 804 F.2d 9 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570 (1987) ...................................................................................7

Mt. Airy Insurance Co. v. Thomas, 954 F. Supp. 1073 (W.D.Pa. 1997) ...........................11

Murphy v. Coregis Insurance Co., 1999 U.S. Dist. LEXIS 12617, 1999 WL. 627910 (E.D.Pa. 1999) ....................................................................................................22

Sirignano v. Chicago Insurance Co., 192 F. Supp. 2d 199 (S.D.N.Y. 2002) ........16, 17, 19

Sparacino v. Pawtucket Mutual Insurance Co., 50 F.3d 141 (2d Cir. 1995) .....................17

St. Pierre v. Dyer, 208 F.3d 394 (2d Cir. 2000) ..................................................................7

Steadfast Insurance Co. v. Stroock & Stroock & Lavan LLP, 277 F. Supp. 2d 245 (S.D.N.Y. 2003) ...........................................................................................................20

Vella v. The Equitable Life Assurance Society, 887 F.2d 388 (2d Cir. 1989) ..................20

Wenstock v. Columbia University, 224 F.3d 33 (2d Cir. 2000)..........................................7

Westport Insurance Corp. v. Mirsky, et.. al., 2002 U.S. Dist. LEXIS 16967
    (E.D.Pa. 2002)..................................................................................................22

Westport v. Goldberger & Dubin, No. 04 Civ. 4384, 2006 U.S. Dist. LEXIS
    31329 (S.D.N.Y.2006) ...............................................................................9, 10

### STATE CASES

30 W. 15th St. Owners Corp. v. Travelers Insurance Co., 165 A.D.2d 731, 563
    N.Y.S.2d 784 (1990)........................................................................................20

American Home Assurance Co. v. Port Authority of N.Y. & N.J., 66 A.D.2d 269,
    412 N.Y.S.2d 605 (1st Dep't 1979).................................................................20

Bellefonte Insurance Company v. Albert, 472 N.Y.S.2d at 636.......................................21

Breed v. Insurance Co. of N. America, 46 N.Y.2d 351, 413 N.Y.S.2d 352, 185
    N.E.2d 1280 (1987)..........................................................................................18

Bretton v. Mutual of Omaha Insurance Co., 110 A.D.2d 46, 492 N.Y.S.2d 760
    (1st Dep't), aff'd, 66 N.Y.2d 1020, 499 N.Y.S.2d 397, 489 N.E.2d 1299 91985 ........18

Campagna & Langella v. Certain Underwriters at Lloyd's, London, 305 A.D.2d
    526 (N.Y. App. Div., 2003) ..............................................................................20

Caparino v. Travelers Insurance Co., 62 N.Y.2d 234, 476 N.Y.S.2d 519, 465
    N.E.2d 26 (1984)..............................................................................................18

Fogelson v. Home Insurance Company, 129 A.D.2d 508, 514 N.Y.S. 2d 346 at
    349 (1st Dep't. 1987) .......................................................................14, 15, 16, 21, 22

Ingalsbe v. Chicago Insurance Co., 270 A.D.2d 684  704 N.Y.S.2d 698 (3d Dep't
    2000) .............................................................................................17, 18, 19

Security Mutual Insurance Co. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 340
    N.Y.S.2d 902....................................................................................................18

### DOCKETED CASES

Avondale Industrial, Inc. v. Travelers Indemnity Co., No. 887 .......................................21

### FEDERAL STATUTES

Fed. R. Civ. P. 56...............................................................................................................6

iii

## PRELIMINARY STATEMENT

Plaintiff/Counterclaim Defendant Westport Insurance Corporation (hereinafter referred to as "Westport" or the "Plaintiff") respectfully submits this Memorandum of Law in support of its motion for an order granting summary judgment against defendants Patricia Hennessey, Esq., and Cohen, Hennessey, Bienstock & Rabin, P.C., f/k/a Cohen, Hennessey, Bienstock, P.C. (hereinafter referred to as the "Defendants" or "Insured") and declaring as follows:

a.    Based upon Exclusion B of the Lawyers Professional Liability Renewal Policy, No. NRL-004960-8 for the period of, and for claims between March 14, 2006 and March 14, 2007 (hereinafter referred to as the "2006 Policy"), Plaintiff Westport is not obligated to afford coverage to the Defendants, in whole or in part, including defense or indemnity, for the lawsuit entitled <u>Jayne Asher v. Patricia Hennessey, Esq. and Cohen, Hennessey, Bienstock, P.C.</u>, filed in Supreme Court for the State of New York, County of Westchester, Index No. 1361/07; and

b.    For such other and further relief the Court may deem just and proper.

As discussed more fully below, the Defendants were aware, prior to the inception of the 2006 Policy, of their failure to make a timely election on behalf of Mrs. Asher to the ownership of certain life insurance policies of her ex-husband, and that said failure resulted in Mrs. Asher's inability to retain ownership of the policies. This would cause any reasonable attorney to anticipate that such error might be expected to form the basis of a malpractice claim in the future. Thus, coverage for Mrs. Asher's malpractice action against the Defendants is precluded by Exclusion B of the 2006 Policy and Westport's motion for summary judgment must be granted, with the Court declaring that the Defendants are not afforded coverage by Westport for defense or indemnity of Mrs. Asher's malpractice action.

