UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
WESTPORT INSURANCE CORPORATION, :
:
                  Plaintiff, :   Case No. 07 Civ. 6726 (SHS) (RLE)
:
    -against- :
:
PATRICIA HENNESSEY, ESQ., and COHEN, :   **AFFIDAVIT OF**
HENNESSEY, BIENSTOCK & RABIN, P.C. :   **PATRICIA HENNESSEY**
f/k/a COHEN, HENNESSEY, BIENSTOCK, P.C., :
:
                  Defendants. :
----------------------------------------------------------x

STATE OF NEW YORK    )
                                ) ss.:
COUNTY OF WESTCHESTER  )

        PATRICIA HENNESSEY, being duly sworn, deposes and says as follows:

        1.    I am one of the defendants in this case.

        2.    I am a 1979 graduate of New York University School of Law, where I was a Root-Tilden Scholar and an Arthur Garfield Hays Civil Liberties Fellow. I was admitted to the New York Bar in 1980, and I have remained in good standing ever since. I also am duly admitted to practice law in the United States District Courts for the Southern and Eastern Districts of New York, the Court of Appeals for the Second Circuit, and the United States Supreme Court. I have filed several *amicus* briefs in the Supreme Court, one of which was cited by Justice Stevens in *Webster v. Reproductive Health Services*, 492 U.S. 490 (1989). In 2003, the faculty of New York University School of Law vetted me before appointing me as an adjunct professor. I have retained that appointment since 2003, and I presently teach family law. Never before have I been the subject of a malpractice claim.

3. I am a founding member and shareholder of defendant Cohen Hennessey Bienstock & Rabin P.C., formerly known as Cohen Hennessey & Bienstock P.C. (collectively "CHB&R")

4. CHB&R, with offices in Manhattan and White Plains, is a full-service matrimonial, family law and litigation law firm.

5. From personal knowledge, unless otherwise indicated, I make this affidavit in opposition to the motion of plaintiff Westport Insurance Corporation ("Westport") for summary judgment and in support of Defendants' motion for partial summary judgment.

6. I have read Westport's motion papers. In response thereto and on behalf of CHB&R and myself, I deny knowing, being aware of, or believing, before July 5, 2006, when we received a claim letter, that our former client, Jayne Asher, believed that she had lost her right to assume ownership of a term life insurance policy and to retain ownership of a variable whole life insurance policy because CHB&R and/or I had failed to exercise her rights under Article IX of the Stipulation of Settlement in her divorce action. The basis for that assertion is explained in detail below.

7. In 2000, Jayne Asher retained CHB&R to represent her in connection with a divorce from Sanford S. Asher. Mrs. Asher's action for divorce was brought in the Supreme Court, New York County, Index No. 350060/2001. I was the attorney at CHB&R primarily responsible for representing Mrs. Asher.

8.  In October of 2001, during the course of CHB&R's representation of Mrs. Asher, we obtained, on her behalf, a court award of $60,000 tax free, per month, as *pendente lite* support for Mrs. Asher and her children.

9.  Within days after the aforementioned award, Mrs. Asher's adult daughter and a man, later identified as James Johnerson a/k/a Wesley Johnson, came to my home in Manhattan. He informed me that Sanford Asher's mistress, later identified as Lynn Grosjean a/k/a Line Grosjean, had paid him $10,000 to kill Mrs. Asher, who lived in Scarsdale. I reported this information to the Scarsdale police and to the New York City Police Department. I advised Mrs. Asher to take her high-school aged daughter out of state and to reside there temporarily under a different name until the police could complete their investigation. Mrs. Asher rejected my advice because she was concerned that the temporary relocation would harm her emotionally fragile daughter. I then arranged to have Mrs. Asher and her daughters guarded by armed security personnel 24/7 at their home in Scarsdale, in a manner that would not be known to Mrs. Asher's high-school aged daughter.

