UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
WESTPORT INSURANCE CORPORATION,   :
                                  :
                  Plaintiff,   :   Case No. 07 Civ. 6726 (SHS) (RLE)
                                  :
     -against-              :
                                  :   **DEFENDANTS' RESPONSE**
PATRICIA HENNESSEY, ESQ., and COHEN,   :   **TO PLAINTIFF'S**
HENNESSEY, BIENSTOCK & RABIN, P.C.   :   **RULE 56.1 STATEMENT**
f/k/a COHEN, HENNESSEY, BIENSTOCK, P.C.,   :
                                  :
                  Defendants.   :
---------------------------------------------------------------x

      Defendants Patricia Hennessey, Esq. and Cohen Hennessey Bienstock & Rabin P.C. f/k/a Cohen Hennessey & Bienstock P.C (collectively "CHB&R"), by their undersigned attorneys, submit this statement, pursuant to Local Rule 56.1(b), responding in seriatim fashion to the numbered paragraphs of the Rule 56.1 Statement of Undisputed Facts submitted by plaintiff Westport Insurance Corporation ("Westport").

      1. Plaintiff Westport Insurance Corporation (hereinafter referred to as the "Plaintiffs" or "Westport") issued to defendants Patricia Hennessey Esq., and Cohen, Hennessey, Bienstock, & Rabin, P.C., f/ka/ Cohen, Hennessey, Bienstock, P.C. (hereinafter referred to as "Defendants") a Lawyers Professional Liability Policy for professional malpractice claims made against the defendant firm and its individual attorneys, all defendants herein, under the Policy No. NRL-004489-2 for the period of, and for claims made between March 14, 2005 and March 13, 2006.

      <u>Admitted, except for the following, which is denied</u>.  The referenced insurance policy was issued for the period of, and for claims made between, March 14, 2005 and March 14, 2006. (<u>See</u> Westport's Exhibit A.)[1]  All the individual attorneys of CHB&R are not defendants in connection with the professional malpractice claims; the defendants are Patricia Hennessey and CHB&R.  (<u>See</u> Westport's Exhibit D).

---

[1] "Westport's Exhibit __" refers to the lettered exhibits attached to Westport's Rule 56.1 Statement.

2. Westport renewed the aforesaid Lawyers Professional Liability Policy under a Renewal Policy No. NRL-004960-8 (referred to as the "2006 Policy") for the period of, and for claims made between March 14, 2006 and March 14, 2007. A copy of the Lawyers Professional Liability Policy issued by Westport, along with the New York Disclosure Form, is annexed hereto as Exhibit "A."

<u>Admitted as to the first sentence; admitted, in part, as to the second sentence</u>. Admitted, for the purpose of Westport's motion for summary judgment and CHB&R's cross-motion for partial summary judgment, that Westport's Exhibit A contains the genuine and authentic policy forms, which comprise the 2006 Policy, and that are pertinent to the summary judgment motions. Not admitted that Westport's Exhibit A is a complete copy of the entire 2006 Policy. In fact, Exhibit A appears to contain documents that are not part of the 2006 Policy. (<u>See</u> Westport's Exhibit A).

3. The 2006 Policy states, in pertinent part, that:

This Policy does not apply to:

\*\*\*

    B.    any CLAIM arising out of any act, error, omission or PERSONAL INJURY occurring prior to the effective date of this policy if any INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission of PERSONAL INJURY might be expected to be the basis of a CLAIM or suit;

Exhibit "A" at p. 4.

<u>Admitted, except for the following, which is denied</u>. The quoted language does not bar insurance coverage for CHB&R for Jayne Asher's legal malpractice claim.

4. On or about July 26, 2006, Westport received notice of a claim against the defendant law firm and/or its individual attorneys by Jayne Asher, who the Defendant law firm represented in an underlying divorce proceeding. This was the first notice of the claim that Westport received. A copy of the July 26, 2006 written notice is annexed hereto as Exhibit "B."

<u>Admitted, except for the following, which is denied</u>.  CHB&R does not know whether the notice of Jayne Asher's claim that Westport received on July 26, 2006 was its "first notice of [that] claim" received by Westport.  Westport's motion papers contain no sworn averment alleging the truth of that statement.

5.  By letter to defendants dated August 11, 2006, Westport acknowledged receipt of notification of the Asher claim.  A copy of the August 11, 2006 letter is annexed hereto as Exhibit "C."

<u>Admitted</u>.

6.  Jayne Asher ultimately commenced a legal malpractice action against the Defendants in Supreme Court of the State of New York, New York County, Index No.: 1361/07 on or about January 23, 2007.  The action arises out of Defendants' legal representation of Mrs. Asher in her divorce proceeding.  A copy of her complaint is annexed hereto as Exhibit "D."

