UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

WESTPORT INSURANCE CORPORATION,          :
                                          :
                            Plaintiff,    :    Case No. 07 Civ. 6726 (SHS) (RLE)
                                          :
        -against-                         :
                                          :
PATRICIA HENNESSEY, ESQ., and COHEN,      :
HENNESSEY, BIENSTOCK & RABIN, P.C.,       :
f/k/a COHEN, HENNESSEY, BIENSTOCK, P.C.,  :
                                          :
                            Defendants.   :

----------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

FRIED & EPSTEIN LLP
1350 Broadway, Suite 1400
New York, New York 10018
Tel.: (212) 268-7111

*Attorneys for Defendants,*
*Patricia Hennessey, Esq., and Cohen*
*Hennessey Bienstock & Rabin P.C.,*
*f/k/a Cohen Hennessey & Bienstock, P.C.*

December 7, 2007

# **TABLE OF CONTENTS**

I.   COUNTERSTATEMENT OF FACTS ............................................................1

     CHB&R's Representation of Jayne Asher ........................................1

     Jayne Asher's Legal Malpractice Claim against CHB&R ................................4

     Westport's Insurance Policy .............................................5

     Jayne Asher's Legal Malpractice Suit ................................................5

     Westport's Handling of the Claim ................................................6

II.  LEGAL ARGUMENT .............................................................6

     POINT I .............................................................6

          WESTPORT HAS A DUTY UNDER THE POLICY TO
          DEFEND THE ASHER ACTION UNLESS AND UNTIL IT CAN
          PROVE THE APPLICATION OF AN EXCLUSION. ...........................6

     POINT II .............................................................8

          WESTPORT FAILS TO MEET ITS BURDEN TO
          DEMONSTRATE THE APPLICABILITY OF EXCLUSION B ...........8

          A.   An Interpretation of Exclusion B Calling for an Objective
               Standard Conflicts with the Purpose of the Policy, the
               Reasonable Expectations of Lawyer Policyholders, and
               Other Policy Language. .........................................11

          B.   Even under an Objective Approach, Westport's Summary
               Judgment Motion Should Be Denied ........................17

III. CONCLUSION .............................................................25

i

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page**

Automobile Ins. Co. of Hartford v. Cook, 7 N.Y.3d 131, 850 N.E.2d 1152 (2006) ..................... 8

Bellefonte Ins. Co. v. Albert, 99 A.D.2d 947, 472 N.Y.S.2d 635 (1st Dep't 1984) .............. 10, 18

Belt Painting Corp. v. TIG Ins. Co., 100 N.Y.2d 377, 795 N.E.2d 15 (2003) ........................ 8, 11

Estate of Logan v. Northwestern Nat'l Cas. Co., 424 N.W.2d 179 (Wis. 1988) ................... 13, 14

Fogelson v. Home Ins. Co., 129 A.D.2d 508, 514 N.Y.S.2d 346 (1st Dep't 1987) ............... 10, 21

Hudson v. Allstate Ins. Co., 25 A.D.3d 654, 809 N.Y.S.2d 124 (2d Dep't 2006) ...................... 14

Ingalsbe v. Chicago Ins. Co., 270 A.D.2d 684, 704 N.Y.S.2d 698 (3d Dep't 2000) ............. 10, 18

J.A v. S.A., 4 A.D.2d 248, 773 N.Y.S.2d 14 (1st Dep't 2004) ............................................. 4, 6, 22

Lamanna v. Pearson & Shapiro, 43 A.D.3d 1111, 843 N.Y.S.2d 143 (2d Dep't 2007) ............... 12

Liebling v. Garden State Ind., 767 A.2d 515 (N.J. Super. Ct., App. Div. 2001) ......................... 14

Mostow v. State Farm Ins. Cos., 88 N.Y.2d 321, 668 N.E.2d 392 (1996) .................................. 8

Mt. Airy Ins. Co. v. Thomas, 954 F.Supp. 1073 (W.D. Pa. 1997) ............................. 9, 17, 20, 21

Pepper v. Allstate Ins. Co., 20 A.D.3d 633, 799 N.Y.S.2d 292 (3d Dep't 2005) .......................... 8

Redeemer Covenant Church of Brooklyn Park v. Church Mut. Ins. Co.,
     567 N.W.2d 71 (Minn. Ct. App. 1997) ................................................................................ 23

Sanches v. Morris, 802 So.2d 755 (La. Ct. App. 2001) .............................................................23

Selko v. Home Ins. Co., 139 F.3d 146 (3d Cir. 1998) ............................................................17

Sirignano v. Chicago Ins. Co., 192 F.Supp.2d 199 (S.D.N.Y. 2002) ...................................10, 21

Smart Style Indus., Inc. v. Pennsylvania Gen. Ins. Co., 930 F.Supp. 159 (S.D.N.Y. 1996)...11, 13

Stratford Sch. Dist. v. Employers Reins. Corp., 105 F.3d 45 (1st Cir. 1997)............................16

Throgs Neck Bagels, Inc. v. GA Ins. Co. of N.Y., 241 A.D.2d 66,
    671 N.Y.S.2d 66 (1st Dep't 1998)....................................................................................8, 13

Town of Massena v. Healthcare Underwriters Mut. Ins. Co., 40 A.D.3d 1177,
    834 N.Y.S.2d 736 (3d Dep't 2007).........................................................................................11

Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P., 267 F.Supp.2d
    601 (E.D. Tex. 2003)..................................................................................................22, 23

Westport Ins. Corp. v. Lilley, 292 F.Supp.2d 165 (D. Me. 2003).............................................24

Wright v. Evanston Ins. Co., 14 A.D.3d 505, 788 N.Y.S.2d 416 (2d Dep't 2005)................13, 14

iii

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendants Patricia Hennessey, Esq. and Cohen Hennessey Bienstock & Rabin P.C. f/k/a Cohen Hennessey & Bienstock P.C. (collectively "CHB&R"), by their undersigned attorneys, hereby submit this memorandum of law in opposition to the motion of plaintiff Westport Insurance Corporation ("Westport") for summary judgment.

### I.    COUNTERSTATEMENT OF FACTS

### CHB&R's Representation of Jayne Asher

In 2000, Jayne Asher retained CHB&R to represent her in a divorce from Sanford S. Asher. Patricia Hennessey was the attorney at CHB&R primarily responsible for representing Mrs. Asher. (Affidavit of Patricia Hennessey, sworn to on Nov. 20, 2007 ["Hennessey Aff."], ¶ 7.)

