# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------------X

J.A.,

Plaintiff,

-against-

S.A.,

Defendant.

---------------------------------------------------------------------X

Index No. 350060/01

IAS PART
HON. JOAN B. LOBIS

STIPULATION OF SETTLEMENT

IT IS HEREBY STIPULATED AND AGREED ("Agreement") as of this 15th day of October, 2002, by and between the parties, JAYNE ASHER (hereinafter "Wife" or "Jayne" or "plaintiff"), residing at 21 Hampton Road, Scarsdale, New York 10583 and SANFORD ASHER (hereinafter "Husband" or "Sandy" or "defendant"), residing at c/o Jaffe and Asher LLP, 600 Third Avenue, New York, New York 10016 that the above-entitled action is settled as follows:

1. The parties were married on December 13, 1980, by a rabbi in the State of New York. They are presently married.

2. There are two (2) children of the marriage, ALEXIS ASHER, born December 18, 1982 and REBECCA ASHER, born April 25, 1986 ("Ali," "Becky," "Child" or "Children"), and no other child is expected.

3. The parties desire that this Agreement, which is entered into after due and considered deliberation, shall be, and shall constitute, a complete, final and effective

SA
JA.

4. Neither the Husband nor the Wife shall incur or cause to be incurred any debts or liabilities whatsoever upon the credit of the other.

5. Husband shall within 10 days of the date hereof request in writing that US Trust release plaintiff from her guarantee of the letter of credit issued by US Trust, and, in any event, and in all circumstances indemnifies plaintiff from any claim by US Trust under such guaranty.

ARTICLE IV

Spousal Support

1. The Court issued an order of pendente lite support on October 22, 2001, which required Husband to make payments to the Wife in the amount of $50,000 per month (unless Husband chose to continue to pay mortgage and taxes on the Scarsdale Residence directly), and to pay unreimbursed medical, dental, pharmacological and therapy expenses of the Wife, and to pay costs of the Wife's membership in Metropolis Country Club.

2. On or about May 1, 2002, Husband made the payment under the pendente lite order including $42,000 to the Wife, and the May mortgage payment to U.S. Trust in respect of the Scarsdale Mortgage (the "May payments"). Husband agrees that, notwithstanding that the spousal support payment required to be made pursuant to this Agreement beginning as of May 2002 is less than the amount he previously paid to and



on behalf of the Wife, he shall not be entitled to any refunds of payments or credits against future payments due to the Wife for the May payments made by him.

3. On May 23 2002, Husband paid $51,000 in arrears of temporary support due to the Wife, and represents and warrants that all payments to third parties (medical, dental and therapy provided and country club) required by the pendente lite order that are outstanding as of May 20, 2002, shall be paid by him simultaneously with the payment to the Wife of $550,000 as provided above in Article, II, paragraph 37, upon presentation of the bills by the Wife. Wife represents that she has turned over all such bills to Husband.

4. Beginning as of May 1, 2002, the Husband shall pay to the Wife as and for spousal support the sum of Forty Five Thousand ($45,000) Dollars per month, payable in advance of the first (1st) day of each month, which support shall not be taxable to the Wife, nor deductible to the Husband, until the earliest to occur of (a) the Husband's death; (b) the Wife's death; (c) the Wife's remarriage; or (d) July 31, 2007. The parties acknowledge that the May, June, July, August , September and October 2002 payments have been made.

5. Beginning with the payment due to Wife on February 1, 2003, all payments of spousal support due to the Wife pursuant to his Article shall be made to the Wife semi-annually, in advance. For example, on February 1, 2003, Husband shall pay Wife the sum of Two Hundred Seventy Thousand Dollars, which constitutes spousal support



payments due to the Wife for the period February 2003 through July 2003. On or before August 1, 2003, the Husband shall pay the Wife Two Hundred Seventy Thousand Dollars, which constitutes spousal support due to the Wife for the period August 2003 through January 2004. On or before August 1, 2007, Husband shall pay Wife One Hundred thirty Five Thousand Dollars ($135,000) which constitutes spousal support due to Wife for the period August 2007 through January 2009.)

