UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
WESTPORT INSURANCE CORPORATION,             :
                                            :
                              Plaintiff,    :        Case No. 07 Civ. 6726 (SHS) (RLE)
                                            :
            -against-                       :
                                            :
PATRICIA HENNESSEY, ESQ., and COHEN,        :
HENNESSEY, BIENSTOCK & RABIN, P.C.,         :
f/k/a COHEN, HENNESSEY, BIENSTOCK, P.C.,    :
                                            :
                              Defendants.   :
-------------------------------------------------------------x


### DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTION FOR
### <u>PARTIAL SUMMARY JUDGMENT</u>




FRIED & EPSTEIN LLP
1350 Broadway, Suite 1400
New York, New York 10018
Tel.: (212) 268-7111

*Attorneys for Defendants,*
*Patricia Hennessey, Esq., and Cohen*
*Hennessey Bienstock & Rabin P.C.,*
*f/k/a Cohen Hennessey Bienstock P.C.*


December 7, 2007

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT.......................................................................1

II.   STATEMENT OF FACTS ............................................................................3

      CHB&R's Representation of Jayne Asher........................................................3

      Jayne Asher's Legal Malpractice Claim against CHB&R .................................5

      The Westport Insurance Policy ......................................................................5

      Jayne Asher's State Court Legal Malpractice Action .........................................6

III.  LEGAL ARGUMENT ..................................................................................7

      POINT I .......................................................................................................7

            CHB&R IS ENTITLED TO SUMMARY JUDGMENT ON ITS
            FIRST AND SECOND COUNTERCLAIMS BECAUSE
            WESTPORT HAS A DUTY UNDER ITS INSURANCE
            POLICY TO DEFEND THE ASHER ACTION ON BEHALF
            OF CHB&R. .........................................................................................7

      A.    The Duty to Defend Is Triggered By "a Reasonable Possibility of
            Coverage".............................................................................................7

      B.    There Is a Reasonable Possibility that the Asher Complaint Is
            Covered by the Policy..........................................................................9

      C.    Westport Has Failed to Meet its Heavy Burden of Proving the
            Applicability of Exclusion B ...............................................................12

      POINT II ......................................................................................................17

            CHB&R IS ENTITLED TO REIMBURSEMENT OF THE
            ATTORNEYS' FEES AND COSTS PAID IN DEFENDING
            THIS ACTION COMMENCED BY WESTPORT.............................17

POINT III..................................................................................................19

IF CHB&R IS AWARDED PARTIAL SUMMARY JUDGMENT, THIS ACTION SHOULD BE DISMISSED WITHOUT PREJUDICE OR STAYED, PENDING THE ADJUDICATION OF THE ASHER ACTION..................................19

IV.    CONCLUSION ............................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

American Home Assur. Co. v. Port Auth. of N.Y. and N.J., 66 A.D.2d 268,
    412 N.Y.S.2d 605 (1st Dep't 1979).......................................................19

American Home Assur. Co. v. Weissman, 79 A.D.2d 923, 434 N.Y.S.2d
    410 (1st Dep't 1981).................................................................18, 20

Automobile Ins. Co. of Hartford v. Cook, 7 N.Y.3d 131, 850 N.E.2d
    1152 (2006)...........................................................................passim

Belt Painting Corp. v. TIG Ins. Co., 100 N.Y.2d 377, 795 N.E.2d 15 (2003)...............12

Ehrlich v. Aetna Cas. & Sur. Co., 95 A.D.2d 936, 463 N.Y.S.2d 934
    (3d Dep't 1983) ...........................................................................19

Home Exterminating Co. v. Zurich-American Ins. Group, 921 F.Supp. 318
    (D. Md. 1996) ............................................................................21

Hout v. Coffman, 126 A.D.2d 973, 511 N.Y.S.2d 990 (4th Dep't 1987) ......................19

J.A v. S.A., 4 A.D.2d 248, 773 N.Y.S.2d 14 (1st Dep't 2004).........................................5

Mighty Midgets, Inc. v. Centennial Ins. Co., 47 N.Y.2d 12, 389 N.E.2d
    1080 (1979) ..........................................................................17, 18

Mostow v. State Farm Ins. Cos., 88 N.Y.2d 321, 668 N.E.2d 392 (1996) ....................12

New York Central Mut. Fire Ins. Co. v. Heidelmark, 108 A.D.2d 1093,
    485 N.Y.S.2d 661 (3d Dep't 1985).........................................................16

Pepper v. Allstate Ins. Co., 20 A.D.3d 633, 799 N.Y.S.2d 292 (3d Dep't 2005) ...........12

Ruder & Finn, Inc. v. Seaboard Sur. Co., 52 N.Y.2d 663, 422 N.E.2d
    518 (1981).................................................................................................... 7, 8, 16

Spoor-Lasher Co. v. Aetna Cas. and Sur. Co., 39 N.Y.2d 875,
    386 N.Y.S.2d 221 (1976) .........................................................................................19

Standard Fire Ins. Co. v. Sassin, 894 F.Supp.1023 (N.D. Tex. 1995)..........................20

State of N.Y. v. Blank, No. 88-CV-163, 1991 WL 208883
    (Oct. 10, 1991 N.D.N.Y.), aff'd in part, rev'd in part on other grounds,
    27 F.3d 783 (2d Cir. 1994) .......................................................................................21

