UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
WESTPORT INSURANCE CORPORATION,

                                    Case No.:  07 CIV 6726 (SHS) (RLE)

           Plaintiff,

    -against-

PATRICIA HENNESSEY, ESQ., and COHEN,
HENNESSEY, BIENSTOCK & RABIN, P.C.
f/k/a COHEN, HENNESSEY, BIENSTOCK, P.C.,

           Defendants.
-----------------------------------------------------------------X

# Reply Memorandum of Law Submitted in Further Support Of Plaintiff's Motion for Summary Judgment and in Opposition to Defendants' Motion for Partial Summary Judgment

                                   WILSON, ELSER, MOSKOWITZ,
                                   EDELMAN & DICKER, LLP
                                   Attorneys for Plaintiff and
                                   Counterclaim-Defendant
                                   WESTPORT INSURANCE
                                   CORPORATION
                                   150 East 42nd Street
                                   New York, New York 10017-5639
                                   (212) 490-3000
                                   File No.: 05302.00249

Of Counsel:
Mark K. Anesh
Jamie R. Wozman

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................2

STATEMENT OF FACTS .............................................................................................2

ARGUMENT ..................................................................................................................3

    REPLY POINT I.....................................................................................................4

    EXCLUSION B IS CLEAR, UNAMBIGUOUS AND EXCLUDES
    COVERAGE FOR THE ENTIRE ASHER LEGAL MALPRACTICE CLAIM.....................4

        A.    Exclusion B is Clear and Unambiguous ........................................................4

        B.    Exclusion B Should be Interpreted Using an Objective Standard .................................7

        C.    The Allegations of the Asher Complaint Cast it Solely and Entirely
            Within Exclusion B, Barring Coverage for the Asher Action in its
            Entirety.................................................................................................22

    REPLY POINT II ..................................................................................................23

    DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, OR
    IN THE ALTERNATIVE FOR A STAY MUST BE DENIED IN ITS
    ENTIRETY ...........................................................................................................23

CONCLUSION.............................................................................................................24

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

Allstate Insurance Co. v. Barnett, 816 F. Supp. 492 (S.D.Ind. 1993)...........................................13

Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999) ...................................................3

Cable Science Corp. v. Rochdale Village Inc., 920 F.2d 147 (2d. Cir. 1990)................................5

Caldarola v. Calabrese, 298 F.3d 156 (2d Cir. 2002) ......................................................................3

DeStefano v. Emergency Housing Group, Inc., 247 F.3d 397 (2d Cir. 2001)................................3

Home Indemnity Co. v. Toombs, 910 F. Supp. 1569 (N.D.Ga. 1995)..........................................12

International Insurance Co. v. Peabody International Corp., 747 F. Supp. 477
    (N.D.Ill. 1990)..............................................................................................................................13

Kurtin v. National R.R. Passenger Corp., 887 F. Supp. 676 (S.D.N.Y. 1995)...............................4

Mackley v. Sullivan & Liapakis, P.C., 2001 U.S. Dist. LEXIS 21723 (S.D.N.Y. 2001)..............19

Mt. Airy Insurance Co. v. Klatsky & Klatsky, 1997 U.S. Dist. LEXIS 23208
    (D.N.J. 1997).................................................................................................................................12

Mt. Airy Insurance Co. v. Thomas, 954 F. Supp. 1073 (W.D.Pa. 1997)......................8, 10, 11, 20

Pelagatti v. Coregis Group, 1996 U.S. Dist. LEXIS 4963, C.A. 95-2925, (E.D.Pa. 1996)...........13

Seiden Associate, Inc. v. ANC Holdings, Inc., 959 F.2d 425 (2d. Cir. 1992)................................4

Sirignano v. Chicago Insurance Co., 192 F. Supp. 2d 199 (S.D.N.Y. 2002) ...................14, 15, 16

Sparacino v. Pawtucket Mutual Insurance Co., 50 F.3d 141 (2d Cir. 1995) ................................15

The Home Insurance Co. v. Stegenga, 1991 U.S. Dist. LEXIS 21646, 3-5, C.A.
    (W.D.Pa. 1991) .............................................................................................................................12

Wertheim Schroder & Co. v. Avon Products, 1993 U.S. Dist. LEXIS 6184
    (S.D.N.Y. 1993)...............................................................................................................................4

Westport v. Goldberger & Dubin, 2006 U.S. Dist. LEXIS 31329
    (S.D.N.Y.2006) ..........................................................5, 6, 7, 8, 9, 10, 11, 12, 18, 20

## STATE CASES

American Home Assur. Co. v. Port. Authority Of N.Y. and N.J., 66 A.D.2d
    269, 412 N.Y.S.2d 605 (1st Dep't 1979)...............................................................24

Bethlehem Steel Co. v. Turner Constr. Co., 2 N.Y.2d 456, 161 N.Y.S.2d 90, 141 N.E.2d
    590 (N.Y. Ct. App. 1957) ...............................................................................................3

Bretton v. Mutual of Omaha Insurance Co., 110 A.D.2d 46, 492 N.Y.S.2d 760
    (1st Dep't), aff'd, 66 N.Y.2d 1020, 499 N.Y.S.2d 397, 489 N.E.2d 1299 (1985)...................16

Burke v. Law Offices of Landau Miller & Moran, 289 A.D.2d 16 (1st Dep't 2001) ....................19

Cruz v. Durst Law Firm, 273 A.D.2d 120 (1st Dep't 2000) ...........................................................19

Ehrlich v. Aetna Casualty & Surety Co., 95 A.D.2d 934 (3d Dep't 1983) ....................................24

Fogelson v. Home Insurance Company, 129 A.D.2d 508, 514 N.Y.S.2d 346
    (1st Dep't. 1987).............................................................................................................6

Hout v. Coffman, 126 A.D.2d 973, 511 N.Y.S.2d 990 (4th Dep't 1987) .......................................24

Ingalsbe v. Chicago Insurance Co., 270 A.D.2d 684  704 N.Y.S.2d 698
    (3d Dep't 2000) ...............................................................................................15, 16, 17

Land v. Greenwood, 113 Ill. App. 3d 537, 478 N.E.2d 1203 (Ill.App.Ct. 1985) ..........................19

Liebling v. Garden State Indemnity, 767 A.2d 524 (N.J. Super.Ct., App. Div. 2001)..................18

Estate of Logan v. Northwestern National Casualty Co., 424 N.W.2d 186 (Wis. 1988) ..............18