2

## STATEMENT OF FACTS

A detailed statement of the facts may be found in Westport's accompanying Rule 56.1 Statement of Facts. A summary of the relevant facts follows.

Westport issued Defendants a Lawyers Professional Liability Policy for professional malpractice claims made against the defendant firm and its individual attorneys, all defendants herein, under the Policy No. NRL-004489-2. Westport renewed the aforesaid Lawyers Professional Liability Policy under a Renewal Policy No. NRL-004960-8 (referred to as the "2006 Policy") for the period of, and for claims made between March 14, 2006 and March 14, 2007. Exhibit "A".[1]

The 2006 Policy states, in pertinent part, that:

> This Policy does not apply to:
> ***
>
> B.    any CLAIM arising out of any act, error, omission or PERSONAL INJURY occurring prior to the effective date of this policy if any INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission of PERSONAL INJURY might be expected to be the basis of a CLAIM or suit;

(Exhibit "A" at p.4).

On or about July 26, 2006, Westport received notice of a claim made against the defendant law firm and/or its individual attorneys by Jayne Asher, who the defendant firm represented in an underlying divorce proceeding. Exhibit "B". By letter to defendants dated August 11, 2006, Westport acknowledged receipt of notification of the Asher claim. Exhibit "C".

---

[1]  All exhibits referred to hereinafter are attached to Westport's accompanying Rule 56.1 Statement of Facts and shall be referred to as "Exhibit "__".

Jayne Asher ultimately commenced an action sounding in legal malpractice against the Defendants in Supreme Court of the State of New York, New York County, Index No.: 1361/07 on or about January 23, 2007. The action arises out of Defendants' legal representation of Mrs. Asher in her divorce proceeding. Exhibit "D".

The Asher complaint alleges "That during the course of Defendants' representation of Plaintiff in the divorce action, a Stipulation of Settlement (the "Stipulation"), negotiated and approved by Defendants HENNESSEY and CHB was entered into by Jayne and Sanford Asher on or about October 15, 2002." See Exhibit "D" at ¶ 13. The Asher complaint further alleges that by the terms of the Stipulation, Mrs. Asher was given the right to elect, upon the terms and conditions set forth in the Stipulation, to assume and/or continue ownership of certain life insurance policies on the life of her ex-husband Sanford Asher. See Exhibit "D" at ¶ 14. The Asher complaint also alleges "That Defendants, and each of them, failed to timely exercise Plaintiff's right of election to the life insurance policies" and "That by reason of Defendants' failure to timely exercise the rights of election, Plaintiff was barred from doing so and lost the benefit of the life insurance policies." See Exhibit "D" at ¶¶ 17, 18.

The complaint references a February 24, 2004 Appellate Division, First Department decision in the underlying divorce proceeding, which determined fully and finally that Mrs. Asher was not entitled to ownership of her ex-husband's life insurance policies, concluding therein that she failed to timely and properly exercise her rights of election. See Exhibit "D" at ¶ 25. The February 24, 2004 Appellate Division, First Department decision, which was issued more than two years before the effective date of the subject policy, concluded that "the wife failed to exercise her right of election to receive or retain either policy within the allotted time and the husband's attorney notified the wife's attorney that the term life policy would remain

4

with the husband and that the wife was required to transfer to the husband the whole life policy."

Exhibit "E." The decision further notes that she was to have done so by February 1, 2003

pursuant to Article IX of the Stipulation. Id.

Soon after receipt of the Asher complaint, Westport began its evaluation of insurance

coverage for the claim. Following its investigation, it sent Defendants a reservation of rights

letter, dated March 22, 2007, reserving all of its rights to investigate and possibly deny coverage.

Exhibit "F".

Westport continued its investigation of Mrs. Asher's claim. During this investigation, it

obtained certain correspondence between the Defendants and counsel for Mr. Asher in the

divorce proceeding. One such correspondence is dated January 28, 2003, six days before the

deadline for Mrs. Asher to make the subject election. The correspondence is from Mr. Asher's

attorney, Lawrence M. Nessenson, and is addressed to defendant Patricia Hennessey, Esq.,

attorneys for Mrs. Asher. The correspondence states "There are several issues/elections under

the Stipulation of Settlement which are coming up," and he advises that "we are waiting for

Jayne to make her election regarding the life insurance policies." Exhibit "G".

At the conclusion of its investigation, and on or about July 11, 2007, Westport sent

Defendants its final reservation of rights letter. The letter states in pertinent part "...we must

now advise you that pursuant to Exclusion B, the policy does not afford coverage for this claim."