10. At the request of the police, I continued to speak by telephone with Mr. Johnerson, since I was the one person he would speak to, in an effort to get him and Ms. Grosjean to surrender to the police. Thereafter, the police asked me to serve as "bait" so that they could arrest Mr. Johnerson. The police asked me to contact Mr. Johnerson and to ask him to meet me on November 1, 2001 at the Columbus Bakery in Manhattan so that he could be arrested when he showed up for the meeting. I did that and, when Mr. Johnerson showed up, I gave the police a prearranged signal, and they arrested

him. I risked possibly being injured or taken hostage, if Mr. Johnerson's arrest became violent, in order to end the conspiracy to murder Mrs. Asher. Thereafter, the police arrested Lynn Grosjean. Sanford Asher is now married to Ms. Grosjean.

11. In the summer of 2002, Mrs. Asher hosted a large party in my honor at her Scarsdale home. In front of numerous guests, she praised my efforts on her behalf and thanked me for "saving her life."

12. On or about October 15, 2002, Jayne Asher and Sanford Asher executed a Stipulation of Settlement ("Stipulation") in their divorce action. As Mrs. Asher's attorney, I participated in the drafting of the Stipulation. A true copy of the Stipulation is attached hereto and is incorporated herein as Exhibit 1.

13. Article IX of the Stipulation, from pages 31 to 34, concerns "Life and Health Insurance." In the Stipulation, Jayne Asher is defined as "Wife" and Sanford Asher is defined as "Husband."

    a. Article IX, Paragraph 1 of the Stipulation provided, in part, that "Wife may, at her option assume, at her expense, the existing term life insurance policy on Husband's life (Policy No. 897201 with Berkshire Life Insurance Co.) which has a death benefit of One Million Dollars ($1,000,000)." The Stipulation further provided that "Wife shall elect, by February 1, 2003, whether she wishes to assume the policy, in which event, Wife shall have sixty (60) additional days, if necessary, to effectuate the transfer of ownership of said policy to herself."

    b. Article IX, Paragraph 2 of the Stipulation provided, in part, that "Wife is the owner of a variable ordinary life policy on the life of Husband (New

England Financial Policy No. 07092811) which has a death benefit of One Million Dollars ($1,000,000) and a cash surrender value of approximately Two Hundred Twenty Nine Thousand Six Hundred Seventy Dollars and Seven Cents ($229,670.07). Wife shall transfer the ownership of said policy to Husband unless, by February 1, 2003, Wife notifies Husband that she elects to retain ownership of said policy." The Stipulation further provided that "[i]f Wife retains ownership of said policy, Wife shall cause Husband to receive the cash surrender value of the policy as of the date of execution of this Agreement [$229,670.07] by means of a policy loan and/or her own funds, the obligation upon which shall be solely Wife's."

  c. No provision of the Stipulation permitted or obligated CHB&R and/or me to exercise, on behalf of Jayne Asher, her election to assume the existing term life insurance policy on Sanford Asher's life.

  d. No provision of the Stipulation permitted or obligated CHB&R and/or me to exercise, on behalf of Jayne Asher, her election to retain ownership of the variable ordinary life insurance policy.

  14. On or about January 28, 2003, CHB&R received a letter from Sanford Asher's attorneys. A copy of that letter is Exhibit G to Westport's motion. Pursuant to the Notice Provision (Article XV) of the Stipulation and the "cc" line of the January 28th letter, it was sent by Federal Express delivery service to Jayne Asher. That letter, in part, informed its recipients that "[Sanford Asher and his attorneys] are waiting for Jayne to make her election regarding the life insurance policies. We require that election to be made before we deposit the February 1, 2003 [semi-annual spousal

support payment of $270,000] payment to you." In other words, Sanford Asher's attorneys informed the recipients of this letter that Mr. Asher would not pay Mrs. Asher her semi-annual spousal support of $270,000 due and payable on February 1, 2003 if Mrs. Asher were electing to exercise her option to retain ownership of the variable ordinary life insurance policy.[1]

15.   On or before February 1, 2003, Jayne Asher did not instruct or ask CHB&R and/or me to inform Sanford Asher's attorneys that she was exercising her election to assume the term life insurance policy.