<u>Admitted, except for the following, which is denied</u>.  Westchester County is the venue for Jayne Asher's legal malpractice action.  (<u>See</u> Westport's Exhibit D).

7.  The Asher complaint alleges "That during the course of Defendants' representation of plaintiff in the divorce action, a Stipulation of Settlement (the "Stipulation"), negotiated and approved by Defendants HENNESSEY and CHB was entered into by Jayne and Sanford Asher on or about October 15, 2002."  See Exhibit "D" at ¶13.

<u>Admitted</u> that paragraph 13 of the Asher complaint alleges the language quoted above.  CHB&R incorporates herein its Verified Answer to the Asher complaint.  <u>See</u> Affidavit of Harriet Newman Cohen, sworn to on December 6, 2007 ("Cohen Aff."), ¶ 4, Ex. 1 (Verified Answer).

8.  The Asher complaint further alleges that by the terms of the Stipulation, Mrs. Asher was given the right to elect, upon the terms and conditions set forth in the Stipulation to assume and/or continue ownership of certain life insurance policies on the life of her ex-husband Sanford Asher.  See Exhibit "D" at ¶ 14.

<u>Admitted</u> that paragraph 14 of the Asher complaint alleges, in substance, the reference above. CHB&R incorporates herein its Verified Answer to the Asher complaint. (<u>See</u> Cohen Aff., ¶ 4, Ex. 1 [Verified Answer]).

9.  The Asher complaint also alleges "That Defendants, and each of them, failed to timely exercise Plaintiff's right of election to the life insurance policies" and "That by reason of defendants' failure to timely exercise the rights of election, Plaintiff was bared from doing so and lost the benefit of the life insurance policies." See Exhibit "D" at ¶¶ 17, 18.

<u>Admitted</u> that paragraphs 17 and 18 of the Asher complaint alleges the language quoted above. CHB&R incorporates herein its Verified Answer to the Asher complaint. (<u>See</u> Cohen Aff., ¶ 4, Ex.1 [Verified Answer]).

10.  The complaint also references a February 24, 2004 Appellate Division, First Department decision in the underlying divorce proceeding, which determined fully and finally that Mrs. Asher was not entitled to ownership of her ex-husband's life insurance policies, concluding therein that she failed to timely and properly exercise her rights of election. See Exhibit "D" at ¶ 25.

<u>Admitted, except for the following, which is denied</u>. Paragraph 25 of the Asher complaint referenced the Appellate Division, "Second Department," and it did not allege specifically who owned the referenced life insurance policies. (<u>See</u> Westport's Exhibit D). CHB&R incorporates herein its Verified Answer to the Asher complaint. (<u>See</u> Cohen Aff., ¶ 4, Ex. 1 [Verified Answer]).

11.  The February 24, 2004 Appellate Division, First Department decision, which was rendered over two years <u>before</u> the effective date of the subject policy, concludes that "the wife failed to exercise her right of election to receive or retain either policy within the allotted time and the husband's attorney notified the wife's attorney that the term life policy would remain with the husband and that the wife was required to transfer to the husband the whole life policy." A copy of the aforesaid decision is annexed hereto as Exhibit "E." The decision further notes that she was to have done so by February 1, 2003 pursuant to Article IX of the Stipulation. <u>Id.</u>

<u>Admitted</u>.

12.  Soon after receipt of the Asher complaint, Westport began its evaluation of insurance coverage for the claim. Following its initial evaluation and on March 22, 2007, it sent

Defendants a reservation of rights letter, reserving all its rights to investigate and possibly deny coverage. A copy of the March 22, 2007 reservation of rights letter is annexed hereto as Exhibit "F."

<u>Admitted, except for the following, which is denied</u>. CHB&R does not know when Westport began its initial evaluation of insurance coverage for the claim or to what extent it performed such an evaluation. Westport's motion papers contain no sworn averment alleging the truth of that statement. Whether Westport's March 22, 2007 letter is a reservation of rights letter, "reserving all its rights to investigate and possibly deny coverage," is a question of law.

13. Westport continued its investigation of Mrs. Asher's claim. During this investigation, it procured certain correspondence between the defendants and counsel for Mr. Asher in the divorce proceeding. One such correspondence is dated January 28, 2003, six days before the deadline for Mrs. Asher to make the subject election. The correspondence is from Mr. Asher's attorney, Lawrence M. Nessenson, and is addressed to defendant Patricia Hennessey, Esq., attorney for Mrs. Asher. The correspondence states "There are several issues/elections under the Stipulation of Settlement which are coming up," and advised that "we are waiting for Jayne to make her election regarding the life insurance policies." A copy of the aforesaid January 28, 2003 letter is annexed hereto as Exhibit "G."