In October of 2001, CHB&R obtained a court award of $60,000 tax free, per month, as *pendente lite* support for Mrs. Asher and her children. (Hennessey Aff., ¶ 8). Within days after that award, Ms. Hennessey learned that Sanford Asher's mistress, later identified as Lynn Grosjean a/k/a Line Grosjean, had hired someone for $10,000 to kill Mrs. Asher. Ms. Hennessey reported that information to the police. Not only did Ms. Hennessey arrange to have Mrs. Asher and her children guarded by armed security personnel around the clock; she also served as "bait" in a police sting operation to arrest the "hit man." The police also arrested Ms. Grosjean. She was convicted of conspiracy and sentenced to jail. She is now married to Sanford Asher. (Hennessey Aff., ¶¶ 9-10).

In the summer of 2002, Mrs. Asher hosted a large party at her Scarsdale home in Ms. Hennessey's honor. In front of numerous guests, Mrs. Asher praised Ms. Hennessey's efforts and thanked her for "saving my life." (Hennessey Aff., ¶ 11).

On October 15, 2002, Jayne Asher, as "Wife," and Sanford Asher, as "Husband," executed a Stipulation of Settlement (the "Stipulation") in their divorce action. (Hennessey Aff., ¶ 12).[1] Article IX of the Stipulation, which concerned "Life and Health Insurance," provided, in pertinent part, the following in Paragraph 1:

> Wife may, at her option assume, at her expense, the existing term life insurance policy on Husband's life (Policy No. 897201 with Berkshire Life Insurance Co.) which has a death benefit of One Million Dollars ($1,000,000). Wife shall elect, by February 1, 2003, whether she wishes to assume the policy, in which event, Wife shall have sixty (60) additional days, if necessary, to effectuate the transfer of ownership of said policy to herself.

Article IX of the Stipulation provided, in pertinent part, the following in Paragraph 2:

> Wife is the owner of a variable ordinary life policy on the life of Husband (New England Financial Policy No. 07092811) which has a death benefit of One Million Dollars ($1,000,000) and a cash surrender value of approximately Two Hundred Twenty Nine Thousand Six Hundred Seventy Dollars and Seven Cents ($229,670.07). Wife shall transfer the ownership of said policy to Husband unless, by February 1, 2003, Wife notifies Husband that she elects to retain ownership of said policy. If Wife retains ownership of said policy, Wife shall cause Husband to receive the cash surrender value of the policy as of the date of execution of this Agreement [$229,670.07] by means of a policy loan and/or her own funds, the obligation upon which shall be solely Wife's.

(Hennessey Aff., ¶¶ 12-13(a)-(b) & Ex. 1 at 31-33). No provision of the Stipulation permitted or obligated CHB&R to exercise, on behalf of Jayne Asher, her election to assume the existing term life insurance policy on Mr. Asher's life or her election to retain ownership of the variable ordinary life insurance policy on Mr. Asher's life. (Hennessey Aff., ¶ 13(c)-(d)).

On or about January 28, 2003, CHB&R received a letter from Sanford Asher's attorneys, containing a "cc" line that indicated the letter had been sent by Federal Express delivery service to Jayne Asher. (Hennessey Aff., ¶ 14). That letter, in part, informed its recipients that "[Sanford Asher and his attorneys] are waiting for Jayne to make her election regarding the life insurance

---

[1] To maintain Mr. and Mrs. Asher's privacy, only the pages of the provisions of the Stipulation that are referenced in this Memorandum are attached as Exhibit 1 to Ms. Hennessey's affidavit.

policies.  We require that election to be made before we deposit the February 1, 2003 [semi-annual spousal support payment of $270,000] payment to you."  (Hennessey Aff., ¶ 14; Westport's Exhibit G [Letter]).[2]  In other words, Mr. Asher's attorneys informed the recipients of this letter that Mr. Asher would not pay Mrs. Asher her semi-annual spousal support of $270,000 due and payable on February 1, 2003, if Mrs. Asher elected to exercise her option to retain ownership of the variable ordinary life insurance policy.[3]  (Hennessey Aff., ¶ 14).

February 1, 2003 was the deadline for Jayne Asher to make the life insurance elections permitted under the stipulation.  On or before that date, Mrs. Asher did not instruct or ask CHB&R to inform Sanford Asher's attorneys that she was exercising one, or both, of her rights to make those elections.  (Hennessey Aff., ¶ 15).  If Mrs. Asher had elected to retain ownership of the variable life insurance policy, the Stipulation obligated her to pay Mr. Asher $227,670.07, about 85% of the semi-annual spousal support payment of $270,000 that Mr. Asher was obligated to pay her on February 1, 2003.  (Hennessey Aff., ¶ 16).  Mrs. Asher likewise did not delegate to CHB&R the authority to exercise, on her behalf, her rights under the Stipulation to assume or retain the life insurance policies.  (Hennessey Aff., ¶¶ 17-20).

February 1, 2003 came and went without Mrs. Asher having elected, under the Stipulation, to assume and/or retain the life insurance policies at issue.  Sanford Asher paid Jayne Asher her semi-annual spousal support payment of $270,000, pursuant to the Stipulation. (Hennessey Aff., ¶ 21).

---

[2]  "Westport's Exhibit __" refers to the lettered exhibits that Westport attached to its Local Rule 56.1 Statement.

[3]  Article IV, paragraph 5 of the Stipulation provided that "on February 1, 2003, Husband shall pay Wife the sum of Two Hundred Seventy Thousand Dollars [$270,000], which constitutes spousal support payments due to the Wife for the period February 2003 through July 2003."  (Hennessey Aff., ¶ 12, Ex. 1 at 19-20).

3

In a handwritten note to Ms. Hennessey, dated February 9, 2003, and accompanying a check for the payment of CHB&R's legal fees, Mrs. Asher said, "I am glad that this difficult chapter of my life is over and through your excellent legal services I can now move on to the next chapter of my life. I also appreciate your friendship throughout and hope we remain friends in the years to come. Fondly, Jayne." (Hennessey Aff., ¶ 21).

On or about March 28, 2003, Sanford Asher's attorney moved in the Supreme Court, New York County, for an order directing Jayne Asher to execute and deliver to him a form to transfer ownership to him of the variable ordinary life insurance policy. On Jayne Asher's instructions, CHB&R opposed that motion. (Hennessey Aff., ¶ 23). By an order dated May 22, 2003 and entered June 4, 2003, the Court (Joan B. Lobis, J.S.C.) granted Jayne Asher thirty additional days to make her election(s) under Article IX of the Stipulation. (Id.). Sanford Asher appealed from that order and, in a decision dated February 24, 2004, the Appellate Division reversed. In that decision, the Appellate Division held that "the [S]tipulation is clear and unambiguous in affording the wife [Jayne Asher] until February 1, 2003 to exercise her life insurance options. Clearly, she failed to act within the deadline and thus waived her right of election." (Hennessey Aff., ¶ 24 & Ex. 5 [App. Div. Dec.]; J.A v. S.A., 4 A.D.2d 248, 251, 773 N.Y.S.2d 14, 17 (1st Dep't 2004)). The Appellate Division's decision made no reference to CHB&R as having any duty to exercise, on behalf of Jayne Asher, her life insurance elections or having breached any such duty. (Id.).