6. Beginning on August 1, 2007, the Husband shall pay to the Wife as and for spousal support the sum of Twenty Two Thousand Five Hundred Dollars ($22,500) per month, payable six months in advance, which support shall not be taxable to the Wife, nor deductible to the Husband, until the earliest to occur of (a) the Husband's death; (b) the Wife's death; (c) the Wife's remarriage; or (d) July 31, 2009.

7. Beginning on August 1, 2009, the Husband shall pay to the Wife as and for spousal support the sum of Ten Thousand Dollars ($10,000) per month, payable six months in advance, which support shall not be taxable to the Wife, nor deductible to the Husband, until the earliest to occur of (a) the Husband's death; (b) the Wife's death; (c) the Wife's remarriage.

8. Husband shall continue to provide health insurance to the Wife until the parties are divorced, at no cost to the Wife. Wife will apply for COBRA benefits promptly upon her receipt of the appropriate forms from the insurer (or from Jaffe & Asher LLP, if appropriate). Wife shall notify Husband of the issuance of a policy to her individually.

SY
JA

Subsequent to the judgment of divorce between the parties and prior to the time that Wife has been enrolled in the Jaffe and Asher LLP health insurance plan through COBRA, Husband shall cause Jaffe and Asher LLP to cooperate in all reasonable respects pursuant to the Jaffe and Asher LLP health insurance policy and COBRA to avoid any gap in health insurance coverage for plaintiff, by, if permissible, continuing to provide heath insurance to Wife until she is permitted to enroll pursuant to COBRA and Wife will reimburse Husband for his additional cost, if any, of continuing to provide health insurance coverage to the Wife. (If there is no additional cost to the Husband of covering the Wife under Husband's family plan that covers the children, the Wife will not be required to reimburse the Husband.)

9. Notwithstanding anything to the contrary in the above paragraphs of this Article, all payments of spousal support to Wife will terminate upon the earliest to occur of the death of either party or the Wife's remarriage.

10. All payments by the Husband to the Wife under this Article shall be made by wire transfer, good check or money order, and forwarded to the Wife at her residence at 21 Hampton Road, Scarsdale, New York 10583, or at such other place as to which she shall have given the Husband prior written notice.

11. Upon the happening of any event which shall result in the change or cessation of any payments to the Wife hereunder, such change or cessation shall be

effective prospectively as of the date of such event and shall not excuse the Husband's obligation to make any payments due prior thereto.

12. Commencing in tax year 2002, Husband shall have the option annually to allocate a portion of the spousal support paid to the Wife from non-taxable support to support that will be includable in the Wife's income and deductible by the Husband, provided that, the Wife shall pay no income tax as a result of Husband's election, or that Husband pay Wife the amount of any such tax incurred by the Wife, and Husband pays in advance, all reasonable accounting expenses to Wife's accountant, for the review of documents, calculations of tax and deductions and preparation of tax returns to the extent that the costs of preparation of tax returns, review of documents and calculation of tax and deductions are attributable to the work resulting from the Husband's election. Husband shall notify the Wife, in writing, not later than February 1st of the year following that he desires to elect the option for the prior tax year. Wife, or her accountant shall be permitted to make all appropriate inquiries of Husband's accountant to ensure that Wife's tax return will be proper, and shall be entitled to see Husbands tax return (which may be redacted to remove any information unnecessary for Wife to undertake such review). Husband indemnifies wife against any loss and all costs resulting from any false information given by Husband to Wife under this paragraph.

13. If Husband elects to allocate a portion of the spousal support from taxable to non-taxable, Husband shall pay all expenses related to any tax audit or review of the Wife's tax return as a result of Husband's election.

14. Each party individually represents that all of the terms of this Agreement, including, but not limited to, the terms of this Article concerning spousal support and maintenance, are fair and reasonable at the time of the making of this Agreement, and that he and she will not claim, at the time of judgment of divorce or thereafter, that any of the terms of this Agreement is, or are, unfair, unreasonable or unconscionable.