Throgs Neck Bagels, Inc. v. GA Ins. Co. of N.Y., 241 A.D.2d 66,
    671 N.Y.S.2d 66 (1st Dep't 1998)...........................................................................12

Town of Huntington v. Hartford Ins. Group, 69 A.D.2d 906, 415 N.Y.S.2d
    904 (2d Dep't 1979).................................................................................................19

U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 3 N.Y.3d 592,
    822 N.E.2d 777 (2004) ....................................................................................... 17, 18

U.S. Underwriters Ins. Co. v. Kum Gang, Inc., 443 F.Supp.2d 348 (E.D.N.Y. 2006)...20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
WESTPORT INSURANCE CORPORATION,      :
                                     :
                          Plaintiff, :      Case No. 07 Civ. 6726 (SHS) (RLE)
                                     :
          -*against*-                :
                                     :
PATRICIA HENNESSEY, ESQ., and COHEN, :
HENNESSEY, BIENSTOCK & RABIN, P.C.,  :
f/k/a COHEN, HENNESSEY, BIENSTOCK, P.C., :
                                     :
                         Defendants. :
-------------------------------------------------------------x

### DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTION FOR
### PARTIAL SUMMARY JUDGMENT

Defendants Patricia Hennessey, Esq. and Cohen Hennessey Bienstock & Rabin P.C. f/k/a Cohen Hennessey & Bienstock P.C, by their undersigned attorneys, hereby submit this memorandum of law in support of their motion for partial summary judgment on their First, Second, and Fourth Counterclaims.

I.      **PRELIMINARY STATEMENT**

Invoking the Court's diversity of citizenship jurisdiction, plaintiff Westport Insurance Corporation ("Westport") filed this declaratory judgment action against defendants Patricia Hennessey, Esq. and the law firm of Cohen Hennessey Bienstock & Rabin P.C. (collectively, "CHB&R").   (Declaration of John W. Fried, dated Dec. 7, 2007 ["Fried Decl."], ¶ __, Ex. __ [Complaint]).  Westport insured CHB&R for legal malpractice under a Lawyers Professional Liability Insurance Policy (the "Policy"). (Westport's Exhibit A).[1]  By its Complaint, Westport seeks a judicial declaration that it

---

[1]  "Westport's Exhibit __" refers to the lettered exhibits that Westport attached to its Local Rule 56.1 Statement.

has no obligation under the Policy to provide CHB&R with insurance coverage for the legal malpractice action filed against it in state court by CHB&R's former client, Jayne Asher (the "Asher Action"). According to Westport's Complaint, its disclaimer of insurance coverage is based solely on the application of its Exclusion "B" to the allegations of Jayne Asher's Verified Complaint in her legal malpractice action, which is Westport's Exhibit D.

To date, no discovery has been conducted in this insurance coverage action. Instead of undertaking discovery, Westport sought leave from the Court to move for summary judgment. The Court granted Westport's request, and, on November 9, 2007, Westport made its motion. CHB&R is opposing that motion in separately filed papers.

This memorandum is submitted in support of CHB&R's own motion for partial summary judgment on its First, Second, and Fourth Counterclaims. (Fried Decl., ¶ __, Ex. __). CHB&R's First Counterclaim seeks a judicial declaration that, pursuant to the Policy, Westport has a duty to defend and to pay for CHB&R's defense in the Asher Action. CHB&R's Second Counterclaim seeks money damages for Westport's breach of the Policy in stopping payment for CHB&R's defense in the Asher Action. The measure of damages for CHB&R's Second Counterclaim is the sum of money that it has paid and will pay to its lawyers, Snow Becker Krauss P.C. and McCarthy Fingar LLP, to defend the Asher Action. CHB&R's Fourth Counterclaim seeks as damages the fees and costs CHB&R has paid and will pay to their lawyers in this case, Fried & Epstein LLP, in connection with its defense here.

Should CHB&R's motion for partial summary judgment be granted, CHB&R seeks a dismissal of this coverage action without prejudice or a stay of the action until after the underlying Asher Action is adjudicated in state court.

## II.    STATEMENT OF FACTS

### CHB&R's Representation of Jayne Asher

In 2000, Jayne Asher retained CHB&R to represent her in connection with her divorce from Sanford S. Asher. Patricia Hennessey was the lawyer at CHB&R primarily responsible for representing Mrs. Asher. (Affidavit of Patricia Hennessey, sworn to on Nov. 20, 2007 ["Hennessey Aff."], ¶ 7).

On October 15, 2002, Jayne Asher, as "Wife," and Sanford Asher, as "Husband," executed a Stipulation of Settlement ("Stipulation") in their divorce action. (Hennessey Aff., ¶ 12 & Ex. 1).[2] Article IX of the Stipulation, which concerned "Life and Health Insurance," provided, in pertinent part, the following in Paragraph 1:

> Wife may, at her option assume, at her expense, the existing term life insurance policy on Husband's life (Policy No. 897201 with Berkshire Life Insurance Co.) which has a death benefit of One Million Dollars ($1,000,000). Wife shall elect, by February 1, 2003, whether she wishes to assume the policy, in which event, Wife shall have sixty (60) additional days, if necessary, to effectuate the transfer of ownership of said policy to herself.