N.Y.S.2d 934 (3d Department 1983); Town of Huntington v. Hartford Insurance Group,
    69 A.D.2d 906, 415 N.Y.S.2d 904 (2d Dep't 1979)...................................................23

Ratcliff v. International Surplus Lines Insurance, 194 Ill. App. 3d 18, 550 N.E.2d 1052
    (Ill. App. Ct. 1990).......................................................................................................12

Rogers v. Norvell, 174 Ga. App. 453, 330 S.E.2d 392 (Ga.Ct.App. 1985)...................................19

Security Mutual Insurance Co. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 340 N.Y.S.2d
    902 (1972)......................................................................................................................16

Spoor-Lasher Co. v. Aetna Casualty and Surety Co., 39 N.Y.2d 875, 386 N.Y.S.2d
    221 (1976)......................................................................................................................24

Town of Huntington v. Hartford Ins. Group, 69 A.D.2d 906, 415 N.Y.S.2d 904
    (2d Dep't 1979)..........................................................................................................................24

Westport Insurance Corp. v. Mirsky, Civ. A. No. 00-4367, 2002 WL. 31018554
    (E.D. Pa. Sept. 10, 2002) .........................................................................................................19

## MISCELLANEOUS

Legal Malpractice, 2005 Edition, Mallen and Smith, Volume 3, § 23.3 .......................................19

**PRELIMINARY STATEMENT**

Plaintiff Westport Insurance Corporation (hereinafter "Westport" or the "Plaintiff") respectfully submits this Reply Memorandum of Law in response to the Memorandum of Law submitted in Opposition to Plaintiff's Motion for Summary Judgment by Patricia Hennessey, Esq., and Cohen, Hennessey, Bienstock & Rabin, P.C., f/k/a Cohen, Hennessey, Bienstock, P.C. (hereinafter "Defendants" or "Insured") [1] and in further support of Plaintiff's motion for an order granting summary judgment against the Defendants and declaring as follows:

a.   Based upon Exclusion B of the Lawyers Professional Liability Renewal Policy, No. NRL-004960-8 for the period of, and for claims between March 14, 2006 and March 14, 2007 (hereinafter referred to as the "2006 Policy"), Plaintiff Westport is not obligated to afford coverage to the Defendants, in whole or in part, including defense or indemnity, for the lawsuit entitled <u>Jayne Asher v. Patricia Hennessey, Esq. and Cohen, Hennessey, Bienstock, P.C.</u>, filed in Supreme Court for the State of New York, County of Westchester, Index No. 1361/07; and

b.   For such other and further relief the Court may deem just and proper.

Westport also submits this Reply Memorandum of Law in opposition to Defendants' Motion for Partial Summary Judgment on its First, Second, and Fourth Counterclaims.[2]

**STATEMENT OF FACTS**

Westport submitted a Statement of Undisputed Facts pursuant to Rule 56 of the Federal Rules of Civil Procedure and set forth a Statement of Facts in conjunction with its initial Memorandum of Law.  In the interest of brevity, Westport respectfully refers the Court to its initial motion papers for a statement of the pertinent facts.

---

[1]  All references to Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment will be made as (Def.'s Opp., at ____).
[2]  All references to Defendants' Memorandum of Law in Support of its Motion for Partial Summary Judgment will be made as (Def.'s MOL, at _____).

2

**ARGUMENT**

In opposing a summary judgment motion, the non-movant must come forward with evidence demonstrating a genuine issue of material fact which necessitates trial. See Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002). An issue of fact is "genuine" only if the evidence is sufficient to permit a reasonable jury to find for the non-moving party. DeStefano v. Emergency Hous. Group, Inc., 247 F.3d 397, 405 (2d Cir. 2001). An issue of fact is "material" only if it could affect the outcome of the case. Id. Once the movant has demonstrated that there are no genuine issues in dispute, the non-movant must come forward with evidentiary support for material facts, which create a genuine issue. Id. The nonmoving party may not rest upon mere allegations or denials. "Statements that are devoid of any specifics, but replete with conclusions," are insufficient to defeat a properly supported motion for summary judgment." Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999).

As more fully discussed herein, the Defendants have not met this burden and have failed to demonstrate the existence of material facts that would necessitate a trial. Westport's motion for summary judgment must, therefore, be granted. Despite the Defendants attempt to argue that the language in the Policy at issue is vague and ambiguous, case law demonstrates that Exclusion B, as well as all other provisions of the Policy, is clear, unambiguous and must be enforced accordingly.

Moreover, Exclusion B of the Policy is clearly applicable and consistent with the other terms of the Policy, and thereby serves to exclude coverage for Mrs. Asher's legal malpractice action against the Defendants in its entirety. Prior to the effective date of the policy, the Defendants knew that they had neglected to ensure that Mrs. Asher make a timely election to the ownership of certain life insurance policies of her ex-husband and that the First Department,

3

Appellate Division, had ruled that Mrs. Asher had thereby irreparably lost her right to the policies. Such adverse knowledge about the loss of legal rights sustained by their client in a matter in which they were intimately involved would certainly cause a reasonable, objective attorney to foresee that his or her error might be expected to be the basis of a malpractice claim, regardless of the attorney's misguided subjective impression that the client would not assert such a claim.

Additionally, the Defendants' motion seeking partial summary judgment on its First, Second and Fourth Counterclaims must be denied in its entirety. As set forth more fully below, pursuant to Exclusion B of the Policy Westport does not have a duty to defend or indemnify Defendants in the Asher matrimonial action. Thus, it follows that Westport does not have a duty to pay for the Defendants' defense of the Asher action, and is certainly not obligated to pay for Defendants' defense costs relative to the instant action.

## REPLY POINT I

### EXCLUSION B IS CLEAR, UNAMBIGUOUS AND EXCLUDES COVERAGE FOR THE ENTIRE ASHER LEGAL MALPRACTICE CLAIM

**A.     Exclusion B is Clear and Unambiguous**

The Second Circuit has ruled that a clear contract provision is "is not made ambiguous simply because the parties urge different interpretations." Seiden Assoc., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d. Cir. 1992); see also Kurtin v. National R.R. Passenger Corp., 887 F.Supp 676, 679 (S.D.N.Y. 1995); Wertheim Schroder & Co. v. Avon Products, 1993 U.S. Dist. LEXIS 6184 (S.D.N.Y. 1993). In addition, an ambiguity is not created where one party's interpretation "'strains the contract language beyond its reasonable and ordinary meaning.'" Seiden, supra, at 428 (quoting Bethlehem Steel Co. v. Turner Constr. Co., 2 N.Y.2d 456, 459,

161 N.Y.S.2d 90, 141 N.E.2d 590 (N.Y. Ct. App. 1957)).   Moreover, if a contract is

unambiguous, its proper construction should be determined as a matter of law.   See Cable

Science Corp. v. Rochdale Village Inc., 920 F.2d 147, 151(2d. Cir. 1990).