The letter continues

> As you are aware, this claim arises from Cohen, Hennessey,
> Bienstock & Rabin's representation of Jayne Asher in an
> underlying divorce proceeding. As part of the representation, Ms.
> Hennessey took part in negotiating and approving a Stipulation of
> Settlement on or about October 15, 2002. According to the terms

5

> of the Stipulation, Ms. Asher had a deadline of February 1, 2003,
> to make an election to the ownership of certain life insurance
> policies owned by Mr. Asher. Despite correspondence being sent
> between each of the attorneys of record regarding the upcoming
> deadline, Ms. Asher and her attorney, Ms. Hennessey, failed to
> make a timely election. Ms. Hennessey continued her efforts to
> convince the courts that the parties were in continued negotiations
> in relation to the policies, and thus, the election was not untimely.
> However, when the process was complete, the New York,
> Appellate Division, First Department, issued an Order on February
> 24, 2004, ruling that Ms. Asher lost her right of election to the life
> insurance policies in question due to the failure to comply with the
> February 1, 2003, deadline.

Exhibit "H".

The letter further states "there is objective evidence that you were aware of an act, error, or omission which you knew or could reasonably foresee might be expected to be the basis of a claim or suit against you when the February 24, 2004 Appellate Division Order found that Ms. Asher lost any rights to the policies due to the failure to comply with the Stipulation. This was known prior to the Westport policy effective date of March 14, 2006. Therefore, Exclusion B precludes coverage for the suit subsequently filed by the plaintiff." See Exhibit "H".

Notwithstanding its coverage position, Westport has paid for and continues to pay for the Defendants' defense in the malpractice suit brought against them by Mrs. Asher under the relevant policy of insurance.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56. Rule 56 of the Federal Rules of Civil Procedure requires the party opposing summary judgment to set forth specific, significant facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Although the moving party bears the

6

initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. See Wenstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505 (1986). However, the mere existence of disputed factual issues is insufficient to defeat a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11-12 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570 (1987). The disputed issues of fact must be "material to the outcome of the litigation." Id. at 11. The non-moving party may not rest upon mere allegations or denials. St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir. 2000). Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment. Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999).

Moreover, "[s]ummary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. at 327. In fact, "[s]ummary judgment is particularly appropriate in resolving insurance coverage disputes, because the interpretation of an insurance policy presents a question of law." Constitution Reins. Corp. v. Stonewall Ins. Co., 980 F.Supp 124, 127 (S.D.N.Y. 1997), aff'd without opinion 182 F.3d 899 (2d Cir. 1999) (citing Freedom Gravel Prods., Inc. v. Michigan Mut. Ins. Co., 819 F.Supp. 275, 277 (W.D.N.Y. 1993).

**ARGUMENT**

**POINT ONE**

**EXCLUSION B, THE PRIOR KNOWLEDGE PROVISION OF
THE 2006 POLICY, PRECLUDES COVERAGE OF THE
UNDERLYING ASHER MALPRACTICE ACTION**

Insofar as the Defendants knew before the 2006 Policy took effect of their failure to make

a timely election on behalf of Mrs. Asher to the ownership of certain life insurance policies of

her ex-husband, and that said failure resulted in her inability to retain ownership of the policies,

the Defendants should have reasonably foreseen that a malpractice claim would be made against

them by Mrs. Asher.   Accordingly, this Court should declare and rule that Westport is not

obligated to afford coverage to the Defendants for Mrs. Asher's malpractice action pursuant to

Exclusion B of the 2006 Policy.

Exclusion B provides as follows:

> This Policy does not apply to:
> ***
> B.  any CLAIM arising out of any act, error, omission or PERSONAL
>     INJURY occurring prior to the effective date of this policy if any
>     INSURED at the effective date knew or could have reasonably
>     foreseen that such act, error, omission of PERSONAL INJURY
>     might be expected to be the basis of a CLAIM or suit;

Exhibit "A" at p.4.

Exclusion B precludes coverage for a claim if the Insured had knowledge prior to the

inception of the 2006 Policy of an act, error or omission that they knew or could reasonably have

foreseen would give rise to a claim or suit.  Defendants clearly had knowledge of their failure to

timely exercise Mrs. Asher's right to elect her ex-husband's life insurance policies and that said

failure resulted in Mrs. Asher being barred from retaining the policies.  This would cause any

8

reasonable attorney to anticipate that such error might be expected to form the basis of a malpractice claim in the future. Thus, coverage for Mrs. Asher's malpractice action against the Defendants is precluded by Exclusion B of the 2006 Policy.

In a case virtually identical to the case at bar, involving the exact same exclusion as that contained in the 2006 Policy, the Southern District granted the insurer's motion for summary judgment seeking a declaration that it is not obligated to provide the defendants/insureds coverage under the exclusion, due to the fact that the insured knew of its error and that a reasonable person aware of the error could reasonably expect that a malpractice claim might result. See Westport v. Goldberger & Dubin, No. 04 Civ. 4384, 2006 U.S. Dist. LEXIS 31329, (S.D.N.Y.2006).

In Goldberger, Westport issued a professional liability insurance policy to Goldberger & Dubin, P.C. in 1999. Id. at *2. The 1999 Policy covered claims made between May 12, 1999 and May 12, 2000, and was subsequently renewed for another year. Id. Although the effective date of the 1999 Policy was May 12, 1999, both the 1999 and 2000 policies provided for coverage retroactive to May 12, 1993, subject to certain exclusions, including the exact exclusion at issue in this lawsuit. Id. The Policy provided:

> This Policy does not apply to:
>
> B.    any CLAIM arising out of any act, error, omission, or PERSONAL INJURY occurring prior to the effective date of this policy if any INSURED at the effective date knew or could reasonably foreseen that such act, error, or omission or PERSONAL INJURY might be expected to be the basis of a CLAIM or suit;

Id. at **2-3.