16.   On or before February 1, 2003, Jayne Asher did not instruct or ask CHB&R and/or me to inform Sanford Asher's attorneys that she was exercising her election to retain ownership of the variable ordinary life insurance policy, thereby obligating her to pay Mr. Asher $227,670.07, which would have amounted to about 85% of the semi-annual spousal support payment of $270,000 that Mr. Asher was obligated to pay her on February 1, 2003. *See* footnote number 1.

17.   On or before February 1, 2003, Jayne Asher did not delegate to CHB&R and/or me the authority to exercise, on her behalf, her election to assume the term life insurance policy.

18.   On or before February 1, 2003, Jayne Asher did not delegate to CHB&R and/or me the authority to exercise, on her behalf, her election to retain ownership of the variable ordinary life insurance policy.

---

[1] Article IV, paragraph 5 of the Stipulation provided that "on February 1, 2003, Husband shall pay Wife the sum of Two Hundred Seventy Thousand Dollars [$270,000], which constitutes spousal support payments due to the Wife for the period February 2003 through July 2003."
Hennessey Affidavit 11202007

6

19. To my knowledge, on or before February 1, 2003, Jayne Asher did not inform Sanford Asher and/or his attorneys that she was exercising her election to assume the term life insurance policy.

20. To my knowledge, on or before February 1, 2003, Jayne Asher did not inform Sanford Asher and/or his attorneys that she was exercising her election to retain ownership of the variable ordinary life insurance policy.

21. February 1, 2003 came and went without Jayne Asher having either elected to assume the term life insurance policy or elected to retain ownership of the variable ordinary life insurance policy. Sanford Asher paid Jayne Asher and did not hold back as he had threatened the semi-annual spousal support payment he was obligated to pay her under the Stipulation in the sum of $270,000.

22. In a handwritten note, dated February 9, 2003, that accompanied a check for the payment of CHB&R's legal fees, Jayne Asher said, "I am glad that this difficult chapter of my life is over and through your excellent legal services I can now move on to the next chapter of my life. I also appreciate your friendship throughout and hope we remain friends in the years to come. Fondly, Jayne." A true copy of that note is attached hereto and incorporated herein as Exhibit 2.

23. On or about March 28, 2003, Sanford Asher's attorney moved in the Supreme Court, New York County, for an order directing Jayne Asher to execute and deliver to him a form of transfer of ownership of the New England Financial whole life insurance policy. On Jayne Asher's instructions, I opposed the motion. By an order dated May 22, 2003 and entered June 4, 2003, the Supreme Court (Joan B. Lobis,

J.S.C.) granted Jayne Asher thirty additional days to make her election under Article IX of the Stipulation. A true copy of that order is attached hereto and incorporated herein as Exhibit 3. By another order dated August 4, 2003, the Supreme Court (Joan B. Lobis, J.S.C.) denied Sanford Asher's motion for reargument. A true copy of that order is attached hereto as Exhibit 4.

24. Sanford Asher appealed from the order entered on June 4, 2003, and the Appellate Division reversed in a decision dated February 24, 2004. In that decision, the Appellate Division held that "the [S]tipulation is clear and unambiguous in affording the wife [Jayne Asher] until February 1, 2003 to exercise her life insurance options. Clearly, she failed to act within the deadline and thus waived her right of election." *J.A v. S.A.*, 4 A.D.2d 248, 251, 773 N.Y.S.2d 14, 17 (1st Dep't 2004). A true copy of the Appellate Division's decision is attached hereto as Exhibit 5. That decision makes no reference to CHB&R and/or me having had any duty to exercise, on behalf of Jayne Asher, her life insurance elections or having breached any such duty.

25. CHB&R and/or I continued to represent Jayne Asher in connection with her divorce for about a year after the Appellate Division's February 24, 2004 decision at her request.