<u>Admitted, except for the following, which is denied</u>. CHB&R does not know whether Westport investigated or continued an investigation of Mrs. Asher's claim. Westport's motion papers contain no sworn averment alleging the truth of that statement. CHB&R notes that the referenced letter indicated it was copied to Jayne Asher.

14. At the conclusion of its investigation, and on or about July 11, 2007, Westport sent the Defendants its final reservation of rights letter. The letter states, in pertinent part, ". . . we must now advise you that pursuant to Exclusion B, the policy does not afford coverage for this claim." The letter continues

> As you are aware, this claim arises from Cohen, Hennessey, Bienstock & Rabin's representation of Jayne Asher in an underlying divorce proceeding. As part of the representation, Ms. Hennessey took part in negotiating and approving a Stipulation of Settlement on or about October 15, 2002. According to the terms of the Stipulation, Ms. Asher had a deadline of February 1, 2003, to make an election to the ownership of certain life insurance policies owned by Mr. Asher. Despite correspondence being sent

5

> between each of the attorneys of record regarding the upcoming deadline, Ms. Asher and her attorney, Ms. Hennessey, failed to make a timely election. Ms. Hennessey continued her efforts to convince the courts that the parties were in continued negotiations in relation to the policies, and thus, the election was not untimely. However, when the process was complete, the New York, Appellate Division, First Department, issued an Order on February 24, 4004, ruling that Ms. Asher lost her right of election to the life insurance policies in question due to the failure to comply with the February 1, 2003, deadline.

A copy of the July 11, 2007 reservation of rights letter is annexed hereto as Exhibit "H".

<u>Admitted only that Westport accurately quoted from its July 11, 2007 letter, otherwise denied</u>. CHB&R does not know when Westport investigated and when Westport concluded its investigation. Westport's motion papers contain no sworn averment alleging the truth of that statement. With regard to the quotation from Westport's Exhibit H, CHBR denies the truth of the statement therein that the life insurance policies referenced in the Stipulation of Settlement were "owned by Mr. Asher." In fact, Mr. Asher owned only the term life insurance policy. (<u>See</u> Affidavit of Patricia Hennessey, sworn to on November 20, 2007 ("Hennessey Aff."), ¶¶ 12-13). Also, with regard to the quotation from Westport's Exhibit H, CHBR denies the truth of the statement therein that "Despite correspondence being sent between each of the attorneys of record regarding the upcoming deadline, . . . Ms. Hennessey[] failed to make a timely election." First, Ms. Hennessey did not fail to make a timely election. (<u>See</u> Hennessey Aff., ¶¶ 14-21). Westport's motion papers contain no sworn averment alleging the truth of that statement. Second, the referenced correspondence indicated it was copied directly to Jayne Asher. Finally, whether Westport's July 11, 2007 letter is a "reservation of rights" letter is a question of law.

    15.   The letter further states "there is objective evidence that you were aware of an act, error, or omission which you knew or could reasonably foresee might be expected to be the basis of a claim or suit against you when the February 24, 2004 Appellate Division Order found that Ms. Asher lost any rights to the policies due to the failure to comply with the Stipulation. This

was known prior to the Westport policy effective date of March 14, 2006. Therefore, Exclusion B precludes coverage for the suit subsequently filed by the plaintiff." See Exhibit "H".

<u>Admitted only that Westport has accurately quoted from its July 11, 2007 letter, otherwise denied</u>. CHB&R denies the truth of the entire quotation contained therein. According to Patricia Hennessey, "on behalf of CHB&R and myself, I deny knowing, being aware of, or believing, before July 5, 2006, when we received a claim letter, that our former client, Jayne Asher, believed that she had lost her right to assume ownership of a term life insurance policy and to retain ownership of a variable whole life insurance policy because CHB&R and/or I had failed to exercise her rights under Article IX of the Stipulation of Settlement in her divorce action. (<u>See</u> Hennessey Aff., ¶¶ 6, *et seq*). Westport's motion papers contain no sworn averments alleging the truth of those statements.

16. Notwithstanding its coverage position, Westport has paid for and continues to pay for the Defendants' defense in the malpractice suit brought against them by Mrs. Asher under the relevant policy of insurance.

<u>Admitted, except for the following, which is denied</u>. CHB&R denies that Westport "continues to pay" for its defense of the malpractice suit brought by Mrs. Asher. According to Westport's Exhibit H, on page 2, its representative stated, "we will not pay or be responsible for any defense costs incurred after August 15, 2007."