Thereafter, at her request, CHB&R continued to represent Jayne Asher in connection with her divorce for about a year after the Appellate Division's February 24, 2004 decision. (Hennessey Aff., ¶ 25).

### Jayne Asher's Legal Malpractice Claim against CHB&R

On July 5, 2006, CHB&R received a letter, dated June 29, 2006 (the "Claim Letter"), from Paul I. Marx, an attorney for Jayne Asher. In his letter, Mr. Marx alleged that Mrs. Asher was damaged by CHB&R's supposed failure to exercise timely Mrs. Asher's rights of election with respect to a term life insurance policy and a variable ordinary life insurance policy on the life of her ex-husband. (Hennessey Aff., ¶ 26). According to Mr. Marx's letter, as a result of CHB&R's alleged malpractice, Mrs. Asher "lost the value of her right to assume the term policy and retain ownership of the variable policy," under the Stipulation. (Hennessey Aff., ¶ 26).

Ms. Hennessey, on behalf of herself and CHB&R, denies knowing, before their receipt of the Claim Letter, of Mrs. Asher's apparent belief that she had lost her rights of election with respect to the life insurance at issue because CHB&R had failed to exercise those rights under the Stipulation. (Hennessey Aff., ¶ 28).

### Westport's Insurance Policy

Westport sold CHB&R a Lawyers Professional Liability Insurance Policy (the "Policy") for legal malpractice claims for the policy period of, and for claims made against CHB&R during the period from March 14, 2006 and March 14, 2007. (Westport's Exhibit A [Policy]). As a shareholder of CHB&R, Ms. Hennessey is an insured under the Policy. (Westport's Exhibit A [Policy], p. 3 of 13). CHB&R gave Westport timely notice of the Claim Letter. (Westport's Exhibit C [Notice Acknowledgement]).

### Jayne Asher's Legal Malpractice Suit

On January 23, 2007, Jayne Asher sued CHB&R for legal malpractice in the Supreme Court, Westchester County. (Westport's Exhibit D [Asher Verified Comp.], ¶ 19).

**Westport's Handling of the Claim**

Shortly after being served with the Asher Complaint, CHB&R tendered its defense of the Complaint to Westport, and Westport, in a letter dated March 22, 2007, reaffirmed in writing that it previously had agreed to pay for CHB&R's legal defense of the Asher Action, albeit under a reservation of rights.  (Westport's Exhibit F [Mar. 22, 2007 Letter]).  Westport assigned that defense to Rivkin Radler LLP.  (Affidavit of Harriet Newman Cohen, sworn to on Dec. 7, 2007 ["Cohen Aff."], ¶ 5).  However, by letter of July 11, 2007, Westport disclaimed coverage, relying solely on its Exclusion B, and stated that it would stop paying Rivkin Radler to defend CHB&R in connection with the Asher Action.  (Westport's Exhibit H [July 11, 2007 Letter]; Cohen Aff., ¶ 6).  As a consequence, CHB&R, at its own expense, retained Paul C. Kurland of Snow Becker Krauss P.C. and Hon. Sondra M. Miller of McCarthy Fingar to defend the Asher Action.  (Cohen Aff., ¶ 6).

## II.   LEGAL ARGUMENT

### POINT I

**WESTPORT HAS A DUTY UNDER THE POLICY TO DEFEND THE ASHER ACTION UNLESS AND UNTIL IT CAN PROVE THE APPLICATION OF AN EXCLUSION.**

The Westport Policy was issued to CHB&R for the policy period of March 14, 2006 to March 14, 2007. (Westport Exhibit A [Policy] at Declarations Pg.). [4] Westport nowhere contends that the Asher Action is not encompassed by the Policy's insuring agreement, by which Westport agreed,

> [to] pay on behalf of any INSURED those sums in excess of the deductible which any INSURED becomes legally obligated to pay as DAMAGES as a result of CLAIMS first made against any INSURED during the POLICY PERIOD . . . .

---

[4]  For purposes of the parties' motions for summary judgment only, Defendants accept the version of the Policy attached to the Westport Rule 56.1 Statement of Undisputed Facts as true, correct and authentic.

6

The CLAIM must arise by reason of an act, error, omission or PERSONAL INJURY occurring on or after the RETROACTIVE DATE, if any. Coverage shall apply to all such CLAIMS arising out of services rendered or which should have been rendered by an INSURED, and arising out of the conduct of the INSURED'S profession as a lawyer . . . .

(Id. [Policy], p. 1 of 13).

CHB&R has moved for partial summary judgment on, among other things, its First and Second Counterclaims, involving Westport's duty to defend and to pay for the defense of the Asher Action. As set forth in CHB&R's memorandum in support of that motion, the duty to defend is much broader than the duty to indemnify; an insurer must defend whenever the allegations of the complaint against the policyholder(s) suggest "a reasonable possibility of coverage." Once the insurer's duty to defend is triggered, it continues until the insurer can prove that an exclusion applies totally to bar coverage and that the exclusion is subject to no other interpretation. This issue is addressed in CHB&R's memorandum in support of its cross-motion at pages 7 through 8, and that discussion, including the argument, cited authorities, and cited evidence therein, is incorporated as if fully stated here.

The allegations of the Asher Complaint clearly suggest a reasonable possibility of coverage: they allege conduct that supposedly occurred on or after the Policy's retroactive date, as well as claims against CHB&R, who are "insureds" under the Policy; they also assert claims first made within the policy period of the Policy, arising out of acts allegedly committed by the policyholders in their profession as lawyers. These points are addressed in CHB&R's memorandum in support of their motion for partial summary judgment at pages 8 through 12, and that discussion, including the argument, cited authorities, and cited evidence therein, is incorporated as if fully stated here.

Because the claims asserted in the Asher Complaint suggest "a reasonable possibility of coverage," they trigger Westport's duty to defend CHB&R against the Asher Action, unless and until Westport can prove the application of a policy exclusion. Defendants deny that any exclusion is applicable. This point is addressed in CHB&R's memorandum in support of their motion for partial summary judgment at pages 9 through 17, and that discussion, including the argument, cited authorities, and cited evidence therein, is incorporated as if fully stated here.