15. The parties have agreed that this Agreement is to be incorporated by reference, and shall survive and not merge, in any final judgment of divorce between the parties, and each party agrees that the entry of that final judgment shall constitute a finding by the court that all of the terms of this Agreement, including, but not limited to, the provisions on maintenance and support and equitable distribution were, and are, fair and reasonable at the time of making of this Agreement, and at the time of entry of the judgment.

16. The standard for modification of support payments to the Wife shall be unanticipated, involuntary and substantial change of circumstances of either party. Such a substantial change will not include, for example, the Husband's voluntary retirement. Husband acknowledges at the date of execution of this Agreement he has relocated from New York to Florida, anticipatesremarriage and the reduction in his ownership percentage



in the firm of Jaffe & Asher LLP. Husband further acknowledges that he is unaware of and at present cannot foresee any circumstance or condition that would cause him to be unable to make the payments provided for in this Agreement.

ARTICLE V

Custody

1. The Wife shall have custody of Ali Asher. The parties agree that for the foreseeable future, it is in Becky's best interest that she reside with the Husband to facilitate her attendance in school in Florida. During the period that Becky resides with Husband, Wife consents to joint custody with Husband, with residential custody to the Husband, and to the suspension of child support for Becky, except as set forth below:

a. Husband shall provide Wife with all material third party information concerning Becky which comes into his possession including information provided by her educational institution, health care providers and the like, unless the Wife has arranged to get same from the third party directly. The parties agree that they will attempt to speak to each other at least monthly concerning their daughters' welfare.

b. However, if Becky once again resides with Wife, or attends an overnight educational institution away from the home of either parent, Wife shall have sole custody of Becky (but shall keep Husband informed of all material events concerning Becky's health and education). If Becky resides with the



reasonably necessary to subordinate the liens of the Wife to the holder of any permitted senior lien.

3. The Security Agreement is incorporated by reference and made part of this Agreement, and the parties agree that the Security Agreement may be enforced as a matrimonial agreement, in the same manner as all provisions of this Agreement and the Judgment of Divorce which incorporates but does not merge this Agreement and the Security Agreement.

ARTICLE IX

Life and Health Insurance

1. Wife may, at her option assume, at her expense, the existing term life insurance policy on Husband's life (Policy No. 897201 with Berkshire Life Insurance Co.) which has a death benefit of One Million Dollars ($1,000,000).

a. Wife shall elect, by February 1, 2003, whether she wishes to assume the policy, in which event, Wife shall have sixty (60) additional days, if necessary, to effectuate the transfer of ownership of said policy to herself.

b. Husband shall cooperate with Wife's effort to effectuate the transfer of the policy and shall sign all documents required to effectuate the transfer.

c. Husband represents that the premiums on said policy in this year are Five Thousand Six Hundred ($5,600) Dollars per year, and that the policy premiums have been paid through July 2003.



    d.    If the Wife elects to assume the policy, any pre-paid premiums shall be pro-rated between the parties as of the date Wife elects to assume ownership of said policy.

    e.    If, at any time in the future, Wife elects to relinquish said policy, she shall offer the ownership of same to Husband, prior to such relinquishment.

2.    Wife is the owner of a variable ordinary life policy on the life of Husband (New England Financial Policy No. 07092811) which has a death benefit of One Million Dollars ($1,000,000) and has a cash surrender value of approximately Two Hundred Twenty Nine Thousand Six Hundred Seventy Dollars and Seven Cents ($229,670.07). Wife shall transfer the ownership of said policy to Husband unless, by February 1, 2003, Wife notifies Husband that she elects to retain ownership of said policy.

    a.    If Wife retains ownership of said policy, Wife shall cause Husband to receive the cash surrender value of the policy as of the date of execution of this Agreement by means of a policy loan and/or her own funds, the obligation upon which shall be solely Wife's.

    b.    The annual premium for said policy is Nineteen Thousand Seven Hundred Ninety-Five ($19,785) Dollars per year. Husband represents that he has paid the premium on said policy through February 11, 2003. If Wife elects to retain ownership of said policy, she shall reimburse Husband



for the cost of the pre-paid premium from the date she takes ownership thereof.

c.   The transfer of ownership of said policy or the proceeds of the policy loan (if Wife elects to retain ownership of the policy) shall be accomplished, within sixty (60) days after Wife notifies Husband of her decision pursuant to this paragraph or as soon thereafter as possible if the life insurance company is the cause for any delay beyond 60 days.

d.   If, at any time in the future, Wife elects to relinquish said policy, she shall offer the ownership of same to Husband, prior to such relinquishment.