Article IX of the Stipulation provided, in pertinent part, the following in Paragraph 2:

> Wife is the owner of a variable ordinary life policy on the life of Husband (New England Financial Policy No. 07092811) which has a death benefit of One Million Dollars ($1,000,000) and a cash surrender value of approximately Two Hundred Twenty Nine Thousand Six Hundred Seventy Dollars and Seven Cents ($229,670.07). Wife shall transfer the ownership of said policy to Husband unless, by February 1, 2003, Wife notifies Husband that she elects to retain ownership of said

---

[2] To maintain Mr. and Mrs. Asher's privacy, only the pages of the provisions of the Stipulation that are referenced in this Memorandum are attached as Exhibit 1 to Ms. Hennessey's affidavit.

policy.  If Wife retains ownership of said policy, Wife shall cause
Husband to receive the cash surrender value of the policy as of the date
of execution of this Agreement [$229,670.07] by means of a policy loan
and/or her own funds, the obligation upon which shall be solely Wife's.

(Hennessey Aff., ¶ 13(a-b) & Ex. 1 [Stipulation] at 31-33).

No provision of the Stipulation permitted or obligated CHB&R to exercise, on

behalf of Jayne Asher, either her election to assume the term life insurance policy on

Mr. Asher's life, or her election to retain ownership of the variable ordinary life

insurance policy on Mr. Asher's life.  (Id.)

Before Mrs. Asher's deadline to exercise those elections (February 1, 2003), she

did not instruct or ask CHB&R to inform Mr. Asher's attorneys that she was exercising

her elections.  (Hennessey Aff., ¶¶ 15-16).  Likewise, she did not delegate to CHB&R

the authority to exercise, on her behalf, her elections.  (Hennessey Aff., ¶¶ 17-18).

February 1, 2003 came and went without Mrs. Asher having either elected to assume

the term life insurance policy or elected to retain ownership of the variable ordinary life

insurance policy.  (Hennessey Aff., ¶ 21).

On or about March 28, 2003, Sanford Asher's attorneys moved the Supreme

Court, New York County, for an order directing Mrs. Asher to execute and deliver to

him a form to transfer of the ownership of the variable whole life insurance policy.   On

Mrs. Asher's instructions, CHB&R opposed the motion.  (Hennessey Aff., ¶ 23).  By an

order dated May 22, 2003 and entered June 4, 2003, the Supreme Court (Joan B. Lobis,

J.S.C.) granted Jayne Asher thirty additional days to make her election(s) under Article

IX of the Stipulation.  (Id.)  Sanford Asher appealed from that order, and the Appellate

Division reversed, in a decision dated February 24, 2004.  (Hennessey Aff., ¶ 24 & Ex.

5 [Appellate Division Decision]).  In its decision, the Appellate Division held that "the

[S]tipulation is clear and unambiguous in affording the wife [Jayne Asher] until February 1, 2003 to exercise her life insurance options.  Clearly, she failed to act within the deadline and thus waived her right of election."  (Id.; J.A v. S.A., 4 A.D.2d 248, 251, 773 N.Y.S.2d 14, 17 (1st Dep't 2004)).

CHB&R continued to represent Jayne Asher in connection with her divorce for about a year after the Appellate Division's February 24, 2004 decision. (Hennessey Aff., ¶ 25.)

### Jayne Asher's Legal Malpractice Claim against CHB&R

On July 5, 2006, CHB&R received a letter, dated June 29, 2006, from Paul I. Marx, an attorney for Jayne Asher (the "Claim Letter").  (Hennessey Aff., ¶ 26).  In that letter, Mr. Marx alleged that Mrs. Asher was damaged by CHB&R's failure to exercise timely her rights of election with respect to a term life insurance policy and with respect to a variable whole life insurance policy.  According to the claim letter, as a result of CHB&R's alleged malpractice, Mrs. Asher "lost the value of her right to assume the term policy and retain ownership of the variable policy, both of which were options given to her pursuant to the Stipulation which settled the divorce action." (Westport's Exhibit B [Claim Letter].)

In a timely fashion, CHB&R sent the Claim Letter to Westport.  (Hennessey Aff., ¶ 26).

### The Westport Insurance Policy

The Policy covered legal malpractice claims for the policy period of, and for claims made against CHB&R and its lawyers during, the period from March 14, 2006 to

March 14, 2007. (Westport's Exhibit A [Policy]). According to the Policy, Westport agreed,

> [to] pay on behalf of any INSURED those sums in excess of the deductible which any INSURED becomes legally obligated to pay as DAMAGES as a result of CLAIMS first made against any INSURED during the POLICY PERIOD . . . . The CLAIM must arise by reason of an act, error, omission or PERSONAL INJURY occurring on or after the RETROACTIVE DATE, if any. Coverage shall apply to all such CLAIMS arising out of services rendered or which should have been rendered by an INSURED, and arising out of the conduct of the INSURED'S profession as a lawyer . . . .

(Id. [Policy], at p. 1 of 13).

## Jayne Asher's State Court Legal Malpractice Action

On January 23, 2007, Mrs. Asher sued CHB&R for legal malpractice in the Supreme Court, Westchester County. (Westport's Exhibit D [Asher Summons & Comp.]) Mrs. Asher's Verified Complaint (the "Asher Complaint") alleges, in part, that CHB&R committed various acts, errors or omissions of professional malpractice. Specifically, the Asher Complaint alleges that CHB&R: failed to exercise timely Mrs. Asher's rights, pursuant to a Stipulation, to assume a term insurance policy and to retain a variable whole life insurance policy; failed to notify Mr. Asher's attorneys of Mrs. Asher's insurance elections; breached the contractual retainer CHB&R had with her; ignored her divorce action; failed to provide good, proper, honest and competent legal advice; failed to provide qualified attorneys with knowledge of the facts to represent Mrs. Asher's interests; failed to communicate with Mrs. Asher and advise her that the election must/should be exercised on or before a date certain; gave Mrs. Asher incorrect and fallacious advice regarding her rights of election under the Stipulation; incorrectly

advised her as to the meaning and import of the terms of the Stipulation; and was negligent in other ways not yet known.   (Westport's Exhibit D [Asher Comp.], ¶ 19]).