Nullifying the Defendants' specious arguments, the Southern District has previously

determined that the subject exclusion is unambiguous and does not conflict with the purpose of

the policy.   See Westport v. Goldberger & Dubin, 2006 U.S. Dist. LEXIS 31329

(S.D.N.Y.2006); aff'd 2007 U.S. App. LEXIS 27612 (2d. Cir. 2007)("Summary Order").   As set

forth more fully in Westport's Original Memorandum of Law, dated November 9, 2007, and as

Defendants do not and cannot dispute, the exclusion in Goldberger found to be unambiguous, is

identical to Exclusion B of the subject Policy.   (See Westport's Original Memorandum of Law,

Point I, p. 9).

To illustrate, below is the exclusion in Goldberger and Exclusion B of the Policy herein:

> This Policy does not apply to:
> ***
>
> any CLAIM arising out of any act, error, omission or PERSONAL
> INJURY occurring prior to the effective date of this policy if any
> INSURED at the effective date knew or could have reasonably
> foreseen that such act, error, omission or PERSONAL INJURY
> might be expected to be the basis of a CLAIM or suit;

Westport, 2006 U.S. Dist. LEXIS 31329, at ** 2-3 (S.D.N.Y.2006); aff'd 2007 U.S. App.
LEXIS 27612 (2d. Cir. 2007)("Summary Order").

> This Policy does not apply to:
> ***
>
> any CLAIM arising out of any act, error, omission or PERSONAL
> INJURY occurring prior to the effective date of this policy if any
> INSURED at the effective date knew or could have reasonably
> foreseen that such act, error, omission or PERSONAL INJURY
> might be expected to be the basis of a CLAIM or suit;

Westport's Rule 56.1 Statement of Undisputed Facts, dated November 9, 2007
("Westport's Rule 56"), Ex. "A" at p. 4.

The Defendants insureds herein and the defendant insured in <u>Goldberger</u> argued that the exclusion was ambiguous and in conflict with the purpose of the insurance policy. Rejecting such claims, the Southern District found the exclusion did not conflict with the purpose of the policy and ruled that "Exclusion B of the 2000 Policy is unambiguous." <u>Goldberger</u>, 2006 U.S. Dist. LEXIS 31329, at ** 2-3 (S.D.N.Y.2006); <u>aff'd</u> 2007 U.S. App. LEXIS 27612 (2d. Cir. 2007)("Summary Order"). Inasmuch as the exclusion in this matter is identical to that in <u>Goldberger</u>, Defendants' argument that Exclusion B is vague, ambiguous and in conflict with the Policy fails and should be rejected by this Court.

Moreover, New York Courts have found language virtually indistinguishable from that of Exclusion B to be unambiguous. In <u>Fogelson v. Home Ins. Company,</u> 129 A.D.2d 508, 514 N.Y.S. 2d 346 (1st Dep't. 1987), the Court applied the following provision of a lawyer's professional malpractice insurance policy as follows:

> This policy does not apply to any claim arising out of any acts or omissions occurring prior to the effective date of this policy if the Insured at the effective date knew or could have reasonably foreseen that such acts or omissions <u>might be expected</u> to be the basis of a claim or suit.

<u>Id</u>. at 347. (emphasis added). Any attempt to distinguish the above provision from Exclusion B would prove futile. Based on the above provision, the <u>Fogelson</u> Court reversed the trial court and ruled that the insurer was not obligated to afford coverage to its insured lawyer who was aware prior to the inception of his policy of a default judgment entered against his client. <u>Id</u>.

Pursuant to the foregoing and the compelling reasoning by the Southern District in a case involving the same exclusion, Defendants' argument that Exclusion B of the Policy is vague, ambiguous and in conflict of the Policy lacks merit and must be rejected.

6

**B.     Exclusion B Should be Interpreted Using an Objective Standard**

Courts, including the Southern District, have uniformly applied similar prior knowledge exclusions based not on the subjective beliefs of the insured, but rather on whether a *reasonable* insured would have foreseen that his acts might form the basis of a claim.

While Defendants argue that New York Courts have yet to decide this issue, they conveniently ignore the fact that the Southern District has previously invoked an objective standard in relation to the same exclusion in Westport, recently affirmed by the Second Circuit. See Westport v. Goldberger & Dubin, 2006 U.S. Dist. LEXIS 31329 (S.D.N.Y.2006); aff'd 2007 U.S. App. LEXIS 27612 (2d. Cir. 2007)("Summary Order").  As set forth in Westport's Original Memorandum of Law, in Goldberger, which involved the same exclusion, the Southern District granted the plaintiff insurer's motion for summary judgment seeking a declaration that it was not obligated to cover the defendants/insureds due to a prior knowledge exclusion in their professional liability policy, as the insured had known of its error and a reasonable person so aware could reasonably foresee a malpractice claim from it.  Id.

In Goldberger, Westport issued a professional liability insurance policy to Goldberger & Dubin, P.C. in 1999, Id. at *2, that  covered claims made between May 12, 1999 and May 12, 2000, which was subsequently renewed for another year.  Id.  The effective date of the 1999 Policy was May 12, 1999, and the 1999 and 2000 policies provided coverage retroactive to May 12, 1993, subject to certain exclusions, including the exact exclusion at issue in this lawsuit.  Id. at **2-3.

On September 22, 2000, Goldberger & Dubin notified Westport of circumstances related to their representation of Joanne Latona and the estate of her husband in a personal injury and wrongful death lawsuit.  Id. at **3-4.  Upon being retained by Mrs. Latona, Goldberger & Dubin

7

had referred the matter to another attorney, Samuel Kelner.  Id. at *4.  In or about August 1998, Kelner advised Goldberger & Dubin that he had not commenced a wrongful death action against Chrysler within the applicable statute of limitations.  Id.  Shortly thereafter, Goldberger & Dubin advised Mrs. Latona's son of the error.  Notably, the Latona's originally advised Goldberger & Dubin that they would not bring a malpractice claim against them.  Id.