On September 22, 2000, Goldberger & Dubin notified Westport of circumstances related to their representation of Joanne Latona and the estate of her husband in a personal injury and

9

wrongful death lawsuit. Id. at **3-4. Upon being retained by Mrs. Latona, Goldberger & Dubin referred the matter to another attorney, Samuel Kelner. Id. at *4. In or about August 1998, Kelner advised Goldberger & Dubin that he had not commenced a wrongful death action against Chrysler within the applicable statute of limitations. Id. Shortly thereafter, Goldberger & Dubin advised Mrs. Latona's son of the error. The Latona's advised Goldberger & Dubin that they would not bring a malpractice claim against them. Id.

On December 2, 2003, Mrs. Latona commenced a legal malpractice action against Goldberger & Dubin. Id. at **4-5. By correspondence dated January 15, 2004, Westport advised Goldberger & Dubin that it reserved its right to deny coverage for the malpractice based on Exclusion B. Id. at *5. Westport subsequently filed an action similar to the case at bar wherein it moved for summary judgment seeking a declaration that it is not obligated to provide Goldberger & Dubin with coverage for the malpractice action. Id. at ** 1-2.

The Southern District determined that it was undisputed that a wrongful death action was not timely commenced against Chrysler within the applicable statute of limitations, and that as a result, the claim against Chrysler was dismissed. This Court further determined that Goldberger & Dubin knew of the dismissal. In granting Westport's motion in its entirety, this Court found that an objective standard applied in interpreting Exclusion B. In so doing, it determined that a reasonable person aware of the subject facts could reasonably expect that a malpractice claim might result. As such, the Southern District granted Westport's motion for summary judgment, declaring that based on Exclusion B of the Lawyers Professional Liability Renewal Policy, Westport was not obligated to afford coverage to Goldberger & Dubin, in whole or in part, including defense or indemnity, for the Latona lawsuit.

10

In granting plaintiff's motion in <u>Goldberger</u>, this Court relied on <u>Mt. Airy Ins. Co. v. Thomas</u>, 954 F.Supp 1073 (W.D.Pa. 1997). <u>Goldberger & Dubin</u>, 2006 U.S. Dist. LEXIS 31329, **90-13 (S.D.N.Y.2006). The <u>Mt. Airy</u> court upheld a prior knowledge exclusion <u>identical</u> to the subject Exclusion B excluding:

> any CLAIM arising out of any act, error, omission or PERSONAL INJURY occurring prior to the effective date of this policy if any INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission or PERSONAL INJURY <u>might be expected to be the basis</u> of a CLAIM or suit.

<u>Id. at 1075</u> (emphasis added); Westport's Rule 56.1 Statement of Undisputed Facts, dated September 15, 2004 ("Pl.'s Rule 56"), Ex. "A" at p. 4.

The court applied the exclusion to a claim against the insured lawyer arising out of the dismissal of an action for failure to prosecute a suit filed by the insured. The dismissal occurred prior to the policy period at issue in the case. The court ruled that the objective, reasonable man standard applied to what the insured knew prior to the policy, i.e. that the suit had been dismissed due to his inactivity, rather than a subjective standard based on the insured's beliefs or impressions of whether the client would subsequently sue him.

In <u>Mt. Airy</u>, Watt retained the insured lawyer in connection with his personal injury claims against National Freight, Inc., Kalis Konstanti and Stylianos Krontiris. Thomas then filed a praecipe for writ of summons on August 29, 1980. On October 9, 1980, service was made against National Freight, Inc., Konstanti. Service was never made on Krontiris.

The court docket did not indicate further activity by the insured until approximately eight years later, when on January 25, 1989, the insured filed its complaint. National Freight and Konstanti filed answers, in which they raised the defense of failure to prosecute. <u>Id</u>. at 1074-75. The insured failed to timely respond, and there was no indication of further activity until April

11

28, 1992 when a certificate of inactivity was filed on behalf of National Freight, Konstanti and Krontiris. The insured then filed a praecipe for trial on June 19, 1992.

In July of 1992, National Freight and Konstanti filed a motion to dismiss Watt's complaint, which was granted with prejudice, on December 31, 1992, for failure to timely prosecute. Id. at 1075. The court dismissed Krontiris for lack of service. The insured's appeal failed for procedural deficiencies. Watts thereafter commenced a malpractice claim against the insured for his failure to timely prosecute, among other things.

The insured law firm was granted a renewal of his claims-made professional liability insurance policy, effective June 1, 1994, by Mount Airy Insurance Company ("Mt. Airy"). In its application, the insured answered "No" when asked whether the applicant was aware of any claim, incident, act or omission or personal injury which "might be an expected basis of a claim" or suit that has not previously been reported. Id. at 1075. The Mt. Airy policy also contained an exclusion that is indistinguishable from Exclusion B in the Westport Policy.