26. On or about July 5, 2006, CHB&R received a letter from Paul L. Marx, Esq., dated June 29, 2006, which stated, in substance, that Jayne Asher had retained him to bring a legal malpractice claim against CHB&R and me. A true copy of that "Claim Letter" is part of Exhibit B to Westport's motion. CHB&R's insurance broker timely sent Mr. Marx's letter to Westport.

27. In its memorandum of law in support of summary judgment, Westport argues that "[t]he Defendants were aware, prior to the inception of the 2006 Policy [March 14, 2006], of their failure to make a timely election on behalf of Mrs. Asher to the ownership of certain insurance policies of her ex-husband, and that said failure resulted in Mrs. Asher's inability to retain ownership of the policies." (Westport Mem. [Nov. 9, 2007], at 2). On page 8 of its memorandum, Westport repeats that argument and states that "Defendants clearly had knowledge of their failure to timely exercise Mrs. Asher's right to elect her ex-husband's life insurance policies and that failure resulted in Mrs. Asher being barred from retaining the policies." On pages 19-20, Westport makes the same argument, stated slightly differently, "The Defendants knew in February 2004 [when the Appellate Division's decision was rendered] that Mrs. Asher was not entitled to ownership of her ex-husband's life insurance due to their failure to make a timely election of the policies on Mrs. Asher's behalf."

28. On behalf of CHB&R and myself, before CHB&R's receipt of the Claim Letter on July 5, 2006, I deny knowing, being aware of, or believing, for the reasons, among others, stated below, that Jayne Asher believed that she had lost her right to assume ownership of the term life insurance policy and to retain ownership of the variable whole life insurance policy because CHB&R and/or I had failed to exercise her rights under Article IX of the Stipulation.

    a. Neither Jayne Asher nor any representative on her behalf ever informed CHB&R or me, before the July 5, 2006 Claim Letter, in words or in substance, that she believed that she had lost her right to assume ownership of the term

Hennessey Affidavit 11202007

9

life insurance policy and to retain ownership of the variable whole life insurance policy because CHB&R and/or I had failed to exercise her rights under Article IX of the Stipulation.

   b. The Stipulation did not impose a duty on CHB&R or me to exercise Mrs. Asher's life insurance options on her behalf.

   c. The Stipulation did not delegate to CHB&R or me the duty to exercise Mrs. Asher's life insurance options on her behalf.

   d. The Appellate Division held that Mrs. Asher had lost her life insurance options because she failed to exercise those options as required by the clear and unambiguous language of the Stipulation.

   e. Jayne Asher's Verified Complaint acknowledges that the Stipulation gave only her the right to exercise her life insurance options. (*See* Verified Comp., ¶¶ 14-16, [Westport Exhibit D]).

   f. Jayne Asher's Verified Complaint does not allege that she ever instructed CHB&R and/or me to exercise her life insurance options and that CHB&R and/or I failed to carry out that instruction.

   g. In fact, Jayne Asher did not instruct CHB&R and/or me to exercise any right of election on her behalf to assume ownership of the term life insurance policy and to retain ownership of the variable whole life insurance policy.

  29. Based on the foregoing, there is no objective evidence that CHB&R and/or I were aware of an act, error, or omission which we knew or could reasonably foresee might be expected to be the basis of a claim or suit against us when, on

February 24, 2004, the Appellate Division rendered its decision and order which is Westport's Exhibit E. Accordingly, before July 5, 2006, when CHB&R received the Claim Letter, CHB&R and I did not know, did not believe, and were not aware that Jayne Asher allegedly believed that she had lost her right to assume ownership of a term life insurance policy and to retain ownership of a variable whole life insurance policy because either CHB&R or I had failed to exercise her rights under Article IX of the Stipulation.

*Patricia Hennessy*
Patricia Hennessey

Sworn to before me this
26th day of November 2007

*Janie L. Woodburne*
Notary Public
JANIE L. WOODBURNE
NOTARY PUBLIC, State of New York
No. 24-4974310
Qualified in Kings County
Commission Expires Nov. 13, 20 10