\*   \*   \*

Defendants Patricia Hennessey, Esq. and Cohen Hennessey Bienstock & Rabin P.C. f/k/a Cohen Hennessey & Bienstock P.C. (collectively "CHB&R"), by their undersigned attorneys, submit this statement, pursuant to Local Rule 56.1(b), of material facts as to which there may exist a genuine issue of fact.

1. In 2000, Jayne Asher retained CHB&R to represent her in connection with a divorce from Sanford S. Asher. (See Hennessey Aff., ¶ 7).

2. Patricia Hennessey was the attorney at CHB&R primarily responsible for representing Mrs. Asher. (See Hennessey Aff., ¶ 7).

3. While representing Mrs. Asher, Ms. Hennessey learned that a woman, later identified as Lynn Grosjean a/k/a Line Grosjean, had paid $10,000 to a man, later identified as James Johnerson a/k/a Wesley Johnson, to kill Mrs. Asher. (See Hennessey Aff., ¶¶ 9-10).

4. Ms. Hennessey reported to the police the plot to kill Mrs. Asher. (See Hennessey Aff., ¶ 9-10).

5. Ms. Hennessey arranged to have Mrs. Asher and her daughters guarded by armed security personnel on a 24/7 basis at their home in Scarsdale, New York. (See Hennessey Aff., ¶ 9).

6. The police asked Ms. Hennessey to serve as "bait" so that they could arrest Mr. Johnerson. (See Hennessey Aff., ¶ 10).

7. Ms. Hennessey assisted the police in the arrest of Mr. Johnerson. (See Hennessey Aff., ¶ 10).

8. The police arrested Lynn Grosjean. (See Hennessey Aff., ¶ 10).

9. In the summer of 2002, Mrs. Asher hosted a party in Ms. Hennessey's honor at her Scarsdale home and, in front of numerous guests, she praised Ms. Hennessey's efforts on her behalf, and she thanked Ms. Hennessey for "saving her life." (See Hennessey Aff., ¶ 11).

10. On or about October 15, 2002, Jayne Asher and Sanford Asher executed a Stipulation of Settlement ("Stipulation") in their divorce action. (See Hennessey Aff., ¶ 12).

11. A true copy of excerpts of the Stipulation is attached as Exhibit 1 to Ms. Hennessey's affidavit.

12. Article IX of the Stipulation concerns "Life and Health Insurance." (See Hennessey Aff., ¶ 12 & Ex. 1).

13. In the Stipulation, Jayne Asher is defined as "Wife" and Sanford Asher is defined as "Husband." (See Hennessey Aff., ¶ 12 & Ex. 1).

14. Article IX, Paragraph 1 of the Stipulation states: "Wife may, at her option assume, at her expense, the existing term life insurance policy on Husband's life (Policy No. 897201 with Berkshire Life Insurance Co.) which has a death benefit of One Million Dollars ($1,000,000)." (See Hennessey Aff., ¶¶ 12-13 & Ex. 1).

15. Article IX, Paragraph 1(a) of the Stipulation states: "Wife shall elect, by February 1, 2003, whether she wishes to assume the policy, in which event, Wife shall have sixty (60) additional days, if necessary, to effectuate the transfer of ownership of said policy to herself." (See Hennessey Aff., ¶¶ 12-13 & Ex. 1).

16. Article IX, Paragraph 2 of the Stipulation states: "Wife is the owner of a variable ordinary life policy on the life of Husband (New England Financial Policy No. 07092811) which has a death benefit of One Million Dollars ($1,000,000) and a cash surrender value of approximately Two Hundred Twenty Nine Thousand Six Hundred Seventy Dollars and Seven Cents ($229,670.07). Wife shall transfer the ownership of said policy to Husband unless, by February 1, 2003, Wife notifies Husband that she elects to retain ownership of said policy." (See Hennessey Aff., ¶¶ 12-13 & Ex. 1).

17. Article IX, Paragraph 2(a) of the Stipulation states: "If Wife retains ownership of said policy, Wife shall cause Husband to receive the cash surrender value of the policy as of the

9

date of execution of this Agreement by means of a policy loan and/or her own funds, the obligation upon which shall be solely Wife's." (See Hennessey Aff., ¶¶ 12-13 & Ex. 1).

18. No provision of the Stipulation permitted CHB&R to exercise, on behalf of Jayne Asher, her election to assume the existing term life insurance policy on Sanford Asher's life. (See Hennessey Aff., ¶ 13 & Ex. 1).