## POINT II

### WESTPORT FAILS TO MEET ITS BURDEN TO DEMONSTRATE THE APPLICABILITY OF EXCLUSION B.

Westport attempts to avoid insurance coverage for the Asher Action by relying on its Exclusion B. When an insurer like Westport seeks to defeat coverage by relying on a policy exclusion, that insurer bears the burden of proof. See, e.g., Automobile Ins. Co. of Hartford v. Cook, 7 N.Y.3d 131, 137, 850 N.E.2d 1152, 1155-56 (2006) (citation omitted); Throgs Neck Bagels, Inc. v. GA Ins. Co. of N.Y., 241 A.D.2d 66, 71, 671 N.Y.S.2d 66, 69 (1st Dep't 1998). The burden is a heavy one. To avoid coverage on the basis of an exclusion,

> [A]n insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation and applies in the particular case, and that its interpretation of the exclusion is the "only construction that [could] fairly be placed thereon."

Throgs Neck Bagels, 241 A.D.2d at 71, 671 N.Y.S.2d at 69 (quotation and citations omitted); see also, e.g., Belt Painting Corp. v. TIG Ins. Co., 100 N.Y.2d 377, 383, 795 N.E.2d 15, 17 (2003) (similar). Adding to the insurer's burden is the fact that policy exclusions are therefore accorded "a strict and narrow construction, with any ambiguity resolved against the insurer." Belt Painting, 100 N.Y.2d at 383, 795 N.E.2d at 17 (citation omitted). "[T]he test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the

8

average insured upon reading the policy." <u>Mostow v. State Farm Ins. Cos.</u>, 88 N.Y.2d 321, 327, 668 N.E.2d 392, 423 (1996) (citation omitted); <u>see also</u>, <u>e.g.</u>, <u>Pepper v. Allstate Ins. Co.</u>, 20 A.D.3d 633, 635, 799 N.Y.S.2d 292, 294 (3d Dep't 2005).

Westport's Exclusion B states the following:

[This policy does not apply to:]

B.      any CLAIM arising out of any act, error, omission or PERSONAL INJURY occurring prior to the effective date of this policy if any INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission or PERSONAL INJURY might be expected to be the basis of a CLAIM or suit . . . .

(Westport's Exhibit A [Policy] at p. 4 of 13).  Neither the phrase "could have reasonably foreseen" nor its constituent words are defined in the Westport Policy.  Likewise, the phrase "might be expected to be" remains undefined in the Policy.

According to Westport, Ms. Hennessey and/or CHB&R "were aware, prior to the inception of [the Policy], of their failure to make a timely election on behalf of Mrs. Asher to the ownership of certain life insurance policies . . . and that said failure resulted in Mrs. Asher's inability to retain ownership of the policies.  This would cause any reasonable attorney to anticipate that such error might be expected to form the basis of a malpractice claim . . . ." (Westport Mem. at 2).  Accordingly, Westport argues for an interpretation of Exclusion B according to an "objective" standard ("would cause any reasonable attorney....").  However, Westport fails to advise the Court that "[c]ourts interpreting New York law have not yet directly addressed the issue of whether an objective or subjective standard applies to policy language like that found in [Westport's] Exclusion B." <u>Westport Ins. Corp. v. Goldberger & Dubin, P.C.</u>, No. 04 Civ. 4384 (BSJ), 2006 U.S. Dist. LEXIS 31329, at *9 (S.D.N.Y. Mar. 3, 2006).  Indeed, the only cases relied on by Westport that actually interpreted an exclusion similar to Exclusion B are

Goldberger, 2006 U.S. Dist. LEXIS 31329, a Southern District case that does not rely on New York cases for its interpretation, Mt. Airy Insurance Co. v. Thomas, 954 F.Supp. 1073 (W.D. Pa. 1997) (applying Pennsylvania law), upon which the Goldberger court relied, and Westport Insurance Corp. v. Mirsky, 2002 U.S. Dist. LEXIS 16967, 2002 WL 31018554 (E.D. Pa. Sept. 10, 2002), another federal court case applying Pennsylvania law.[5]

As set forth below, Exclusion B should be interpreted by applying a subjective standard which precludes coverage only if the policyholder knew or believed she had deviated from professional standards and knew or believed, based on all the circumstances, that a malpractice claim would likely result. Without question, under that standard, Westport's motion for summary judgment would be denied, since Patricia Hennessey has averred that she had no such awareness.

> I deny knowing, being aware of, or believing, before July 5, 2006, when we received a claim letter, that our former client, Jayne Asher, believed that she had lost her right to assume ownership of a term life insurance policy and to retain ownership of a variable whole life insurance policy because CHB&R and/or I had failed to exercise her rights under Article IX of the Stipulation of Settlement in her divorce action.

(Hennessey Aff., ¶ 6). Nothing in the record on the parties' motions contradicts Ms. Hennessey's affidavit on that point.

Furthermore, even if an objective standard was used by this Court to interpret Exclusion B, Westport has failed to meet its burden to submit an affidavit, or other evidence of record, to show that under that standard, Exclusion B applies to bar coverage, is subject to no other

---

[5]   Westport also relies on Sirignano v. Chicago Insurance Co., 192 F.Supp.2d 199 (S.D.N.Y. 2002), Ingalsbe v. Chicago Insurance Co., 270 A.D.2d 684, 704 N.Y.S.2d 698 (3d Dep't 2000), and Bellefonte Insurance Co. v. Albert, 99 A.D.2d 947, 472 N.Y.S.2d 635 (1st Dep't 1984), which are untimely notice cases, do not involve exclusions, and should not be relied on here.  Westport likewise relies on Fogelson v. Home Insurance Co., 129 A.D.2d 508, 514 N.Y.S.2d 346 (1st Dep't 1987), in which the court considered the language of an insuring agreement, involving no objective element or standard.  Accordingly, that case should not be relied on here.

reasonable interpretation, and that its interpretation "is the 'only construction that [could] fairly be placed thereon.'"

> ### A. An Interpretation of Exclusion B Calling for an Objective Standard Conflicts with the Purpose of the Policy, the Reasonable Expectations of Lawyer Policyholders, and Other Policy Language.

Westport's Exclusion B bars coverage "if any INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission or PERSONAL INJURY might be expected to be the basis of a CLAIM or suit . . . ."  On the strength of the reasoning of courts in states other than New York, under law other than New York law, Westport argues for the application of an objective standard that bars coverage if the policyholder knew an act, error or omission "might be expected to be the basis of a claim," *or if a "reasonable attorney" could have reasonably foreseen that such could be the case.*  Contrary to Westport's argument, Exclusion B should be applied in a subjective manner, such that it would bar insurance coverage only if a policyholder, here CHB&R, knew or believed that an act, error or omission would be the basis of a claim.