3.   If requested by Wife, at any time following the execution of this Agreement Husband will assist her (i.e. by taking a physical examination, etc.) in efforts to obtain additional insurance on Husband's life at Wife's expense. Husband agrees to submit to a life insurance physical examination within 10 days of the execution hereof.

4.   On or before November 30, 2002, Husband shall deliver to the Wife whatever documents or letters of authorization as may be reasonably required, including to enable the Wife to document that the life insurance described above is in full effect.

5.   The policies of insurance on Husband's life listed in Schedule E shall be maintained until each child's emancipation, as defined herein. Defendant shall not be required to pay premiums for the maintenance of such policies. The parties agree that

future premiums shall be paid from policy loans against the cash surrender value of the policies, at no expense to Husband.

Health Insurance

6.  The Wife and children are presently covered under hospitalization and major medical policies provided by the Husband through Jaffe & Asher LLP. The Husband will continue to provide health insurance for the Wife, until entry of the judgment of divorce.

7.  Following the entry of a judgment of divorce, the Husband shall cause Jaffe and Asher LLP to cooperate in all reasonable respects pursuant to the Jaffe and Asher LLP health insurance policy and COBRA to avoid any gap in health insurance coverage for plaintiff, by, if permissible, continuing to provide heath insurance to Wife until she is permitted to enroll pursuant to COBRA and Wife will reimburse Husband for his additional cost, if any, of continuing to provide health insurance coverage to the Wife. (If there is no additional cost to the Husband of covering the Wife under Husband's family plan that covers the children, the Wife will not be required to reimburse the Husband.)

8.  The Husband shall continue to provide health insurance coverage for each Child until her completion of college, or emancipation, whichever is later.



10. Binding on Successors: This Agreement and all the obligations and covenants hereunder shall enure to the benefit of and bind the parties hereto, their heirs, executors, administrators, legal representatives and assigns.

Witness for the Wife

Patricia Henessy

Jayne Asher

Witness for the Husband

Sanford S. Asher

46

M:\LMN-Transactions\Asher\Documents\Stipulation of Settlement.un-redlined.101002doc.doc

STATE OF NEW YORK )
) ss:
COUNTY OF NEW YORK)

On the 18th day of October , in the year 2002, before me, the undersigned, a Notary Public in and for said State, personally appears, JAYNE ASHER, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

JEFFREY LOWITT
Notary Public, State of New York
No. 02LO6011389
Qualified in Nassau County
Commission Expires August 10, 20 06

10-14-2002 02:53pm From-JAFFE & ASHER 2126871073 T-883 P.002/004 F-832

10. Binding on Successors: This Agreement and all the obligations and covenants hereunder shall enure to the benefit of and bind the parties hereto, their heirs, executors, administrators, legal representatives and assigns.

Witness for the Wife

_______________________ _______________________
Jayne Asher

Witness for the Husband

_______________________ _______________________
Sanford S. Asher

46-A

M:\LMN-Transactions\Asher\Documents\Stipulation of Settlement.un-redlined.101002doc.doc

10-14-2002 02:53pm From-JAFFE & ASHER 2126871079 T-883 P.003/004 F-832

STATE OF FLORIDA )
) ss:
COUNTY OF DADE )

On the 14 day of October, in the year 2002, before me, the undersigned, a Notary Public in and for said State, personally appears, SANFORD S. ASHER, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in her capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Enrique Barthe
My Commission DD110995
Expires April 22, 2006

Notary Public

47-A

M:\LMH-Transactions\Asher\Documents\Stipulation of Settlement.unredlined.101002doc.doc