Westport initially agreed, pursuant to a reservation of rights, to defend and to pay for CHB&R's defense of the Asher Action.  (Westport's Exhibit F [Mar. 22, 2007 Letter]).  Westport assigned that defense to Rivkin Radler LLP.  (Affidavit of Harriet Newman Cohen, sworn to on Dec. 7, 2007 ["Cohen Aff."], ¶ 5).   However, by letter of July 11, 2007, Westport disclaimed coverage, relying solely on its Exclusion B, and stated that it would stop paying Rivkin Radler to defend CHB&R in connection with the Asher Action.  (Westport's Exhibit H [July 11, 2007 Letter]; Cohen Aff., ¶ 6).  As a consequence, CHB&R, at its own expense, retained Paul C. Kurland of Snow Becker Krauss P.C. and Sondra M. Miller of McCarthy Fingar LLP to defend the Asher Action. (Cohen Aff., ¶ 6).

## III.   LEGAL ARGUMENT

### POINT I

**CHB&R IS ENTITLED TO SUMMARY JUDGMENT ON ITS FIRST AND SECOND COUNTERCLAIMS BECAUSE WESTPORT HAS A DUTY UNDER ITS INSURANCE POLICY TO DEFEND THE ASHER ACTION ON BEHALF OF CHB&R.**

#### A.   The Duty to Defend Is Triggered By "a Reasonable Possibility of Coverage"

The rules governing an insurer's duty to defend are well settled under New York law.  More significantly, "the duty of an insurer to defend is broader than its duty to pay."  Ruder & Finn, Inc. v. Seaboard Sur. Co., 52 N.Y.2d 663, 669, 422 N.E.2d 518, 521 (1981) (citation omitted).  "Indeed, the duty to defend is 'exceedingly broad' and an

insurer will be called upon to provide a defense whenever the allegations of the underlying complaint 'suggest . . . a reasonable possibility of coverage.'" <u>Automobile Ins. Co. of Hartford v. Cook</u>, 7 N.Y.3d 131, 137, 850 N.E.2d 1152, 1155 (2006) (quoting <u>Continental Cas. Co. v. Rapid-American Corp.</u>, 80 N.Y.2d 640, 648, 609 N.E.2d 506, 509 (1993)).  In determining an insurer's duty to defend, the policyholder's ultimate liability on the underlying claim is not a consideration.  <u>Ruder & Finn</u>, 52 N.Y.2d at 670, 422 N.E.2d at 521.  "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." <u>Id.</u> (citations omitted).

Once an insurer's duty to defend is triggered, the insurer must continue to provide its policyholder with a defense unless and until "[the insurer] can 'demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and further, that the allegations, *in toto*, are subject to no other interpretation.'" <u>Cook</u>, 7 N.Y.3d at 137, 850 N.E.2d at 1155-56 (quotation omitted).

The determination of an insurer's duty to defend can turn on the "four corners" of the underlying complaint.  The duty to defend remains "'even though facts outside the four corners of [the] pleadings indicate that the claim may be meritless or not covered.'" <u>Cook</u>, 7 N.Y.3d at 137, 850 N.E.2d at 1155 (alteration in original) (quoting <u>Fitzpatrick v. American Honda Motor Co.</u>, 78 N.Y.2d 61, 62, 575 N.E.2d 90, 90 (1991)).  For that reason, liability insurance constitutes "litigation insurance" in addition to liability coverage.  <u>Id.</u> (citations omitted).

**B.      There Is a Reasonable Possibility that the Asher Complaint
             Is Covered by the Policy**

The Policy was issued for the policy period from March 14, 2006 to March 14,

2007. (Westport Exhibit A [Policy]).  Pursuant to that Policy, Westport agreed,

> [to] pay on behalf of any INSURED those sums in excess of the
> deductible which any INSURED becomes legally obligated to pay as
> DAMAGES as a result of CLAIMS first made against any INSURED
> during the POLICY PERIOD . . . The CLAIM must arise by reason of an
> act, error, omission or PERSONAL INJURY occurring on or after the
> RETROACTIVE DATE, if any.   Coverage shall apply to all such
> CLAIMS arising out of services rendered or which should have been
> rendered by an INSURED, and arising out of the conduct of the
> INSURED'S profession as a lawyer . . . .

(Id. [Policy], at p. 1 of 13).  An "INSURED" under the Policy includes the "NAMED

INSURED" as well as any present shareholder of the NAMED INSURED.  (Id. [Policy]

at p. 3 of 13).  The NAMED INSURED identified in the Westport Policy is CHB&R.

(Id. [Policy] at p. 3 of 13 & Declarations Pg.).  Patricia Hennessey, as a shareholder of

CHB&R, is also an INSURED.  (Hennessey Aff., ¶ 3).