Nevertheless, on December 2, 2003, Mrs. Latona commenced a legal malpractice action against Goldberger & Dubin.  Id. at **4-5.  By correspondence dated January 15, 2004, Westport advised Goldberger & Dubin that it reserved its right to deny coverage based on Exclusion B.  Id. at *5.  Westport subsequently filed a declaratory judgment action and moved for summary judgment seeking a declaration that it was not obligated to cover Goldberger & Dubin for the malpractice action.  Id. at ** 1-2.  The Southern District granted Westport's motion.

The Southern District scribed the prior knowledge issue in Goldberger as follows:

> The dispute in this case revolves around whether or not an objective standard—e.g., could a reasonable lawyer foresee that his act or error might form the basis of a claim—or a subjective standard—e.g., did the insured lawyer actually believe his act or error that his act or error might give rise to a claim—applies to Exclusion B.

Id. at * 9.

The instant Defendants' Opp. and MOL argue that the Goldberger Court noted that courts interpreting New York law have not yet directly addressed whether an objective standard applies to Exclusion B, but tellingly fail to recognize that the Goldberger Court adopted and applied the reasoning of Mt. Airy Ins. Co. v. Thomas, 954 F.Supp 1073 (W.D.Pa. 1997), in concluding "that an objective standard should be applied to an exclusion like the one at issue here is equally compelling under New York law."  Goldberger, supra at *9.

The Goldberger Court continued:

8

First, with respect to the interpretation of insurance policies, Pennsylvania law recognizes the same presumptions in favor of the insured that exist under New York law. Pennsylvania and New York are in agreement that when the insurer relies on a policy exclusion as the basis for denying coverage, the insurer bears the burden of proving that the exclusion applies (citation omitted). Moreover, as in New York, it is settled in Pennsylvania that when insurance policy language is unclear, the policy must be construed in favor of the insured and against the insurer. (citation omitted). Thus, Pennsylvania law, like New York law, recognizes strong presumptions in favor of the insured when interpreting policy language and the scope of an exclusion. Nevertheless, in applying Pennsylvania law, the Court in Mt. Airy, applied an objective standard to the policy exclusion at issue.

Second, this Court agrees with the policy justifications articulated in Mt. Airy in favor of an objective standard. To be sure, an insured should not be denied coverage for any act, error, or omission, of which he was unaware or which he reasonably expected could not give rise to a claim. But, having knowledge of such an act, error or omission, the insured cannot perform his own risk assessment based on a subjective impression as to whether or not the aggrieved client will sue, which would impermissibly usurp the insurance company's role in assessing risk.

Id. at ** 12-13.

Applying the objective standard, the Goldberger Court held:

G&D's subjective belief as to whether or not the Latonas would file an action is irrelevant—the appropriate question is whether or not, under the circumstances, a reasonable lawyer would know or could reasonably forsee that failing to file a claim against Chrysler within the statute of limitations might give rise to a malpractice claim. Clearly, the answer to this question is yes.

Id. at ** 15-16.

The Southern District granted Westport's motion for summary judgment, declaring that based on Exclusion B of the Lawyers Professional Liability Renewal Policy, Westport was not obligated to afford coverage to Goldberger & Dubin, in whole or in part, including defense or indemnity, for the Latona lawsuit. Id. at * 17.

9

Here, the Defendants without question knew that Mrs. Asher lost her interest in her ex-husband's life insurance policies, due to her failure to timely elect under the stipulation of settlement entered into in her matrimonial matter, no later than February 24, 2004, the date of the adverse appellate ruling by the Appellate Division, First Department. (See the Affidavit of Patricia Hennessey sworn to on the 20th day of November 2007 (hereinafter "Henn. Aff." at ___), at ¶¶ 24-25; see also Westport's Rule 56, at Ex. "E"). Defendants, of course, also understood that they were counsel to Mrs. Asher during her matrimonial matter, which included the negotiation, drafting, and execution of the stipulation that gave her the overlooked right of election. (See the Henn. Aff." at ¶ 12). Defendants also clearly knew that they were actively representing Mrs. Asher on February 1, 2003 when the deadline for her election came and went, and even admit that on January 28, 2003 they were reminded in a timely fashion of the pending deadline by Mr. Asher's counsel. (See Henn. Aff. at ¶ 14).

The Defendants were therefore acutely aware prior to the 2006 Policy of the unfortunate events forming the basis of the Asher legal malpractice action, i.e. their clients' loss of her ex-husband's life insurance policies due to the failure to elect to retain the policies (in light of the aforesaid February 24, 2004 Appellate Division, First Department decision) while they represented her. From any objective or reasonable standard, the Defendants knew or could have reasonably foreseen before the 2006 Policy that they could be faced with a malpractice claim resulting from their failure to duly protect their client's interests. Exclusion B, therefore, precludes coverage for the Asher malpractice claim. See Goldberger, 2006 U.S. Dist. LEXIS 31329 (S.D.N.Y.2006); aff'd 2007 U.S. App. LEXIS 27612 (2d. Cir. 2007)("Summary Order"); see also Thomas, 954 F.Supp 1073 (W.D.Pa. 1997).

The Defendants' argument that Exclusion B is inapplicable because they subjectively did not anticipate that a malpractice claim might be expected as a result of Mrs. Asher's losing her right to her ex-husband's insurance policies is misplaced, fanciful and without merit. As the Southern District and numerous other courts recognize, the proper standard of inquiry about an insured's prior knowledge of a potential claim is not the insured's mere belief arising out of its purported relationship with its client or impressions of whether the client would assert a claim. See Goldberger at *16; see also Thomas, at 1079-80. Rather, the appropriate standard, as applied to the case at bar is whether, prior to the Policy, the Defendants, with direct knowledge of the appellate ruling that Mrs. Asher lost a significant right under the stipulation of settlement (negotiated, prepared, executed when they were her counsel) during their representation of her, knew or could have reasonably expected that such a loss would result in a malpractice claim. See Goldberger at *16; see also Thomas, at 1079-80.

As the Thomas Court noted: "the assessment of risk is a critical function which affects the determination of whether to issue coverage at all and, if so, at what premium. As a matter of public policy, courts cannot allow the insured to perform this risk analysis function instead of the insurer..." Thomas, at 1074. The right of risk assessment for insurance purposes belonged to Westport, not the Defendants, who conveniently presumed that the failure to timely elect on behalf of their client or ensure that she do so, resulting in the loss of her right to the insurance policies, would not result in a malpractice suit.