Mt. Airy argued that its policy excluded coverage for Watt's malpractice action "since the insured was aware of, and failed to disclose, the information forming the basis of that action." Id. Based on the insured's handling of Watt's case, Mt. Airy reasoned, the insured knew or could have reasonably foreseen that he could be subject to a malpractice claim. Id.

The insured claimed that "based on [his] conversation with Watt, [he] did not believe Watt intended to file a claim." Id. at 1076. The insured urged the court to take into account his subjective beliefs and impressions in considering whether a lawyer with his knowledge of the facts should have foreseen that a claim might be filed against him. In contrast, Mt. Airy argued that the policy and the exclusion call for an objective evaluation, and the court agreed. Id.

12

In granting Mt. Airy's motion for summary judgment and adopting the "objective standard," the court "distinguish[ed] between facts which are known to an attorney, which facts, when viewed by a reasonable person, could give rise to a claim of malpractice, and impressions which lead the attorney to believe that the client will not pursue a claim for malpractice." Id. at 1079. "In the first instance," the court added, "the fact that an attorney has failed to prosecute a claim . . . to the extent that a court dismisses the complaint with prejudice . . . would give a reasonable person a basis to believe that a breach of a professional duty has occurred. The subjective impression or belief of the attorney, based on his perceived relationship with his client or otherwise, as to whether the client will actually pursue a malpractice claim against him falls into the second category." Id. (emphasis added). The court held that "it is this second category of subjective belief or impression" that is not applicable to its inquiry. Id.

The court further stated that:

> [i]n so holding, we are compelled to define clearly our interpretation of objective and subjective knowledge to avoid the type of untenable situation which concerned [another] court. An objective standard would take into account facts or information the attorney knew or possessed. A subjective standard would include beliefs, impressions, perceptions and feelings which may arguably color the attorney's view of the facts. Such subjective information could too easily be related after the fact to excuse an attorney's failure to report known potential claims.
>
> In the context of the insurance arena, a subjective standard would defeat the ability of an insurance company to assess risk prior to issuing insurance. Clearly, the assessment of risk is a critical function which affects the determination of whether to issue coverage at all and, if so, at what premium. As a matter of public policy, courts cannot allow the insured to perform this risk analysis function instead of the insurer....
>
> The language of the Renewal Application and Claim/Incident Disclosure Form together with the Policy Exclusion call for an attorney to disclose any claims, incidents, acts, errors or omissions which might or could result in a malpractice claim. The language "knew or could have reasonably foreseen" is phrased in such a way that it refers back to the incident, act, error or omission language. Thus, if an attorney knows of

13

an act, error, incident or omission and knew or could have reasonably expected that it would result in a malpractice claim, then that incident would have to be disclosed when applying for coverage. If not disclosed, the incident would be excluded from coverage.

<u>In the instant case, the defendant knew that he had not acted to prosecute his client's claim . . . and knew that the court had dismissed the client's complaint on that basis. These facts are undisputed. A reasonable person aware of these facts could expect that a malpractice claim might result. Any dispute over whether the defendant believed, on the basis of his relationship with his client or his impression of that client's reaction to the situation, that the client would make a claim is not relevant to our analysis.</u>

Id. at 1079-80 (emphasis added).

In the case at bar, it is clear that having been aware of their failure to make a timely election of Mrs. Asher's ex-husband's life insurance policies in February 2004, and the resulting barring of Mrs. Asher to retain the policies, Defendants had knowledge of an act, error or omission. It is also clear that prior to the inception of the 2006 Policy, a reasonable person would have foreseen that the act, error or omission would give rise to a malpractice claim or suit. As such, this Court should follow the prior ruling in the <u>Goldberger</u> case, and find that Westport is not obligated to afford coverage based upon Exclusion B of the Policy.

In another case similar to the case at bar, the court found in favor of an insurer's disclaimer of coverage because of the insured lawyer's prior knowledge. In fact, the court even ruled that an insurer may exclude coverage "where plaintiffs [insureds] clearly have a basis to believe that they have breached a professional duty which might reasonably be foreseen to be the basis of a claim or suit." <u>Fogelson v. Home Ins. Company,</u> 129 A.D.2d 508; 514 N.Y.S. 2d 346 at 349 (1st Dep't. 1987).

In <u>Fogelson,</u> the plaintiff/insured brought a declaratory judgment action to determine which insurer was obligated to defend and indemnify them in relation to a malpractice claim.

14

The malpractice action against the insured arose out of the insured's representation of the Farrells in a mortgage foreclosure action in 1980. The insured failed to timely file an answer, a default judgment was rendered against the client, and the insured was unsuccessful in vacating the default over the next four years. Id. at 347. On April 30, 1984, the Farrells told the insured that they had been advised by another attorney "to consider the possibility of instituting a malpractice action against the insured." Id.

The insurer's "claims made" professional liability policy took effect on October 5, 1983. Id. Almost identical to Exclusion B of the 2006 Policy, the policy in the Fogelson case contained the following language:

> This policy does not apply to any claim arising out of any acts or omissions occurring prior to the effective date of this policy if the Insured at the effective date knew or could have reasonably foreseen that such acts or omissions might be expected to be the basis of a claim or suit.