19. No provision of the Stipulation obligated CHB&R to exercise, on behalf of Jayne Asher, her election to assume the existing term life insurance policy on Sanford Asher's life. (See Hennessey Aff., ¶ 13 & Ex. 1).

20. No provision of the Stipulation permitted CHB&R to exercise, on behalf of Jayne Asher, her election to retain ownership of the variable ordinary life insurance policy. (See Hennessey Aff., ¶ 13 & Ex. 1).

21. No provision of the Stipulation obligated CHB&R to exercise, on behalf of Jayne Asher, her election to retain ownership of the variable ordinary life insurance policy. (See Hennessey Aff., ¶ 13 & Ex. 1).

22. In a handwritten note, dated February 9, 2003, that accompanied a check for the payment of CHB&R's legal fees, Jayne Asher said, "I am glad that this difficult chapter of my life is over and through your excellent legal services I can now move on to the next chapter of my life. I also appreciate your friendship throughout and hope we remain friends in the years to come. Fondly, Jayne." (See Hennessey Aff., ¶ 22 & Ex. 2).

23. A true copy of the note referenced in paragraph 22 is attached as Exhibit 2 to Ms. Hennessey's affidavit.

24. A true copy of Justice Lobis' order, dated May 22, 2003 and entered June 4, 2003 in the Asher divorce action, is Exhibit 3 to Ms. Hennessey's affidavit.

25. A true copy of the February 24, 2004 decision of the Appellate Division, First Department, in the Asher divorce action is Exhibit 5 to Ms. Hennessey's affidavit.

26. The Appellate Division decision referenced in paragraph 25 makes no reference to CHB&R or Ms. Hennessey as having had any duty to exercise, on behalf of Jayne Asher, her life insurance elections.

27. CHB&R continued to represent Jayne Asher in connection with her divorce for about a year after the Appellate Division's February 24, 2004 decision. (See Hennessey Aff., ¶ 25).

28. Before CHB&R received from Paul L. Marx, Esq. his letter dated June 29, 2006, Patricia Hennessey did not know, was not aware of, or did not believe that Jayne Asher believed that she had lost her right to assume ownership of the term life insurance policy and to retain ownership of the variable ordinary life insurance policy because CHB&R and/or Ms. Hennessey had failed to exercise Mrs. Asher's rights under Article IX of the Stipulation. (See Hennessey Aff., ¶¶ 28-9).

29. Jayne Asher sued CHB&R and Ms. Hennessey for legal malpractice in a Verified Complaint that was filed on January 23, 2007 in the Supreme Court, Westchester County. (See Westport's Exhibit D)

30. A true copy of Mrs. Asher's Verified Complaint referenced in paragraph 20 is contained in Westport's Exhibit D.

31. The claims asserted in Mrs. Asher Verified Complaint were first made against CHB&R during the policy period of the Policy. (See Westport's Exhibit A; Westport's Exhibit D.

32. The claims asserted in Mrs. Asher Verified Complaint were reported to Westport in accordance with Conditions I.A. of the Policy. (See Westport's Exhibit A; Westport's Exhibit D.

33. Mrs. Asher's Verified Complaint asserts claims against CHB&R and its shareholder, Ms. Hennessey, who are both "Insureds" under the Policy. (See Westport's Exhibit A, p. 3 of 13; Westport's Exhibit D, ¶¶ 2-8).

34. Mrs. Asher's Verified Complaint asserts claims arising out of acts, errors or omissions occurring on or after the "Retroactive Date" of the 2006 Policy. (See Westport's Exhibit A, p. 1 of 13; Westport's Exhibit D; para. 5 above).

35. Mrs. Asher's Verified Complaint asserts claims arising out of services rendered or which should have been rendered by CHB&R and/or its shareholder Ms. Hennessey. (See Westport's Exhibit A, p. 1 of 13; Westport's Exhibit D, ¶¶ 9-12, 19).

36. Mrs. Asher's Verified Complaint asserts claims arising out of the conduct of CHB&R's and/or Ms. Hennessey's profession as a lawyer. (See Westport's Exhibit A, p. 1 of 13; Westport's Exhibit D, ¶¶ 9-12, 19).

Dated: New York, New York
      December 7, 2007

Respectfully submitted,

FRIED & EPSTEIN LLP

By:_____
   John W. Fried (JF2667)

1350 Broadway, Suite 1400
New York, New York 10018
Tel.: (212) 268-7111

*Attorneys for Defendants,
Patricia Hennessey, Esq., and Cohen
Hennessey Bienstock & Rabin P.C.,
f/k/a Cohen Hennessey & Bienstock P.C.*