Any adoption of Westport's "objective" standard for applying Exclusion B conflicts with the purpose of the Policy and the reasonable expectations of the ordinary lawyer policyholders reading and purchasing the Policy.  See, e.g., Belt Painting, 100 N.Y.2d at 383, 795 N.E.2d at 17 ("We read an insurance policy in light of 'common speech' and the reasonable expectations of a businessperson.") (citations omitted); Smart Style Indus., Inc. v. Pennsylvania Gen. Ins. Co., 930 F.Supp. 159, 163 (S.D.N.Y. 1996) (policy clause could not be read literally, but had to be construed according to the reasonable expectations of the policyholder); Town of Massena v. Healthcare Underwriters Mut. Ins. Co., 40 A.D.3d 1177, 1181, 834 N.Y.S.2d 736, 740 (3d Dep't 2007) ("policy should be interpreted in light of the reasonable expectations and purposes

11

implicated") (citations omitted).  The adoption of an objective approach also is in conflict with certain other notice-related language in the application for the Policy and the Policy itself.

The Westport Policy is a Lawyers Professional Liability Insurance Policy: a legal malpractice policy.  As set forth earlier, the Policy covers "errors" and "omissions" of policyholders arising in their profession as lawyers.  (Westport Exhibit A [Policy], p. 1 of 13).  In essence, the purpose of the Policy is to provide lawyers with insurance coverage for professional negligence or malpractice claims, and an ordinary lawyer policyholder reading and purchasing the Policy would expect such coverage, even for acts of negligence or malpractice predating the Policy.  (Westport's Exhibit A [Policy], p. 3 of 13):  "The CLAIM must arise by reason of an act, error, omission … occurring on or after the RETROACTIVE DATE….")

The objective standard Westport proposes for Exclusion B could well eviscerate such coverage.  That objective standard is much the same as the standard used under New York law to determine liability for legal malpractice.   Malpractice is proven when a client shows that its attorney "failed to exercise that degree of care, skill, and diligence commonly possessed and exercised by an ordinary member of the legal community [a reasonable lawyer]."  Lamanna v. Pearson & Shapiro, 43 A.D.3d 1111, 1112, 843 N.Y.S.2d 143, 144 (2d Dep't 2007).  Westport's proposed objective standard would deny coverage to a lawyer policyholder if he or she failed to recognize (and report) a breach of duty or an act or omission that could result in a malpractice suit, where a reasonable lawyer would have recognized such.  Assuming a lawyer policyholder being accused of malpractice breached a professional duty but is not aware of having done so, he or she may be liable for malpractice but denied insurance coverage for that liability, if the available coverage is based on the objective standard for which Westport argues.  Such a result is contrary to the purpose of the Policy, which is to provide insurance coverage for legal

malpractice, and to the reasonable expectations of the ordinary lawyers who purchase such insurance in order to receive just such coverage.  See Throgs Neck Bagels, 241 A.D.2d at 72, 671 N.Y.S.2d at 70 ("To construe the exclusion in the manner urged by defendant insurer would be to render the underlying coverage nugatory … where it would reasonably be expected to apply."); Wright v. Evanston Ins. Co., 14 A.D.3d 505, 506, 788 N.Y.S.2d 416, 417 (2d Dep't 2005) (court rejected insurer's interpretation of its exclusion, which would render coverage illusory); Smart Style, 930 F.Supp. at 163 (policy clause not construed literally, but according to the reasonable expectations of the policyholder).

In Estate of Logan v. Northwestern National Casualty Co., 424 N.W.2d 179, 186 (Wis. 1988), the Wisconsin Supreme Court considered the application of policy language similar to Exclusion B contained within the insuring agreement of a lawyers professional liability policy. In Logan, the insurer argued that there should be no coverage if the policyholder knew, or should have known, that he breached a professional duty.  In rejecting the insurer's approach, in favor of a subjective standard, the Wisconsin Supreme Court stated,

> The difficulty with applying an objective standard is apparent when examined in the context of a hypothetical error or omission by an attorney.  For example, an attorney commits a breach of his or her professional duty by not filing a suit within the one year statute of limitations.  The attorney did not file within the year because he or she believed erroneously that the statute of limitations was three years . . .  Under an objective standard, any subsequent policy would except coverage for a claim based on failing to file the suit within one year because, prior to the effective date of the subsequent policy, the attorney should have known that he or she had breached a professional duty by failing to file the suit within the one year statute of limitations.  Thus, because the attorney did not know the correct statute of limitations, but should have known the correct statute, the attorney not only committed a breach of his or her professional duty, but he or she is also denied insurance coverage.  Because we conclude that the parties could not have intended the policy to except coverage in such a situation, and because an exception of coverage in such a situation is contrary to the purpose of professional liability insurance*, we hold that whether an insured had a "basis to believe" [a breach of duty had occurred] must be tested by whether the insured knew or believed that the insured had committed a breach of his or her professional duty.*

13

Id. (emphasis added).[6]

In Liebling v. Garden State Indemnity, 767 A.2d 515, 524 (N.J. Super. Ct., App. Div. 2001), the New Jersey appellate court addressed an insurance policy exclusion nearly *identical* to Westport's Exclusion B.  Relying on the Logan decision to reject the insurer's argument that a reasonable lawyer would have known that certain acts would give rise to a claim, the court held that the exclusion should be applied in a subjective manner:

> [W]e hold that the "reasonably could have foreseen" exclusion in [the insurer's] policy shall be deemed to mean that coverage may be denied *only if the insured knew or believed that there had been a deviation from professional standards and that based on all the known circumstances it was likely that a malpractice claim would be made.*

Id. (emphasis added).  The same should hold true here.

Furthermore, at a minimum, when an objective standard is applied, Exclusion B conflicts with certain other language in the Policy application and the Policy. Where insurance policy provisions are in conflict, they create latent ambiguity that should be construed in favor of the policyholder, here CHB&R.  See, e.g. Hudson v. Allstate Ins. Co., 25 A.D.3d 654, 655, 809 N.Y.S.2d 124, 125 (2d Dep't 2006); Wright, 14 A.D.3d at 506, 788 N.Y.S.2d at 417. Westport's interpretation of Exclusion B, which would deny coverage if the policyholder "could reasonably have foreseen" that an error or omission "might be expected to be the basis of a CLAIM," imposes a standard on CHB&R that is contrary to other, notice-related provisions in the Application and the Policy.  In the Application for the Policy, Westport asks,

> 12.    After inquiry of each lawyer, is the Applicant, its predecessor firms or any lawyer proposed for this insurance aware of any fact or circumstance, act, error,

---

[6]  The Logan court concluded the lawyer policyholder *had* known or had believed he had committed a breach of professional duty at the time his professional liability insurance became effective.  The policy in the Logan case did not contain the "might be expected to be the basis of a claim language" that is contained in the Westport Policy.

14

omission or personal injury which might be expected to be the basis of a claim or suit for lawyers professional liability?

(Westport Exhibit A [Policy & application]).  On its face, Question 12 asks lawyers applying for insurance only to provide Westport with information within their subjective knowledge.