The "RETROACTIVE DATE" for the Policy is March 14, 1994.  (Westport's

Exhibit A [Policy], Declarations Pg.).  A "CLAIM" is defined in the Policy as "a

demand made upon any INSURED for DAMAGES, including, but not limited to

service of suit or institution of arbitration proceedings against any INSURED."  (Id.

[Policy], at p. 3 of 13).

With respect to defense or litigation coverage, Westport agreed in the Policy that

it shall "have the right and duty to defend, including selection of counsel . . . in any

INSURED's  name  and  on  any  INSURED's  behalf  any  CLAIM  for  DAMAGES

against  any  INSURED,  even  if  such CLAIM is  groundless,  false   or fraudulent. . . ."

(Westport's Exhibit A [Policy] at pp. 1-2 of 13).

There is no doubt that the allegations asserted in the Asher Complaint suggest, at the very least, a "reasonable possibility of coverage," and thus trigger Westport's duty to defend.  Indeed, Westport's motion for summary judgment does not argue to the contrary.

As a threshold matter, the Claim Letter and the Asher Complaint are CLAIMS first made against an INSURED during the Policy's March 14, 2006 through March 14, 2007 policy period.  CHB&R received the Claim Letter on July 5, 2006.  (Hennessey Aff., ¶ 26).  The Asher Complaint was filed in the Supreme Court, Westchester County on January 23, 2007.  (Westport's Exhibit D [Asher Comp.]).  Both claims were reported timely to Westport.

Furthermore, the CLAIMS asserted in the Claim Letter and the Asher Complaint arose by reason of alleged acts, errors or omissions by CHB&R, occurring after the RETROACTIVE DATE of March 14, 1994, and such CLAIMS arose out of the professional services that CHB&R rendered or should have rendered as lawyers to Mrs. Asher.

More specifically, the Asher Complaint (Westport's Exhibit D) makes the following allegations against CHB&R as Mrs. Asher's lawyers:

1. They "failed to properly, diligently and adequately represent Mrs. Asher's interests in connection with her divorce action." (Asher Comp., ¶ 12).

2. They "failed to timely exercise [Mrs. Asher's] right of election to the life insurance policies."  (Asher Comp., ¶ 17).

3.  They "were negligent and deviated from good and accepted legal practice in the handling of the prosecution of the divorce action by acting in dereliction of their

legal and ethical obligations and responsibilities to [Mrs. Asher] and committing misconduct," including

    a. "failing to timely exercise [Mrs. Asher's] rights of election under the Stipulation;"

    b. "failing to notify [Mr. Asher's] attorneys of [Mrs. Asher's] elections;"

    c. "breaching the contractual retainer between the parties;"

    d. "negligently ignoring the matter;"

    e. "failing to provide good, proper, honest and competent legal advice;"

    f. "failing to provide qualified attorneys with knowledge of the facts to represent [Mrs. Asher's] interests;"

    g. "failing to communicate with [Mrs. Asher] and advis[ing] that the election must/should be exercised on or before a date certain;"

    h. "giving [Mrs. Asher] incorrect and fallacious advice regarding the rights of election under the Stipulation;"

    i. "incorrectly advising as to the meaning and import of the terms of the Stipulation and in other ways not yet known, acting negligently." (Asher Comp., ¶ 19).

Without question, there is a "reasonable possibility" that all of Mrs. Asher's allegations of legal malpractice are covered by the Policy. Therefore, Westport has a duty to defend and to pay for CHB&R's defense of the Asher Action. That duty persists unless and until Westport can "'demonstrate that the allegations of the [Asher] complaint cast that pleading solely and entirely within the policy exclusions, and further, that the allegations, *in toto*, are subject to no other interpretation.'" Cook, 850 N.E.2d at 1155 (citation omitted). For the reasons set forth below and those provided

by CHB&R in its opposition to Westport's motion for summary judgment, as a matter of law, Westport has not even come close to satisfying that heavy burden of proof.

**C.    Westport Has Failed to Meet its Heavy Burden of Proving the Applicability of Exclusion B**

The duty of an insurer like Westport to defend its policyholders will continue until the insurer can meet its burden of demonstrating the applicability of one or more exclusions in its policy.    Cook, 7 N.Y.3d at 137, 850 N.E.2d at 1155.  To avoid coverage on the basis of an exclusion,

> [A]n insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation and applies in the particular case, and that its interpretation of the exclusion is the "only construction that [could] fairly be placed thereon."

Throgs Neck Bagels, Inc. v. GA Ins. Co. of N.Y., 241 A.D.2d 66, 71, 671 N.Y.S.2d 66, 69 (1st Dep't 1998) (quotation and citations omitted); see also, e.g., Belt Painting Corp. v. TIG Ins. Co., 100 N.Y.2d 377, 383, 795 N.E.2d 15, 17 (2003) (similar).  Adding to this heavy burden is the fact that policy exclusions are accorded "a strict and narrow construction, with any ambiguity resolved against the insurer."  Belt Painting, 100 N.Y.2d at 383, 795 N.E.2d at 17 (citing Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co., 34 N.Y.2d 356, 314 N.E.2d 37 (1974)).  "[T]he test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured upon reading the policy."  Mostow v. State Farm Ins. Cos., 88 N.Y.2d 321, 327, 668 N.E.2d 392, 423 (1996) (citation omitted); see also, e.g., Pepper v. Allstate Ins. Co., 20 A.D.3d 633, 635, 799 N.Y.S.2d 292, 294 (3d Dep't 2005).