The Defendants may have been subjectively satisfied that because "Ms. Henessey had risked her own personal safety to foil a conspiracy to murder Mrs. Asher (citation omitted), who was appropriately grateful (citation omitted)," (Def.'s Opp. at p. 19), and because "eight days after Mrs. Asher's February 1, 2003 deadline to exercise her insurance rights, she sent Ms.

11

Hennessey a hand-written note praising her "excellent legal services," (Id.) and since "Ms. Hennessey continued to represent Mrs. Asher for about a year after the Appellate Division's February 24, 2004 decision," (Id.), they did not know or believe that they had committed a negligent act, error or omission or that a malpractice claim might be expected. Id. However, given the First Department's February 24, 2004 decision that Mrs. Asher had forfeited her rights to her ex-husband's policies due to the failure to timely elect pursuant to the stipulation negotiated, drafted, and executed during the Defendants' representation, the Defendants had to have objectively realized that their client had sustained a serious loss for which they could be held responsible. From any objective standard, they should have reasonably anticipated that the adverse decision "might be expected" to be the basis of a claim against them for the failure to properly protect their client's rights under the stipulation negotiated for her in her matrimonial matter.

The only reasonable, sensible interpretation of Exclusion B calls for such an objective standard. Goldberger is merely one of many cases that stand for this proposition. In Mt. Airy Ins. Co. v. Klatsky & Klatsky, 1997 U.S. Dist. LEXIS 23208, *1-2 (D.N.J. 1997), the court held that "[o]nce the Insured is aware or it is reasonably foreseeable that the Insured's conduct might be expected to be the basis of a claim or suit, any claims arising out of that conduct are precluded from coverage regardless of whether the Insured expected or reasonably foresaw the claim by the particular claimant." Id. (emphasis added). In Home Indemnity Co. v. Toombs, 910 F.Supp. 1569 (N.D.Ga. 1995), the Court employed an objective standard and found that the insurer could rescind the insured lawyer's professional liability policy on the basis of a false answer to a question on an insurance form calling for "any acts, errors or omissions that could result in professional liability claim." Id. at 1571. In The Home Ins. Co. v. Stegenga, 1991 U.S. Dist.

LEXIS 21646, *3-5, C.A. No. 90-275, (W.D.Pa. 1991), the Court construed the policy language requiring that the insured have "no basis to believe" he has breached a professional duty to call for an "objective" evaluation of the insured's knowledge. In <u>Pelagatti v. Coregis Group</u>, 1996 U.S. Dist. LEXIS 4963, C.A. 95-2925, (E.D.Pa. 1996), the Court interpreted a lawyers professional liability policy, excluding any "claim arising out of any act, error, omission or personal injury occurring prior to the effective date of [the] policy if any insured at the effective date knew or could have reasonably foreseen that such act, error, omission or personal injury <u>might be expected</u> to be the basis of a claim or suit" to require "a reasonable person" standard. <u>Id</u>. at *3 (emphasis added).

In <u>Int'l Ins. Co. v. Peabody Int'l Corp.</u>, 747 F.Supp. 477 (N.D.Ill. 1990), the Court rejected the insured's argument that correspondence notifying the insured of a claim was subjectively viewed by the insured as a "negotiating ploy," and construed the policy language as calling for a traditional objective evaluation rather than a judgmental or subjective evaluation. In <u>Ratcliff v. Int'l Surplus Lines Ins.</u>, 194 Ill.App.3d 18, 26, 550 N.E.2d 1052, 1057 (Ill. App. Ct. 1990), the Court held that a policy application question asking whether the applicant knows of any fact, circumstance or situation indicating the probability of a claim against which indemnification is or would be afforded by the proposed insurance calls for an inquiry into whether the disclosure of facts which "objectively considered, might give rise to a claim regardless of the applicant's subjective belief." In <u>Allstate Ins. Co. v. Barnett</u>, 816 F.Supp 492, 496 (S.D.Ind. 1993), the Courts ruled that a homeowners policy excluding coverage for damages "which may reasonably be expected to result from the intentional or criminal acts of an insured" was unambiguous and required an objective standard.

Moreover, while New York courts have not yet determined whether an objective or subjective standard should be applied to prior knowledge exclusions, they very tellingly have applied an objective standard to comparable notice provisions.

In <u>Sirignano v. Chicago Ins. Co.</u>, 192 F.Supp.2d 199 (S.D.N.Y. 2002), the insured lawyer's prior knowledge of the dismissal of a medical malpractice case brought for his client led to a finding of no coverage under his professional liability policy. In <u>Sirignano</u>, Miller retained the plaintiff/insured to bring a medical malpractice action. On September 15, 1997, when the matter was scheduled for trial, both parties answered "ready" at the call of the trial calendar. <u>Id</u> at 202. However, because plaintiff had failed to provide his opponent with expert reports prior to trial, the judge marked the case off calendar. <u>Id</u>. After a fifteen-month standstill, defense counsel moved for an order dismissing the case as abandoned, and on January 14, 1999, the court entered judgment dismissing the action. <u>Id</u>.

The insured's efforts to vacate the dismissal proved unsuccessful. His motion to vacate was denied by the trial judge on April 29, 1999; the Second Department affirmed the dismissal on January 3, 2000, and by autumn of 2000, the insured's motion for leave to appeal to the New York Court of Appeals was denied. <u>Id</u>. Then, on October 31, 2000, the insured first notified his malpractice carrier that "there was a chance that Mr. Miller may assert a claim against [him] although [Mr. Miller] has not given [him] any such indication." <u>Id</u>. Shortly thereafter, Miller brought a malpractice action against the insured. After a review of the insured's file, the carrier denied coverage. The insured instituted an action for declaratory judgment, and the insurer argued that it was not obligated to afford coverage to the insured law firm based upon Condition B of the relevant policy, which stated, in relevant part, as follows:

> B. Assistance and Cooperation of Insured in the Event of Claim or Suit: Upon the Insured becoming aware of any negligent act, error,

14

> omission or Personal Injury in the rendering of or failure to render
> Professional Services which could reasonably be expected to be
> the basis of a Claim covered hereby, written notice shall be given
> by the Insured, or its representative to the Company together with
> the fullest information obtainable as soon as practicable.