Id.

The Farrells notified the insured of their intention to file a malpractice action on December 20, 1984 and subsequently filed said action on February 7, 1985. Id. at 348. The insured then instituted a declaratory judgment action against insurer, where the trial court granted the insured's summary judgment motion and found that the insurer was obligated to defend and indemnify the insured in the malpractice action. Id. at 347. In reversing the trial court's finding and holding that the insurer was not obligated to defend or indemnify the insured, the appellate court noted that prior to the inception of the policy, the insureds had prior knowledge of their error.

The court upheld the insurer's disclaimer as a result of the insured's prior knowledge of its error and stated as follows:

15

> The [insurer] did not have to issue any policy at all to the plaintiffs [insured], and had the right in the policy it did issue to exclude coverage for acts committed prior to [the inception date of] October 5, 1984, where plaintiffs clearly had a basis to believe that in 1980 they had breached a professional duty which might reasonably be foreseen to be the basis of a claim or suit.

Id. at 349.

In the same vein, in Sirignano v. Chicago Ins. Co., 192 F.Supp.2d 199 (S.D.N.Y. 2002), the insured lawyer's prior knowledge of the dismissal of a medical malpractice case brought for his client led to a finding of no coverage under a professional liability policy. In Sirignano, Miller retained the plaintiff/insured to bring a medical malpractice action. On September 15, 1997, when the matter was scheduled for trial, both parties answered "ready" at the call of the trial calendar. Id at 202. However, because plaintiff had failed to provide his opponent with expert reports prior to trial, the judge marked the case off calendar. Id. After a fifteen-month standstill, defense counsel moved for an order dismissing the case as abandoned, and on January 14, 1999, the court entered judgment dismissing the action. Id.

The insured's efforts to vacate the dismissal proved unsuccessful. His motion to vacate was denied by the trial judge on April 29, 1999; the Second Department affirmed the dismissal on January 3, 2000, and by autumn of 2000, the insured's motion for leave to appeal to the New York Court of Appeals was denied. Id. Then, on October 31, 2000, the insured notified his malpractice carrier that "there was a chance that Mr. Miller may assert a claim against [him] although [Mr. Miller] has not given [him] any such indication." Id. Shortly thereafter, Miller brought a malpractice action against the insured. After a review of the insured's file, the carrier denied coverage. The insured instituted an action for declaratory judgment, and the insurer argued that it was not obligated to afford coverage to the insured law firm based upon Condition B of the relevant policy, which states, in relevant part, as follows:

16

> B.  Assistance and Cooperation of Insured in the Event of Claim or Suit: Upon the Insured becoming aware of any negligent act, error, omission or Personal Injury in the rendering of or failure to render Professional Services which could reasonably be expected to be the basis of a Claim covered hereby, written notice shall be given by the Insured, or its representative to the Company together with the fullest information obtainable as soon as practicable.

Id. at 202.

Observing that the insured failed to give his carrier notice of the potential claim until approximately 18-22 months after the trial court denied his motion to vacate the dismissal against his client, the court found the insured's unexcused delay in notifying his carrier unreasonable and in breach of the policy terms. Id. at 203 (citing Ingalsbe v. Chicago Ins. Co., 270 A.D.2d 684 at 685, 704 N.Y.S.2d 698 at 699 (3d Dep't 2000) (holding that the insured "had a reasonable basis upon which to report a potential claim to his malpractice carrier" when he knew that he had missed the statute of limitations on his client's claim)). Furthermore, the court made it clear that although the insured gave timely notice to the insurer of the claim against him, the insured was not entitled to coverage because he failed to give timely notice of the potential claim, which he was obligated to do pursuant to the terms of his professional liability policy. Sirignano, 192 F.Supp.2d at 202-203.  In New York, timely notice of potential claims is a condition precedent to coverage, and the insurer does not have to demonstrate that it was prejudiced by the delay. *Id.* at 203.  Moreover, the failure to provide timely notice of a potential claim will preclude coverage even if the insured subsequently provides timely notice of the claim. *See id.*

Noting that the insured's knowledge of the initial dismissal of the action was "alone sufficient to create the reasonable expectation of a malpractice claim," the court stated that "regardless of [insured's] subjective and conclusory claim...that he was unaware of any conduct

17

on his part which reasonably could give rise to a claim, the events which occurred in the [underlying] action between January and April 1999 are such that any reasonable attorney-insured could reasonably have expected a claim." Id. at 204 (citing Sparacino v. Pawtucket Mut. Ins. Co., 50 F.3d 141, 143 (2d Cir. 1995) (stating that "[t]he test for determining whether the notice provision has been triggered is whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim"); Security Mut. Ins. Co. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 442, 340 N.Y.S.2d 902, 907.

The court in Sirignano further held that

> under any objective view of the facts, there were a series of errors by [insured], each of which was clearly brought to his attention from the beginning to the middle of 1999, and all of which compromised his client's right to recover. It is hard to imagine what more, short of the filing of a complaint by the client, would be necessary to trigger the policy's notice of occurrence requirement. Indeed, to hold the foregoing facts insufficient would render the notice clause meaningless; and it is hornbook law that an insurance policy cannot be construed so as to render its terms meaningless or of no effect.