The "Conditions" section of the Policy contains a provision entitled "Reporting of Potential Claims," which likewise focuses on the subjective knowledge of policyholders. According to that provision,

III.    REPORTING OF POTENTIAL CLAIMS

If, during the POLICY PERIOD, an *INSURED first becomes aware of a potential claim* (i.e., any, act, error, omission or PERSONAL INJURY which might reasonably give rise to a CLAIM against any INSURED under this policy) *and gives written notice of such potential CLAIM* to the company during the POLICY PERIOD, *any CLAIM subsequently made against any INSURED arising out of that act, error omission or PERSONAL INJURY shall be considered to have been made during the POLICY PERIOD.*

(Westport's Exhibit A [Policy & application], p. 6 of 13) (emphasis added). The Reporting of Potential Claims provision addresses possible reporting to Westport when the policyholder *becomes aware* that an act, error, or omission might reasonably give rise to a claim.  The word "reasonably" appears in a parenthetic definition of "potential claim;" the provision does not impose any objective standard on the policyholder by requiring reporting when the policyholder "should have" or "could reasonably have" known or been aware of the potential claim.

Accordingly, while Westport argues that Exclusion B would bar insurance coverage whenever a policyholder does not believe a potential claim is likely and does not report it, *if a "reasonable attorney" would have done so,* Westport's Policy and application do not impose any such reporting obligation.   The Policy application requires, and the Policy's Reporting of Potential Claims Provision *permits but does not require,* policyholders to advise Westport if they are subjectively aware of acts, errors and omissions likely to lead to a claim.   As another court

15

noted when asked to apply a similar exclusion, which was inconsistent with the insurer's application question, "For the insurer to . . . say we do not cover matters of which you had notice, even though that notice was too remote for you to have to tell us about it, makes no sense . . . ." Stratford Sch. Dist. v. Employers Reins. Corp., 105 F.3d 45, 47 (1st Cir. 1997). Here, for Westport to argue that CHB&R should lose coverage for not notifying Westport of something of which it had no awareness, even though the Policy requires only that it be notified if they did have such awareness, similarly "makes little sense." The ambiguity arising from the conflict between Exclusion B (as interpreted by Westport) and the subjective standard of both Question 12, and the Reporting of Potential Claims Provision should be resolved in favor of CHB&R, by applying a subjective standard here.

Furthermore, Westport's proposed objective interpretation is unfair here. Nowhere in the Policy does Westport inform its policyholders that any failure to report a "potential claim" will result in a loss of coverage if a claim is thereafter made. The Reporting of Potential Claims provision is not mandatory; *if* the policyholder chooses to report, then any resulting claim will be considered to have been made during the policy period in which the claim was reported. There is, however, no indication that, if such a report of potential claim is not made, Westport will provide no coverage. For this reason as well, Westport's argument should be rejected.

In light of the fact that an objective approach conflicts with the purpose of the Policy, the reasonable expectations of lawyer policyholders, and other language in the Policy application and Policy, the Court should apply a subjective standard to Exclusion B, such that coverage would be barred only if Ms. Hennessey and/or CHB&R knew or believed that they had deviated from professional standards and that, based on all the known circumstances, a malpractice claim was likely. Ms. Hennessey's affidavit demonstrates that is not the case. (See Hennessey Aff.,

16

generally). Westport has submitted no evidence to the contrary and its motion for summary judgment should be denied.

**B.    Even under an Objective Approach, Westport's Summary Judgment Motion Should Be Denied.**

Even if the Court were to apply an "objective" standard to Exclusion B, Westport's motion for summary judgment still should be denied because, although it has the burden of proof here, Westport has failed to demonstrate that, as a matter of law, Exclusion B bars insurance coverage for the Asher Action. Westport has submitted no evidence of record that, before the March 14, 2006 inception of the Policy, (1) CHB&R was aware of a negligent act, error, or omission on their part in connection with Mrs. Asher's exercise of her rights to assume and/or retain the life insurance; **AND** (2) CHB&R foresaw a claim resulting from such negligent act, error or omission, **OR** a reasonable lawyer, in possession of the facts known by CHB&R, could have reasonably foreseen that such a negligent act, error or omission might be expected to be the basis of a claim. See Selko v. Home Ins. Co., 139 F.3d 146, 152-54 (3d Cir. 1998).[7] At a minimum, in light of the record, reasonable minds could differ as to those issues.

Westport relies most strongly on Goldberger, 2006 U.S. Dist. LEXIS 31329, a case it characterizes as "virtually identical to the case at bar." (Westport Mem. at 9). Except for its involvement of a policy exclusion like Exclusion B, however, Goldberger is *nothing* like the case at bar.

---

[7]  According to the Third Circuit in Selko, "First, it must be shown that the insured knew of certain facts. Second, in order to determine whether the knowledge actually possessed by the insured was sufficient to create a 'basis to believe,' it must be determined that a reasonable lawyer in possession of such facts would have had a basis to believe that the insured had breached a professional duty." Selko, 139 F.3d at 152. A similar standard was applied in Mt. Airy Insurance Co. v. Thomas, 954 F.Supp. 1073, 1079 (W.D. Pa. 1997), aff'd, 149 F.3d 1165 (3d Cir. 1998) ("An objective standard would take into account facts or information the [policyholder] knew or possessed."). The Mt. Airy case forms the basis for the decision in Goldberger, 2006 U.S. Dist. LEXIS 31329, the major case relied on here by Westport.

Goldberger involved a policyholder law firm that referred its client's personal injury suit to another attorney. That attorney failed to commence suit against one of the defendants within the applicable statute of limitations period. Such an error was so glaring and obvious a breach of duty that the policyholder law firm contacted the clients and advised them that they should consider bringing a malpractice claim. See Goldberger, 2006 U.S. Dist. LEXIS, at **3-4. The Goldberger court held that coverage was barred because, before the inception of the insurance policy at issue, the policyholder knew that it had failed to act timely to prosecute its clients' claim, and because a reasonable lawyer having its knowledge of that failure would reasonably have foreseen the filing of a malpractice claim. *Indeed, the policyholder had shown it knew a malpractice claim might be expected by itself advising its clients to bring such a claim.*

The filing of a complaint to commence a court action within the statute of limitations, at issue in Goldberger, is an example of an activity not performed by clients but, instead, is delegated by clients to their lawyers. It is understandable that the failure properly to discharge that delegated duty would be considered by the law firm and the Goldberger court to be such a glaring breach that the firm (and a "reasonable lawyer") could foresee the bringing of a claim for malpractice.[8]

This case, however, is different—it involves no failure by a lawyer to carry out a delegated duty, glaring or otherwise, and no recognition by CHB&R that a malpractice claim existed. Here, the client, Jayne Asher, executed a Stipulation that assigned to her, and her alone, the right to elect to assume and/or retain certain life insurance policies. (Hennessey Aff., ¶¶ 12-

---

[8] Two of the notice cases relied on by Westport, Ingalsbe v. Chicago Insurance Co., 270 A.D.2d 684, 704 N.Y.S.2d 697 (3d Dep't 2000), and Bellefonte Insurance Co. v. Albert, P.C., 99 A.D.2d 947, 472 N.Y.S.2d 635 (1st Dep't 1984), also involved lawyer policyholders who breached their duties to clients by allowing the statute of limitations to pass before filing claims. The Appellate Divisions held that the policyholders' failure to give notice of potential claims relieved the insurers of their policy obligations. Again, no such glaring error was involved here; in fact, CHB&R were aware of no error or omission at all. (See Hennessey Aff., ¶ 28).