In disclaiming coverage, Westport has relied exclusively on its Exclusion B. According to Exclusion B,

[This policy does not apply to:]

B.    any CLAIM arising out of any act, error, omission or PERSONAL INJURY occurring prior to the effective date of this policy if any INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission or PERSONAL INJURY might be expected to be the basis of a CLAIM or suit . . . .

(Westport's Exhibit A [Policy] at p. 4 of 13).   In support of its motion for summary judgment, Westport makes one argument:  CHB&R was aware, before the March 14, 2006 effective date of the Policy, of its failure to make a timely election on behalf of Mrs. Asher to the ownership of certain life insurance policies on Sanford Asher's life and was aware that said failure resulted in her inability to assume and/or retain those policies, and that those facts "would cause any reasonable lawyer to anticipate that such error might be expected to form the basis of a malpractice claim in the future." (Westport's Mem. of Law [Nov. 9, 2007] at 2).  Westport will undoubtedly make the same argument in opposing CHB&R's motion for partial summary judgment.

As set forth in more detail in Defendants' Memorandum of Law in Opposition to Westport's Motion for Summary Judgment, Westport has failed to prove that Exclusion B clearly and unmistakably bars insurance coverage for the Asher Action as a matter of law.

First, Westport has proposed that an objective standard be applied to Exclusion B, although no New York state court has held to that effect.  Such a standard conflicts with the purpose of the Policy, with the expectations of a reasonable lawyer policyholder purchasing and reading the Policy, and with other language in Westport's Application and the Policy.  Instead, those factors call for the application of a subjective standard to Exclusion B, which would defeat Westport's motion because there is no

evidence of record that CHB&R subjectively knew of any breach of duty during its representation of Jayne Asher, or foresaw, or even thought it likely, that it might be sued for malpractice. Indeed, the evidence is to the contrary. (Hennessey Aff., ¶ 28). This point is addressed in Defendants' Memorandum (Dec. 7, 2007) in Opposition to Westport's Motion for Summary Judgment at pages 10 through 17, and that discussion, and arguments, citations, and authorities are all incorporated in full herein.

Second, even if an objective standard concerning Exclusion B were applied here, Westport's relied-on cases are not comparable to this one and do not support the proposition that, as a matter of law, Exclusion B applies. In Westport's cases, the lawyer policyholders who were denied insurance coverage failed glaringly to perform duties that clearly were their responsibility, for example, not filing suit before the expiration of the applicable statute of limitations, and failing to prosecute cases so that they were dismissed as abandoned. Here, there is no evidence in the record indicating that CHB&R had any responsibility to exercise Mrs. Asher's rights, under the Stipulation, to elect to assume and/or retain insurance on Mr. Asher's life.

Furthermore, Westport has failed to submit any evidence of record to meet the requirements of the objective standard. As stated above, Westport submitted no evidence to demonstrate that CHB&R knew of any act, error or omission on its part related to Mrs. Asher's right to make the life insurance elections. Likewise, Westport submitted no evidence of record that demonstrates that either CHB&R foresaw or that any "reasonable lawyer" could have reasonably foreseen that any such act, error or omission by CHB&R might be expected to be the basis of a malpractice claim or suit. Indeed, the evidence is to the contrary. (Hennessey Aff., ¶¶ 28-29). At a minimum,

reasonable minds could disagree on whether any reasonable lawyer in CHB&R's place could have reasonably foreseen that an act, error or omission relating to Mrs. Asher's right to make elections under the Stipulation might be expected to be the basis of a malpractice claim. That disagreement raises a genuine issue of material fact precluding summary judgment in favor of Westport and also precluding Westport from meeting its heavy burden to "'demonstrate that the allegations of the [Asher] complaint cast that pleading solely and entirely within the policy exclusion [B], and further, that the allegations, *in toto*, are subject to no other interpretation.'" <u>Cook</u>, 7 N.Y.3d at 137, 850 N.E.2d at 1155 (quotation omitted). This point is addressed in Defendants' Memorandum (Dec. 7, 2007) in Opposition to Westport's Motion for Summary Judgment at pages 72 through 22, and 24 through 25, and that discussion, and arguments, citations, and authorities are all incorporated in full herein.

     <u>Third</u>, in view of its failure to submit essential supporting affidavits or other evidence, Westport appears to be using the objective standard improperly to argue that because the alleged wrongful acts precipitating the Asher Action were supposedly committed before the Policy period began on March 14, 2006, Exclusion B should be triggered and coverage denied, even though the Policy, on its face, covers such claims. Several courts have expressly rejected such an approach. This point is addressed in Defendants' Memorandum (Dec. 7, 2007) in Opposition to Westport's Motion for Summary Judgment at pages 22 through 25, and that discussion and those arguments, citations, and authorities are all incorporated in full herein.

     Finally, even if Westport's Exclusion B bars insurance coverage for the allegations of malpractice that concern Mrs. Asher's right of electing to assume and/or

retain the life insurance policies, which it does not, Exclusion B does not bar insurance coverage for Mrs. Asher's other allegations of malpractice, which do not concern her life insurance election rights.  Indeed, an insurer must defend its policyholder if any of the facts, grounds or claims in a third-party complaint are potentially covered, even if other facts, grounds or claims in the complaint fall outside coverage or are encompassed by exclusions.  New York Central Mut. Fire Ins. Co. v. Heidelmark, 108 A.D.2d 1093, 1095, 485 N.Y.S.2d 661, 662 (3d Dep't 1985); see also Ruder & Finn, 52 N.Y.2d at 669-70, 439 N.Y.S.2d at 861 (The duty to defend "includes the defense of those actions in which alternative grounds are asserted, even if some are without the [insurance] protection purchased.").