Id. at 202.

Observing that the insured failed to give notice of the potential claim until approximately 18-22 months after the trial court denied his motion to vacate the dismissal against his client, the court found the insured's unexcused delay unreasonable and in breach of the policy. Id. at 203 (citing Ingalsbe v. Chicago Ins. Co., 270 A.D.2d 684 at 685, 704 N.Y.S.2d 698 at 699 (3d Dep't 2000) (holding that the insured "had a reasonable basis upon which to report a potential claim to his malpractice carrier" when he knew that he had missed the statute of limitations on his client's claim)). Furthermore, the court made it clear that although the insured gave timely notice to the insurer of the claim against him, the insured was not entitled to coverage because he failed to give timely notice of his knowledge of a potential claim pursuant to the terms of his policy. Sirignano, 192 F.Supp.2d at 202-203.

Noting that the insured's knowledge of the initial dismissal of the action was "alone sufficient to create the reasonable expectation of a malpractice claim," the court stated that "regardless of [insured's] subjective and conclusory claim…that he was unaware of any conduct on his part which reasonably could give rise to a claim, the events which occurred in the [underlying] action between January and April 1999 are such that any reasonable attorney-insured could reasonably have expected a claim." Id. at 204 (citing Sparacino v. Pawtucket Mut. Ins. Co., 50 F.3d 141, 143 (2d Cir. 1995) (stating that "[t]he test for determining whether the notice provision has been triggered is whether the circumstances known to the insured at that

time would have suggested to a reasonable person the possibility of a claim"); <u>Security Mut. Ins. Co. v. Acker-Fitzsimons Corp.</u>, 31 N.Y.2d 436, 442, 340 N.Y.S.2d 902, 907 (1972).

The court in <u>Sirignano</u> further held that:

> under any objective view of the facts, there were a series of errors by [insured], each of which was clearly brought to his attention from the beginning to the middle of 1999, and all of which <u>compromised his client's right to recover</u>. It is hard to imagine what more, short of the filing of a complaint by the client, would be necessary to trigger the policy's notice of occurrence requirement. Indeed, to hold the foregoing facts insufficient would render the notice clause meaningless; and it is hornbook law that an insurance policy cannot be construed so as to render its terms meaningless or of no effect.

<u>Id</u>. at 204-05 (<u>emphasis added</u>) (<u>citing</u> <u>Bretton v. Mutual of Omaha Ins. Co.</u>, 110 A.D.2d 46, 492 N.Y.S.2d 760, 763 (1st Dep't), <u>aff'd</u>, 66 N.Y.2d 1020, 499 N.Y.S.2d 397, 489 N.E.2d 1299 (1985)).

Just as the <u>Sirignano</u> insured had prior knowledge of a potential claim which vitiated his coverage, the Defendants herein had prior knowledge of their wrongful acts and should have reasonably foreseen a claim would be made against them.

A reasonable attorney-insured would foresee and probably even expect upon failing to timely exercise or protect its client's right of election of her ex-husband's life insurance policies, which resulted in the clients loss of such policies, that he or she may be subject to a claim or suit by the client. <u>Ingalsbe v. Chicago Ins. Co.</u>, 270 A.D.2d 684 at 685, 704 N.Y.S.2d 698 at 699 (3d Dep't 2000) (holding that the insured "had a reasonable basis upon which to report a potential claim to his malpractice carrier" when he knew that he had missed the statute of limitations on his client's claim); <u>Sirignano</u>, 192 F.Supp.2d at 205-206 (stating that "even if the injured party tells the insured that no claim will be made, that does not excuse a notice delay.").

In Ingalsbe, the plaintiff/insured procured a "claims made" professional liability insurance policy from Chicago Insurance Company ("CIC"), for claims made between September 30, 1995 and September 30, 1997.  In July of 1997, the insured was sued for legal malpractice on the ground that on February 26, 1994, he negligently allowed the statute of limitations on a wrongful death claim to expire.  CIC disclaimed coverage to the insured, and the insured filed an action for declaratory judgment seeking an order that the defendants[3] had a duty to defend and indemnify him.  Id.

Modifying the trial court's ruling in part, the appellate court stated that:

> [w]e agree with [the] Supreme Court's conclusions that since plaintiff knew in July 1994 that he had missed the wrongful death Statute of Limitations, he had a reasonable basis upon which to report a potential claim to his malpractice carrier.... [W]e agree with the court that since the [CIC] policy provides coverage for claims arising during the policy period or prior to the policy period provided that, inter alia, the insured had no reasonable basis to believe that he had breached a professional duty or to foresee that a claim would be made against him, that there is no coverage under the [CIC] policy.

Id. 270 A.D.2d at 685.

The same reasoning applies to the instant matter.  The Defendants well knew in February 2004 that Mrs. Asher had lost any right to her ex-husband's life insurance policies due to the failure to make a timely election under the stipulation of settlement.  Thus, the Defendants had a reasonable basis prior to the inception of the 2006 Policy upon which to foresee a potential claim.

---

[3] In addition to CIC, Plaintiff also included Home Insurance as a defendant in its action for declaration judgment. Home Insurance provided plaintiff with a "claims made" professional liability policy for claims made between 1984 and September 30, 1995.

3080763.1

The interpretation proposed by the Defendants, applying only a subjective examination of their state of mind as to whether a claim would actually be brought against them, is unreasonable and unwarranted as a matter of law.

The two cases cited by the Defendants in support of their contention that the prior knowledge exclusion refers to an insured's subjective belief that a claim against them is probable or certain are inapposite and not applicable to the Court's analysis of the issues presented in this case. Neither case, Estate of Logan v. Northwestern National Casualty Co., 424 N.W.2d 186 (Wis. 1988), nor Liebling v. Garden State Indemnity, 767 A.2d 524 (N.J. Super.Ct., App. Div. 2001), involve the *exact* same exclusion at issue in this matter. Moreover, neither case was decided by the Southern District or a New York court. Inasmuch as the Southern District has already determined that the objective standard should be applied to the very exclusion at issue here (See Westport v. Goldberger & Dubin, 2006 U.S. Dist. LEXIS 31329 (S.D.N.Y.2006); aff'd 2007 U.S. App. LEXIS 27612 (2d. Cir. 2007)("Summary Order")), and since Defendants have failed to present any evidence as to why this Court should not follow the Southern District's precedent on this issue, Defendants argument that this Court should apply the subjective standard to Exclusion B fails.