Id. at 204-05 (emphasis added) (citing Bretton v. Mutual of Omaha Ins. Co., 110 A.D.2d 46, 492 N.Y.S.2d 760, 763 (1st Dep't), aff'd, 66 N.Y.2d 1020, 499 N.Y.S.2d 397, 489 N.E.2d 1299 '91985); Caparino v. Travelers Ins. Co., 62 N.Y.2d 234, 239, 476 N.Y.S.2d 519, 521, 465 N.E.2d 26 (1984); Breed v. Ins. Co. of N. Am., 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 185 N.E.2d 1280 (1987)).

Just as the Sirignano insured had prior knowledge of a potential claim which vitiated his coverage, the Defendants herein had prior knowledge of their wrongful acts and should have reasonably foreseen a claim would be made against them.

A reasonable attorney-insured would foresee and even expect upon failing to timely exercise its client's right of election of her ex-husband's life insurance policies, which resulted in

18

the client being barred from retaining the policies, that it may be subject to a claim or suit by the injured party. Ingalsbe v. Chicago Ins. Co., 270 A.D.2d 684 at 685, 704 N.Y.S.2d 698 at 699 (3d Dep't 2000) (holding that the insured "had a reasonable basis upon which to report a potential claim to his malpractice carrier" when he knew that he had missed the statute of limitations on his client's claim); Sirignano, 192 F.Supp.2d at 205-206 (stating that "even if the injured party tells the insured that no claim will be made, that does not excuse a notice delay.").

In Ingalsbe, the plaintiff/insured procured a "claims made" professional liability insurance policy from Chicago Insurance Company ("CIC"), for claims made between September 30, 1995 and September 30, 1997. In July of 1997, the insured was sued for legal malpractice on the ground that on February 26, 1994, he negligently allowed the statute of limitations on a wrongful death claim to expire. CIC disclaimed coverage to the insured, and the insured filed an action for declaratory judgment seeking an order that the defendants[2] had a duty to defend and indemnify him. Id.

Modifying the trial court's ruling in part, the appellate court stated that

> [w]e agree with [the] Supreme Court's conclusions that since plaintiff knew in July 1994 that he had missed the wrongful death Statute of Limitations, he had a reasonable basis upon which to report a potential claim to his malpractice carrier.... [W]e agree with the court that since the [CIC] policy provides coverage for claims arising during the policy period or prior to the policy period provided that, inter alia, the insured had no reasonable basis to believe that he had breached a professional duty or to foresee that a claim would be made against him, that there is no coverage under the [CIC] policy.

Id. 270 A.D.2d at 685.

The same reasoning can be applied to the instant matter. The Defendants knew in February 2004 that Mrs. Asher was not entitled to ownership of her ex-husband's life insurance

---

[2] In addition to CIC, Plaintiff also included Home Insurance as a defendant in its action for declaration judgment. Home Insurance provided plaintiff with a "claims made" professional liability policy for claims made between 1984 and September 30, 1995.

19

policies due to their failure to make a timely election of the policies on Mrs. Asher's behalf. Thus, the Defendants had a reasonable basis prior to the inception of the 2006 Policy upon which to foresee a potential claim. Pursuant to Exclusion B, the Defendants are not entitled to coverage for Mrs. Asher's malpractice action.

**POINT TWO**

**EXCLUSION B OF THE 2006 POLICY IS CLEAR AND UNAMBIGUOUS AND MUST BE ENFORCED ACCORDINGLY**

Exclusion B in the 2006 Policy is clear and unambiguous and should, therefore, be enforced so as to exclude coverage to the Defendants for Mrs. Asher's malpractice claim.

It is well settled under New York law that "[a]n insurer's duty does not extend to claims that are not covered by the policy or that are expressly excluded from coverage, including those predating the policy or retroactive period." Campagna & Langella v. Certain Underwriters at Lloyd's, London, 305 A.D.2d 526, 527 (N.Y. App. Div., 2003) (citing 30 W. 15th St. Owners Corp. v. Travelers Ins. Co., 165 A.D.2d 731, 733, 563 N.Y.S.2d 784 (1990)). An insurer is obligated to afford coverage for a malpractice suit against its insured only where the underlying action falls within the scope of risk covered by the policy. Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP, 277 F.Supp.2d 245, 251 (S.D.N.Y. 2003) (citing Chubb Ins. Co. v. Hartford Fire Ins. Co., 1999 U.S. Dist. LEXIS 15362, No. 97 Civ. 6935, 1999 WL 760206, at *4 (S.D.N.Y. Sept. 27, 1999); American Home Assurance Co. v. Port Auth. of N.Y. & N.J., 66 A.D.2d 269, 412 N.Y.S.2d 605, 609 (1st Dep't 1979)).

In order to determine the scope of coverage afforded by an insurance policy "[c]ourts must examine both the insuring agreement and the exclusion clauses to determine the scope of protection afforded by the policy." Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP, 277

20

F.Supp.2d at 251 (citing Albert J. Schiff Assoc. v. Flack, 51 N.Y.2d 692, 697, 435 N.Y.S.2d 972, 417 N.E.2d 84 (1980)).