13 & Ex. 1 at 31-33). The Stipulation did not delegate to CHB&R any duty to make those elections. (Hennessey Aff., ¶¶ 13(c)-(d)). Furthermore, Mrs. Asher never assigned her rights of election to CHB&R; she never instructed them to carry out either election on her behalf. (Hennessey Aff., ¶¶ 14-18). The only event Westport points to as putting the CHB&R on notice of some potential claim, the Appellate Division's decision of February 4, 2004, is not critical of CHB&R, and only refers to the insurance election rights as belonging solely to "the wife" [Mrs. Asher]. (Hennessey Aff., ¶ 24 & Ex. 5 [App. Div. Dec.]).

Accordingly, when Mrs. Asher failed to carry out timely her elections (or, by remaining silent, elected not to assume or retain the life insurance policies), and the Appellate Division rejected the extension of time for her to do that, which CHB&R had argued for at her request (Hennessey Aff., ¶ 23), Ms. Hennessey and CHB&R did not know or believe that they had committed any negligent act, error or omission in connection with Mrs. Asher's insurance election rights, or that a malpractice claim "might be expected" to result from any such act, error or omission. (Hennessey Aff., ¶ 6). Indeed, on the basis of the facts known by CHB&R, a "reasonable lawyer" would not have known or believed otherwise. That is particularly true here under the following circumstances: Ms. Hennessey had risked her own personal safety to foil a conspiracy to murder Mrs. Asher (Hennessey Aff., ¶¶ 9-10), who was appropriately grateful (Hennessey Aff., ¶ 11); eight days after Mrs. Asher's February 1, 2003 deadline to exercise her life insurance rights, she sent Ms. Hennessey a hand-written note praising her "excellent legal services" (Hennessey Aff., ¶ 22 & Ex. 2); and Ms. Hennessey continued to represent Mrs. Asher for about a year after the Appellate Division's February 24, 2004 decision. (Hennessey Aff., ¶ 25). There is no record evidence of any dissatisfaction on Mrs. Asher's part with CHB&R until well after the March 14, 2006 inception of the Policy, when CHB&R received the June 29, 2006

19

Claim Letter.  (Hennessey Aff., ¶ 26).  That letter put CHB&R on notice that a malpractice claim "might be expected" and CHB&R provided Westport with timely notice of that potential claim. (Westport's Exhibit B).

Mt. Airy Insurance Co. v. Thomas, 954 F.Supp. 1073 (W.D. Pa. 1997), relied on by the Goldberger court and Westport in its supporting memorandum, likewise does not demonstrate that Exclusion B applies here as a matter of law.  Mt. Airy involved the failure by a lawyer policyholder to serve one of the defendants with process and to prosecute his client's personal injury case for nearly twelve years after commencing the case by writ of summons.  The malpractice policy at issue incepted after the policyholder's appeal of the trial court's dismissal was quashed, for failure to follow proper procedure.  The district court held that coverage was barred on the basis of an "Exclusion B-like" exclusion:

> [T]he defendant knew that he had not acted to prosecute his client's claim during the approximately twelve years of its pendency, and knew that the court had dismissed . . . on that basis.  These facts are undisputed.  A reasonable person aware of these facts could expect that a malpractice claim *might* result.

Id. at 1080 (emphasis in original).  In its opinion, the Mt. Airy court addressed the concern of the court in the Logan case referenced earlier in this memorandum *that an attorney that does not know he committed an error would lose insurance coverage.*  In that case, the Mt. Airy court advised, "applying the same objective standard we would be compelled to reach a different conclusion assuming identical language in the insurance application, form and contract . . . . we disagree with Logan  . . . that applying an objective standard under those facts would result in the denial of coverage." Id.

Like filing a complaint, the service of a summons and the prosecution of a lawsuit are activities that a client delegates to his or her lawyer.  Again, it is understandable that the failure to serve a summons and thereafter to fail, for twelve years, to prosecute a case would be

20

considered by the Mt. Airy court to be such a glaring breach that the policyholder knew about it, and, with that knowledge, could reasonably have expected a claim. But, in this case, no such duty was at issue and CHB&R possessed no knowledge of any alleged act, error or omission prior to the inception of the Policy. (Hennessey Aff., ¶ 28). Had the facts of this case been before the Mt. Airy court, that court undoubtedly would have been "compelled to reach a different conclusion," and find the exclusion not applicable. Id.[9]

Finally, in Westport Insurance Corp. v. Mirsky, Civ. A. No. 00-4367, 2002 WL 31018554 (E.D. Pa. Sept. 10, 2002), the errors at issue were even more glaring. There, the lawyer policyholders were twice sanctioned personally, and the testimony of each of their medical malpractice client's expert witnesses was barred. According to the underlying state trial court, the cause was "the continual failure of [the lawyer policyholders] to comply with discovery court orders." Id. at *6. In affirming the state trial court's entry of summary judgment (due to the client's resulting inability to establish a *prima facie* case), the state appellate court noted expressly that the lawyer policyholders had acted willfully "and in bad faith." Id. at *7. The Mirsky court concluded that, prior to the inception of the insurance at issue and as of the underlying entry of summary judgment, the lawyer policyholders knew of the discovery issues, the sanctions, and the trial court's criticisms of counsel; the district court held that a "reasonable

---

[9]    One of the notice cases relied on by Westport, Sirignano, 192 F.Supp.2d 199, also involved the lawyer policyholder's failure to prosecute his client's claim. There, the policyholder failed to provide expert reports over a fifteen month period, following a calendar call in which  the judge marked the case off calendar after the policyholder had failed to timely supply the expert reports.  The case was dismissed as "abandoned" because the policyholder had done nothing to restore the case to the calendar with one year, as required by CPLR 3404.  The court held that each of the series of errors "was clearly brought to [the policyholder's] attention," and "[i]t is hard to imagine what more, short of the filing of a [malpractice] complaint by the client, would be necessary to trigger the policy's [notice requirement]." Id. at 204. Here, no errors or omissions were brought to the attention of CHB&R, who knew of no breach, error or omission.

attorney" in that position would have realized he committed an act, error or omission that might be expected to be the basis of a claim. Id. at *12.[10]

Again, this case is different. While the conduct of discovery is an activity delegated by the client to his or her lawyer, there are no delegated duties here that were the subject of breach, no issues of non-compliance with court procedure, no attorney sanctions, and the Appellate Division opinion that Westport maintains should have alerted CHB&R to the possibility of a claim contains no criticism, or even mention, of the handling of Mrs. Asher's divorce proceedings by CHB&R. (Hennessey Aff. ¶¶ 15-18, 24). Indeed, the Appellate Division referred to the rights of election in the Stipulation as belonging solely to "the wife [Mrs. Asher]." J.A v. S.A., 4 A.D.2d 248, 251, 773 N.Y.S.2d 14, 17 (1st Dep't 2004).