Numerous allegations of malpractice in the Asher Action do not involve CHB&R's alleged failure to exercise Mrs. Asher's rights, under the Stipulation, to elect to assume and/or to retain the life insurance policies.  For example, the following allegations in paragraph 19 of the Asher Complaint are not related to the Stipulation or to CHB&R's alleged failure to exercise Mrs. Asher's rights of election to the life insurance policies:  CHB&R "failed to properly, diligently and adequately represent Mrs. Asher's interests in connection with her divorce action;" CHB&R "breach[ed] the contractual retainer between the parties;" CHB&R "negligently ignore[ed] the matter;" CHB&R "fail[ed] to provide good, proper, honest and competent legal advice;" and CHB&R "fail[ed] to provide qualified attorneys with knowledge of the facts to represent [Mrs. Asher's] interests."  (Westport Exhibit D [Asher Comp.], ¶ 19).  These allegations by Ms. Asher, none of which have been proven and all of which have been denied, generally arise from CHB&R's overall representation of Mrs. Asher in

connection with her divorce action and are clearly covered, or at least potentially covered, under the Policy. Furthermore, they clearly are not subject to even Westport's overly broad reach of Exclusion B. Accordingly, Westport must defend and pay for CHB&R's defense of the Asher Action because there is at least "a reasonable possibility" that these allegations are covered, even if insurance coverage for other allegations, facts, grounds or claims in the Asher Complaint are supposedly excluded under Exclusion B.

For all the reasons above, and for the reasons set forth in Defendants' Memorandum of Law in Opposition to Westport's Motion for Summary Judgment, Westport has failed to meet its burden to show that Exclusion B applies unmistakably to the Asher Action, and that Westport's interpretation is "the only one that could be [fairly] placed thereon." Westport has a continuing duty to defend and to pay for CHB&R's defense of the Asher Action, and the Court should grant CHB&R a judicial declaration to that effect, as sought by CHB&R's First Counterclaim. The Court also should grant summary judgment to CHB&R on its Second Counterclaim, because, by ceasing to defend and to pay for CHB&R's defense of the Asher Action, Westport breached the Policy as a matter of law, and the Court should therefore award CHB&R damages for its attorneys fees and expenses paid in connection with the Asher Action.

## POINT II

### CHB&R IS ENTITLED TO REIMBURSEMENT OF THE ATTORNEYS' FEES AND COSTS PAID IN DEFENDING THIS ACTION COMMENCED BY WESTPORT

This Court should also grant summary judgment to CHB&R on its Fourth Counterclaim, by declaring that Westport is obligated to pay the attorney fees and costs

incurred by CHB&R in this insurance coverage action.  Under New York law, a liability insurer's responsibility to defend includes a defense against the insurer's own declaratory judgment action. U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 3 N.Y.3d 592, 598, 822 N.E.2d 777, 780 (2004); see Mighty Midgets, Inc. v. Centennial Ins. Co., 47 N.Y.2d 12, 21, 389 N.E.2d 1080, 1085 (1979).  Accordingly, a policyholder is entitled to an award of attorney's fees when "he has been cast in a defensive posture" by his insurer's commencement of a declaratory action "in an effort to free itself from its policy obligations."  Mighty Midgets, 47 N.Y.2d at 21, 389 N.E.2d at 1085 (citation omitted); City Club Hotel, 3 N.Y.3d at 597, 822 N.E.2d at 780.  The policyholder is entitled to his costs of defending against his insurer's action, regardless of whether the insurer provided him with a defense in the underlying action.  City Club Hotel, 3 N.Y.3d at 598, 822 N.E.2d at 780.

For example, in American Home Assurance Company v. Weissman, 79 A.D.2d 923, 434 N.Y.S.2d 410 (1st Dep't 1981), an insurer commenced an action by which it sought relief from its duties to defend and indemnify its policyholder. The Weissman court entered partial summary judgment in the policyholder's favor, concluding that the insurer had a duty to defend because at least some of the allegations of the underlying complaint were potentially covered.  The court then awarded the policyholder "legal expenses incurred to date in the defense of this suit."  Id., 79 A.D.2d at 924-25, 434 N.Y.S.2d at 412.

CHB&R have been "cast in a defensive posture" by Westport's commencement of this insurance coverage action.  In accordance with Mighty Midgets, City Hotel and

<u>Weisman</u>, CHB&R are likewise entitled to reimbursement of monies incurred in defending this coverage action commenced by Westport.

### POINT III

### IF CHB&R IS AWARDED PARTIAL SUMMARY JUDGMENT, THIS ACTION SHOULD BE DISMISSED WITHOUT PREJUDICE OR STAYED, PENDING THE ADJUDICATION OF THE ASHER ACTION

If CHB&R is granted summary judgment on either its First or Second Counterclaim, requiring Westport to pay for the defense of the Asher Action, the remainder of Westport's action, which seeks a declaration that it has no duty to indemnify CHB&R in connection with the Asher Action, should be dismissed without prejudice, or stayed.