Defendants argue that the cases relied upon by Westport in support of its argument that the objective standard must be applied to Exclusion B are distinguishable from the case at bar because they involve duties delegated to attorneys and not clients. (Def.'s Opp. at pp. 17-22). This argument, like all of Defendants arguments, fails.

Remarkably, Defendants contend that Mrs. Asher's right of election was hers and hers alone, and that her failure to elect could not be attributed to them. (See Def.'s Opp. at pp. 18-19; see also, Henn. Aff. at ¶ 13). This argument is irrelevant if not preposterous. Fundamental to the

practice of law is adherence to deadlines, whether in contracts or in court.  For instance, an attorney's failure to commence an action within the statute of limitations period is grounds for a legal malpractice claim.  <u>Mackley v. Sullivan & Liapakis</u>, P.C., 2001 U.S. Dist. LEXIS 21723 (S.D.N.Y. 2001); <u>Cruz v. Durst Law Firm</u>, 273 A.D.2d 120 (1st Dep't 2000).

A corollary is the need of a lawyer to advise his or her client about a pending deadline and the consequences of failing to meet it, particularly if the client will suffer adverse legal or financial effects if the deadline is passed without either complying with it or obtaining an extension.  <u>Burke v. Law Offices of Landau Miller & Moran</u>, 289 A.D.2d 16 (1st Dep't 2001)(finding that defendant law firm was not entitled to dismissal of the legal malpractice cause of action against it as a matter of law, where it failed to call the prospective client's specific attention to the number of days remaining before the relevant statute of limitations).

Notably, the most frequently alleged error in a legal malpractice action is the attorney's failure to comply with a time limitation.  <u>Legal Malpractice</u>, 2005 Edition, Mallen and Smith, Volume 3, § 23.3.  No matter the practice area involved, the practice of law is interwoven with requirements that acts be done within a specified time or before a deadline expires.  <u>Id</u>.  Some courts have even treated an attorney's missed statutory requirement as negligence *per se*.  <u>Id</u>. citing <u>Land v. Greenwood</u>, 113 Ill. App.3d 537, 478 N.E.2d 1203 (Ill.App.Ct. 1985); <u>Rogers v. Norvell</u>, 174 Ga.App. 453, 330 S.E.2d 392 (Ga.Ct.App. 1985).  Thus, adhering to time limitations is one of the most fundamental tasks of an attorney and should always be at the forefront of his or her mind.

Where a lawyer, as in the case at bar, has both participated in the crafting of an agreement or stipulation of settlement that includes a deadline and, just as significantly, is expressly advised by the other party to the agreement or stipulation, or that party's counsel,

about the need to satisfy the deadline (See Henn. Aff. at ¶¶ 12-14; see also Westport's Rule 56.1, at Ex. "G"), the attorney knows that she must act accordingly and promptly with her client's best interests in mind. If the deadline is passed without compliance by the attorney or her client, a reasonable attorney recognizes all too well that something has gone awry. If the ensuing dispute about the deadline is thereafter litigated and, as was the case in the Asher matrimonial matter, a court of final jurisdiction ultimately rules that it has been irretrievably missed by the client (See Westport's Rule 56.1, at Ex. "E"), any reasonable lawyer would immediately understand the potential legal malpractice consequences of that ruling. When the lawyer is then told by an appellate court, after efforts to extricate the client from the problem that there is no further recourse (Id.), she will understand from any meaningful perspective that the client's loss can ripen into an unwanted problem for the lawyer as well, i.e., a claim that she failed to effectively protect her client.

Pursuant to the foregoing, Goldberger, Thomas, and Westport Insurance Corp. v. Mirsky, Civ. A. No. 00-4367, 2002 WL 31018554 (E.D. Pa. Sept. 10, 2002), are not distinguishable from the case at bar, and should, therefore, be followed by this court.

Defendants further argue that the objective standard can not be applied to Exclusion B because it conflicts with the purpose of the Policy, the reasonable expectations of lawyer policy holders, and other policy language. (Def.'s Opp. at pp. 11-16). Again, Defendants ignore the fact that in Goldberger, the Southern District established that the objective standard applies to the very exclusion at issue here. Defendants further ignore the fact that the policy at issue in Goldberger, a virtually identical lawyer's professional liability policy issued by the very same insurance company that issued the subject policy, contained the same "other policy language" that allegedly conflicts with Exclusion B. (See Def.'s Opp. at p. 14, see also Goldberger, at * 3).

20

Surely the Southern District would not have applied an objective standard to Exclusion B if doing so conflicted with the purpose of the policy and other policy language or the reasonable expectations of the policy holders. As Defendants have presented absolutely no compelling evidence why this Court should not follow the Southern District's precedent set forth in Goldberger, a case directly on point and involving the very exclusion at issue here and a virtually identical policy issued by the same insurance carrier as the policy at issue here, Defendants argument fails.

As previously discussed, the Defendants' subjective belief that Mrs. Asher would not bring a malpractice claim against them is irrelevant. The Defendants were aware of Mrs. Asher's significant loss on February 24, 2004 (prior to the effective date of the Policy) at the latest, i.e. the date the Appellate Division, First Department ruled that she did not have a right to her ex-husband's insurance policies since she failed to timely elect to retain them under the terms of the stipulation of settlement negotiated, prepared, and executed while Mrs. Asher was represented by Defendants. Accordingly, Exclusion B precludes coverage for Mrs. Asher's malpractice claim, insofar as the Defendants were aware prior to inception date of the Policy that Mrs. Asher lost a significant right while under their counsel and under a document that was negotiated, drafted, and executed while they acted as her attorney.

Westport, therefore, is not obligated to afford coverage due to Exclusion B of the Policy, which is clear, unambiguous and applicable in this case since the Defendants were aware, prior to the inception of the 2006 Policy, of an act, error or omission that a reasonable attorney would know or could reasonably foresee might give rise to a claim or suit.

21

**C.    The Allegations of the Asher Complaint Cast it Solely and Entirely
Within Exclusion B, Barring Coverage for the Asher Action in its
Entirety**

Defendants argue that even if Exclusion B bars coverage for the allegations of malpractice that concern Mrs. Asher's right of electing to assume and/or retain her ex-husband's life insurance policies, Exclusion B does not bar coverage for Mrs. Asher's "other allegations of malpractice, which do not concern her life insurance rights." (Def.'s MOL, at p. 16). This argument fails, as even a cursory review of the Asher complaint reveals that there is only one act, error, or omission giving rise to the Asher action – Defendants failure to timely exercise Mrs. Asher's right of election to her ex-husband's insurance policies - and that the entirety of the Asher complaint concerns that negligence. (Westport's Rule 56.1, at Ex. "D").