Ambiguities within an insurance policy are generally construed in favor of the insured. See generally Vella v. The Equitable Life Assurance Soc'y, 887 F.2d 388  (2d Cir. 1989). However, under New York law, "[a]n insurance policy is a contract which, like any other contract, must be construed to effectuate the parties' intent as expressed by their words and purposes." American Home Prods. Corp. v. Liberty Mutual Ins. Co., 565 F. Supp. 1485, 1492 (S.D.N.Y. 1983), aff'd as modified, 748 F.2d 760 (2d Cir. 1984). The terms of an insurance policy should be given "a natural and reasonable meaning." Avondale Indus., Inc. v. Travelers Indemnity Co., No. 887 F.2d 1200, 1206 (2d Cir. 1989).

Moreover, "[i]f the words of the contract are unambiguous, establishing only one meaning when read in the context of the entire policy, then a New York court must enforce the plain meaning of the words and refrain from making or varying 'the contract of insurance to accomplish its notions of abstract justice or moral obligation.'" American Home Prods., 565 F.Supp. at 1492 (quoting Breed v. Ins. Co. of North America, 46 N.Y.2d 351, 355, 385 N.E.2d 1280, 1283, 413 N.Y.S.2d 352, 355 (1978)).

New York case law has consistently enforced professional liability insurance policy provisions with similar language to that in Exclusion B in the 2000 Policy.  For example, in Bellefonte Insurance Company v. Albert, supra, the court upheld the insurer's disclaimer of coverage because the insured lawyer had prior knowledge of his failure to timely commence an action and the dismissal of that action, and had failed to timely disclose or report the mistake to the insurer. The Bellefonte court based its decision on the following provision:

> Upon the insured becoming aware of any act or omission which
> might reasonably be expected to be the basis of a claim or suit

21

> covered thereby, written notice shall be given by or on behalf of
> the insured to the company or any of its authorized agents as soon
> as practicable, together with the fullest information obtainable.

472 N.Y.S.2d at 636.

Similarly, in <u>Fogelson v. Home Ins. Company, supra</u>, the court ruled that the insurer was

not obligated to afford coverage to its insured lawyer because the insured was aware prior to the

inception of his policy that a default judgment had been entered against his client. The <u>Fogelson</u>

court based its decision on a provision strikingly similar to Exclusion B, which stated as follows:

> This policy does not apply to any claim arising our of any acts or
> omissions occurring prior to the effective date of this policy if the
> Insured at the effective date knew or could have reasonably foreseen that
> such acts or omissions might be expected to be the basis of a claim or
> suit.

Id. at 347.

Furthermore, after close scrutiny of the same Exclusion B as in the present case, the

United Stated District Court for the District of Eastern Pennsylvania held that "Exclusion B to a

'claims made' professional liability insurance policy is clear and unambiguous." <u>Westport Ins.</u>

<u>Corp. v. Mirsky, et.. al.</u>, 2002 U.S. Dist. LEXIS 16967, *33 (E.D.Pa. 2002) (citing <u>Murphy v.</u>

<u>Coregis Ins. Co.</u>, 1999 U.S. Dist. LEXIS 12617, No. 98-5065, 1999 WL 627910 (E.D.Pa. 1999);

<u>Coregis Ins. Co. v. Wheeler</u>, 24 F. Supp. 2d 475 (E.D. Pa. 1998); <u>Ehrgood v. Coregis Ins. Co.</u>, 59

F. Supp. 2d 438 (M.D.Pa. 1998).

Exclusion B of the 2006 Policy is clear, unambiguous, and subject to no other reasonable

interpretation as that proposed herein, and should, therefore, be enforced so as to deny coverage

to the Defendants for Mrs. Asher's malpractice action.

22

**WHEREFORE**, the Plaintiff and Counterclaim-Defendant WESTPORT INSURANCE

CORPORATION respectfully requests that this Court grant summary judgment against the

Defendants and declare as follows:

a.  Based upon Exclusion B of the Lawyers Professional Liability Policy Renewal Policy, No. NRL-001529-1 for the period of, and for claims between May 12, 2000 and May 12, 2001 (hereinafter referred to as the "2000 Policy"), Plaintiff Westport is not obligated to afford coverage to the Defendants, in whole or in part, including defense or indemnity, for the lawsuit entitled Joanne D. Latona, Individually and as Administratix of the Estate of Angelo Latona, Deceased v. Paul A. Goldberger, Lawrence A. Dubin, Goldberger & Dubin, P.C. and Samuel H. Kelner, Esq., filed in Supreme Court for the State of New York, County of New York, Index No. 120655/03 and

b.  For such other and further relief the Court may deem just and proper.

Dated: New York, New York
      November 9, 2007

                         Respectfully submitted,


          WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP



                         By:____s/_____
                         Mark K. Anesh (MKA: 8303)
                         *Attorneys for Plaintiff and Counterclaim Defendant*
                         WESTPORT INSURANCE CORPORATION
                         150 East 42nd Street
                         New York, New York 10017-5639
                         (212) 490-3000

23