In light of the dearth of any evidence to support Westport's motion for summary judgment, Westport appears to be using the objective standard to improperly argue that simply because the wrongful acts that CHB&R allegedly committed in connection with the Asher rights to election occurred before Westport's policy period, Exclusion B should be triggered and coverage denied, even though the Policy, on its face, covers claims resulting from such acts, so long as the acts occurred on or after its retroactive date.

Westport and its predecessor, Coregis Insurance Company ("Coregis"), have considerable litigation experience in disclaiming insurance coverage based on exclusions like Exclusion B. Indeed, they have been involved in a majority of the reported court decisions involving such disclaimers. In spite of that fact, Westport fails to cite any case involving

---

[10] The filing of timely pleadings is also a duty delegated by the client to his or her lawyer. In Fogelson v. Home Insurance Co., 514 N.Y.S.2d 346 (1st Dep't 1987), the lawyer policyholders failed to file a timely Answer, resulting in the entry of a default judgment. Prior to the inception of the relevant insurance policy, the clients advised the lawyer policyholders that they had been advised to consider bringing a malpractice action. The court held that the policyholders had a basis to believe they had breached a duty prior to the inception of the policy. *This case*, however, does not involve a delegated duty, and, prior to the inception of the Westport Policy, neither Jayne Asher nor anyone else suggested that a malpractice claim might be expected.

Westport or Coregis that does not advance its position here.  One such case is <u>Westport Insurance Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.</u>, 267 F.Supp.2d 601, 609 (E.D. Tex. 2003), where the court labeled Westport's approach "myopic."  According to the court, Westport "would exclude from coverage all possibly wrongful acts that occurred prior to the policy period, even if the attorney was not subjectively aware that his actions were in error and even though the attorney had no indication that his client intended to file a claim against him."  <u>Id.</u>  The <u>Atchley</u> court ultimately adopted an objective approach by which "Exclusion B-like" language precluded coverage *only* where: (a) the policyholder subjectively knew of an impending claim, (b) facts known to the policyholder "would lead a reasonable attorney to conclude that a grossly flagrant or glaring breach of duty occurred," or (c) the policyholder knew of facts that would "lead a reasonable attorney to conclude at least some breach of duty occurred," AND those facts indicated that the client was so dissatisfied a reasonable attorney could conclude a claim was likely.  <u>Id.</u> at 611.  In denying summary judgment to Westport because all three factors were absent, the <u>Atchley</u> court stated, "*The insurer must do more than merely point out that a wrongful act occurred prior to the policy period in order to demonstrate that the insured either subjectively knew or should have known that the action in question would be the basis of a claim.*"  <u>Id.</u> at 624 (emphasis added).

The result should be the same here.  None of the three <u>Atchley</u> factors are present in this case and Westport has similarly done nothing more than "point out that [allegedly wrongful acts] occurred prior to the policy period."  <u>Id.</u>; see <u>Redeemer Covenant Church of Brooklyn Park v. Church Mut. Ins. Co.</u>, 567 N.W.2d 71, 79 n.12 (Minn. Ct. App. 1997) ("'[K]nowledge of circumstances that might result in a claim' has been held to mean more than speculation.") (citations omitted); see also <u>Sanches v. Morris</u>, 802 So.2d 755, 760 (La. Ct. App. 2001) (in case

involving exclusion nearly identical to Exclusion B, appellate court affirmed denial of summary judgment to insurer:  "[a]s the mover in the summary judgment, the burden was on Coregis [Insurance Company] to show an absence of factual support for [the policyholder's] claims, and Coregis failed to prove that [the policyholder] knew or should have known of the claim filed against him.").

Likewise, in Westport Insurance Corp. v. Lilley, 292 F.Supp.2d 165 (D. Me. 2003), the district court, applying an objective approach, cautioned that exclusions like Exclusion B should not be applied so expansively: "Although any 'act or omission' by an attorney that did not result in a hugely favorable outcome to the client 'might' lead a client to make a claim and 'foreseeability' is a virtually limitless concept, *the touchstone here is reasonableness, not conceivability."*  Id. at 172 (emphasis added) (citation omitted). The Lilly court rejected Westport's summary judgment argument that the Lilly lawyer policyholders should have reasonably foreseen that a jury's verdict reduction would result in a claim, stating, "To say that the [lawyer policyholders] could have reasonably foreseen a claim against them [at that time] means that any trial attorney who loses a substantial jury verdict, whether representing plaintiff or defendant, should put his carrier on notice that the client may ultimately seek compensation from the lawyer."  Id.  In the vernacular of the Lilly court, to say that Ms. Hennessey and CHB&R could have reasonably foreseen a claim is to say that any attorney who loses in court should put his or her carrier on notice, an untenable position, since insurers would then be swamped with potential claims.

Even under an objective approach, Westport has submitted no evidence to demonstrate, either as a matter of fact or as a matter of law, the elements of that approach.  Again, Westport has failed to show that CHB&R were subjectively aware of any error or omission on their part in

connection with Mrs. Asher's rights to election under the Stipulation, that they foresaw that any such error or omission could be expected to lead to a claim, or that a "reasonable attorney" with their knowledge could have foreseen such a claim could be expected. The record is to the contrary and, at the very least, genuine issues of material fact exist that precludes a grant of summary judgment in Westport's favor. Accordingly, Westport's summary judgment motion should be denied.

## III.    <u>CONCLUSION</u>

In consideration of the foregoing, defendants Patricia Hennessey and CHB&R respectfully request that the Court deny the motion of plaintiff Westport for summary judgment.

Dated: New York, New York
December 7, 2007                                    Respectfully submitted,

                                                   FRIED & EPSTEIN LLP

                                                   By:_____
                                                        John W. Fried (JF2667)

                                                   1350 Broadway, Suite 1400
                                                   New York, New York 10018
                                                   Tel.: (212) 268-7111

                                                   *Attorneys for Defendants,*
                                                   *Patricia Hennessey, Esq., and Cohen*
                                                   *Hennessey Bienstock & Rabin P.C.,*
                                                   *f/k/a Cohen Hennessey & Bienstock P.C.*