It is long and well established that an action to declare an insurer's duty to indemnify is premature where the issues affecting coverage will necessarily be decided in the underlying action. <u>Spoor-Lasher Co. v. Aetna Cas. and Sur. Co.</u>, 39 N.Y.2d 875, 876-77, 386 N.Y.S.2d 221, 222 (1976). As cogently explained by the Appellate Division:

> An action to declare the insurer's duty to indemnify is premature and does not lie where the complaint in the underlying action alleges several grounds of liability, some of which invoke the coverage of the policy, and where the issues of indemnification and coverage hinge on facts which will necessarily be decided in that underlying action.

<u>Hout v. Coffman</u>, 126 A.D.2d 973, 973, 511 N.Y.S.2d 990, 991 (4th Dep't 1987) (citations omitted); <u>see also</u> <u>Ehrlich v. Aetna Cas. & Sur. Co.</u>, 95 A.D.2d 936, 938, 463 N.Y.S.2d 934, 936 (3d Dep't 1983); <u>Town of Huntington v. Hartford Ins. Group</u>, 69 A.D.2d 906, 906-07, 415 N.Y.S.2d 904, 904 (2d Dep't 1979); <u>American Home Assur.</u>

<u>Co. v. Port Auth. of N.Y. and N.J.</u>, 66 A.D.2d 269, 273-74, 412 N.Y.S.2d 605, 607 (1st Dep't 1979).

A seminal issue to be decided in the Asher Action is whether CHB&R committed legal malpractice in connection with its representation of Mrs. Asher.  That issue first should be adjudicated in the underlying case.  Obviously, if CHB&R is adjudicated as not liable for any legal malpractice, that adjudication moots Westport's declaratory judgment action.  <u>See</u> <u>Weissman</u>, 79 A.D.2d at 925, 434 N.Y.S.2d at 412 ("[s]ince the outcome of the action brought by the [underlying] plaintiffs will determine the issue of coverage, the balance of this action shall be held in abeyance pending the outcome of that action").  No good reason exists to litigate the indemnity issue in this Court until that issue is ripe for litigation, which would only happen if CHB&R is adjudicated in the Asher Action as having committed malpractice in connection with Mrs. Asher's rights, pursuant to the Stipulation, to assume and/or retain the life insurance**.**

Accordingly, for reasons of economy and efficient judicial administration, Westport's declaratory judgment action on indemnity should be dismissed or stayed.  <u>See</u> <u>United States Underwriters Ins. Co. v. Kum Gang, Inc.</u>, 443 F.Supp.2d 348, 355 (E.D.N.Y. 2006) (while court entertained suit concerning duty of two insurers to defend, it declined to exercise jurisdiction over their apportionment of liability, a subject that could be mooted by a finding that the policyholders were not liable in the underlying action); <u>Standard Fire Ins. Co. v. Sassin</u>, 894 F.Supp.1023, 1028 (N.D. Tex. 1995) (assuming insurer's action against underlying plaintiffs for a declaration it had no obligation to pay any damage verdict in their case had actually presented a "case or

controversy," court stated it would decline to entertain that action because, if the policyholders were not found liable, the issue would be mooted); see also, e.g. Home Exterminating Co. v. Zurich-American Ins. Group, 921 F.Supp. 318, 325 n.7 (D. Md. 1996) (court resolved insurer's duty to defend and then closed the case, holding that the insurer's duty to indemnify was premature until the underlying action was resolved); State of N.Y. v. Blank, No. 88-CV-163, 1991 WL 208883, at * 12 (Oct. 10, 1991 N.D.N.Y.), aff'd in part, rev'd in part on other grounds, 27 F.3d 783 (2d Cir. 1994) (court denied summary judgment to insurers on duty to defend and then stayed the issue of their duty to indemnify, pending disposition of the underlying case; "[i]t seems nonsensical to allow the third party action to proceed in light of the reality that it is contingent upon issues raised in the main action").

## IV.    CONCLUSION

For all the foregoing reasons, Patricia Hennessey and CHB&R respectfully request that the Court grant their motion for partial summary judgment on CHB&R's First, Second and Fourth Counterclaims, and (A) declare that Westport is obligated under the Policy to defend and to pay for the legal defense of Ms. Hennessey and CHB&R in connection with the Asher Action, (B) award Ms. Hennessey and CHB&R damages, measured by the sum of money that they have paid and will pay to Snow Becker Krauss P.C. and McCarthy Fingar LLP to defend the Asher Action on their behalf, based on Westport having breached the Policy by disclaiming its duty to defend, (C) award Ms. Hennessey and CHB&R damages, measured by the sum of money that they have paid and will pay to Fried & Epstein LLP to defend this declaratory judgment action, because Westport commenced this action "in an effort to free itself from its

policy obligations," and if partial summary judgment is granted to dismiss Westport's action without prejudice or, in the alternative stay the litigation of Westport's action, pending the final adjudication of the state court Asher Action, and to grant Defendants such other and further relief as the Court deems fair, just, and equitable.

Dated: New York, New York
          December 7, 2007                    Respectfully submitted,

                                              FRIED & EPSTEIN LLP

                                              By:_____
                                                  John W. Fried (JF2667)

                                              1350 Broadway, Suite 1400
                                              New York, New York 10018
                                              Tel.: (212) 268-7111

                                              *Attorneys for Defendants,*
                                              *Patricia Hennessey, Esq., and Cohen*
                                              *Hennessey Bienstock & Rabin, P.C.,*
                                              *f/k/a Cohen Hennessey & Bienstock P.C.*