The Asher legal malpractice complaint, which appears at Exhibit "D" to Westport's Rule 56, contains thirty-three paragraphs/allegations. Of those thirty-three paragraphs/allegations, paragraphs 1-7 simply serve to identify the parties to the action as is standard form for a complaint. Of the remainder of the twenty-six paragraphs/allegations of the complaint, all but seven, *directly* or *indirectly* mention and concern Mrs. Asher's life insurance election rights. (Westport's Rule 56.1, at Exhibit "D", ¶¶ 14-33). It is clear that the seven allegations which do not directly or indirectly mention Mrs. Asher's life insurance policies, paragraphs 9-13, are the standard horn book allegations of negligence appearing in virtually all legal malpractice complaints, and that they arise out of Defendant's failure to elect. Defendants' argument to the contrary is preposterous at best and, therefore, should not be entertained by this Court.

22

**REPLY POINT II**

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, OR IN THE ALTERNATIVE FOR A STAY MUST BE DENIED IN ITS ENTIRETY**

Defendants' motion for partial summary judgment argues that Defendants are entitled to summary judgment on their First Counterclaim which seeks a judicial declaration that, pursuant to the Policy, Westport has a duty to defend and pay for its defense of the Asher action. They also seek summary judgment on their Second and Fourth counterclaims, which respectively seek reimbursement for the costs they have paid to the lawyers that are defending them in the Asher action and reimbursement for the costs that they have incurred in the defense the instant action.

As set forth in great detail above and in Westport's Original Memorandum of Law, based on Exclusion B of the Policy, Westport is not obligated to afford coverage to the Defendants, in whole or in part, including defense and indemnity, for the Asher legal malpractice action. As such, it follows that Westport has no duty to defend Defendants in the Asher action; no duty to reimburse the Defendants for the costs they expended in the defense of that action; and no duty to reimburse Defendants for the costs they have expended in their defense of the instant matter. Therefore, Defendants' motion seeking partial summary judgment must be denied in its entirety.

Assuming, arguendo, that this Court denies Westport's motion and grants Defendants' motion, this matter should not be dismissed without prejudice or stayed pending the adjudication of the Asher legal malpractice action as Defendants contend, since the issues of indemnification of coverage being litigated herein do not hinge on facts that will be decided in the Asher action.

All of the cases cited by Defendants in "support" of their argument for dismissal or a stay stand for the proposition that a stay of an action to declare an insurer's duty to indemnify is warranted where the issues of indemnification and coverage hinge on facts which will

23

necessarily be decided in the underlying action. See Spoor-Lasher Co. v. Aetna Cas. and Sur. Co., 39 N.Y.2d 875, 386 N.Y.S2d 221 (1976); Hout v. Coffman, 126 A.D. 2d 973, 511 N.Y.S.2d 990 (4th Dep't 1987); Ehrlich v. Aetna Cas. & Sur. Co., 95 A.D.2d 936, N.Y.S.2d 934 (3d Dep't 1983); Town of Huntington v. Hartford Ins. Group, 69 A.D.2d 906, 415 N.Y.S.2d 904 (2d Dep't 1979); American Home Assur. Co. v. Port. Auth. Of N.Y. and N.J., 66 A.D.2d 269, 412 N.Y.S.2d 605 (1st Dep't 1979).

Whether or not the instant Defendants actually committed malpractice in failing to protect or pursue Mrs. Asher's right of election has no bearing whatsoever on the instant coverage dispute. Rather, the instant matter concerns whether or not prior to the inception of the Policy, given the adverse appellate ruling a reasonable lawyer would have known or reasonably foreseen that failing to act on behalf of Mrs. Asher, or ensuring that she act on her own behalf, and Mrs. Asher's resulting loss of her right to her ex-husband's insurance policies, could lead to a malpractice claim regardless of the merits of that claim. Thus, whether or not the Defendants' act, error, or omission amounts to negligence is irrelevant to and not part of the issue of their prior knowledge for coverage purposes. Therefore, Defendants aforementioned "supporting" cases are inapposite to the case at bar. As such, should this Court deny Westport's motion for summary judgment, a stay or dismissal without prejudice of this action would not be warranted.

## CONCLUSION

In conclusion, Exclusion B of the 2006 Policy is clear, unambiguous, and subject to no other reasonable interpretation as that proposed herein, and should be enforced so as to deny coverage for the Asher legal malpractice claim in light of the Defendants' knowledge, prior to the inception of the Policy, that Mrs. Asher lost a significant right while the Defendants' represented her and that a reasonable attorney with this knowledge could have reasonably

24

foreseen that such loss might be the basis of a claim. Moreover, it goes without saying that since Exclusion B bars coverage for the Asher claim, Defendants' partial motion for summary judgment seeking a defense of the Asher action and a reimbursement of the costs paid in defending the instant action must be denied in its entirety.

     **WHEREFORE**, the Plaintiff and Counterclaim-Defendant WESTPORT INSURANCE CORPORATION respectfully requests that this Court deny Defendants motion for partial summary judgment and grant summary judgment against the Defendants and declare as follows:

    a.    Based upon Exclusion B of the Lawyers Professional Liability Renewal Policy, No. NRL-004960-8 for the period of, and for claims between March 14, 2006 and March 14, 2007 (hereinafter referred to as the "2006 Policy"), Plaintiff Westport is not obligated to afford coverage to the Defendants, in whole or in part, including defense or indemnity, for the lawsuit entitled <u>Jayne Asher v. Patricia Hennessey, Esq. and Cohen, Hennessey, Bienstock, P.C.</u>, filed in Supreme Court for the State of New York, County of Westchester, Index No. 1361/07; and

    b.    For such other and further relief the Court may deem just and proper.

Dated: New York, New York
       January 11, 2008

                Respectfully submitted,


         WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP



              By:_____
                Mark K. Anesh (MKA: 8303)
              *Attorneys for Plaintiff and Counterclaim Defendant*
              WESTPORT INSURANCE CORPORATION
              150 East 42nd Street
              New York, New York 10017-5639
              (212) 490-3000
              File No.: 05302.00249