Exhibit A

8921wesd

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    WESTPORT INSURANCE
      CORPORATION,
 4
                    Plaintiff,
 5
                 v.                        07-CV-6726 (SHS)
 6
      PATRICIA HENNESSEY, ESQ., and
 7    COHEN, HENNESSEY, BIENSTOCK &
      RABIN, P.C., f/k/a COHEN,
 8    HENNESSEY, BIENSTOCK, P.C.,

 9                 Defendants.            Decision

10    ------------------------------x
                                          New York, N.Y.
11                                        September 2, 2008
                                          2:44 p.m.
12
      Before:
13
                      HON. SIDNEY H. STEIN,
14
                                          District Judge
15
                          APPEARANCES
16
      LEWIS BRISBOIS BISGAARD & SMITH LLP
17         Attorneys for Plaintiff
      BY:  MARK K. ANESH, ESQ.
18
      FRIED & EPSTEIN LLP
19         Attorneys for Defendants
      BY:  JOHN W. FRIED, ESQ.
20
      ALSO PRESENT:   PAUL C. KURLAND, ESQ., Snow Becker Krauss
21                    STACEY GRAHAM, Westport Insurance Corporation
                      HARRIET NEWMAN COHEN, Cohen Hennessey Bienstock
22

23

24

25
```

8921wesd

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   -------------------------------x

3   WESTPORT INSURANCE
    CORPORATION,
4
              Plaintiff,
5
          v.                              07-CV-6726 (SHS)
6
    PATRICIA HENNESSEY, ESQ., and
7   COHEN, HENNESSEY, BIENSTOCK &
    RABIN, P.C., f/k/a COHEN,
8   HENNESSEY, BIENSTOCK, P.C.,

9             Defendants.                 Decision

10  -------------------------------x
                                          New York, N.Y.
11                                        September 2, 2008
                                          2:44 p.m.
12
    Before:
13
                    HON. SIDNEY H. STEIN,
14
                                          District Judge
15
                       APPEARANCES
16
    LEWIS BRISBOIS BISGAARD & SMITH LLP
17       Attorneys for Plaintiff
    BY:  MARK K. ANESH, ESQ.
18
    FRIED & EPSTEIN LLP
19       Attorneys for Defendants
    BY:  JOHN W. FRIED, ESQ.
20
    ALSO PRESENT:   PAUL C. KURLAND, ESQ., Snow Becker Krauss
21                  STACEY GRAHAM, Westport Insurance Corporation
                    HARRIET NEWMAN COHEN, Cohen Hennessey Bienstock
22

23

24

25

8921wesd

1          (In open court)

2          (Case called)

3          THE CLERK:  Counsel, please state your names for the

4     record.

5          MR. ANESH:  Mark Anesh, Lewis Brisbois Bisgaard &

6     Smith, for plaintiff Westport Insurance Company.

7          MR. FRIED:  John W. Fried, Fried & Epstein LLP, for

8     defendant Patricia Hennessey and Cohen Hennessey Bienstock &

9     Rabin, P.C.

10          THE COURT:  And we also have present from Westport

11     Insurance Company Stacey Graham; and from Cohen Hennessey, we

12     have Ms. Cohen.

13          Sir, did you make your appearance as well?

14          MR. KURLAND:  Yes.  While I'm not appearing in this

15     action, I'm counsel to the defendants here in the underlying

16     malpractice case pending in Westchester County Supreme Court.

17     My name is Paul C. Kurland, K-U-R-L-A-N-D, of Snow Becker

18     Krauss, P.C.

19          THE COURT:  All right.  Good afternoon.  Welcome to

20     all of you.  I appreciate the substantial efforts the parties

21     have taken in an attempt to resolve this.  Those efforts were

22     unsuccessful.  And as indicated, I will proceed to reading a

23     decision on the pending motions.  My decision is as follows:

24          Plaintiff Westport Insurance Corporation brings this

25     action for a declaratory judgment that it need not defend nor

1  indemnify defendants Patricia Hennessey or her firm, Cohen,

2  Hennessey, Bienstock & Rabin, in a malpractice action filed by

3  Jayne Asher against Hennessey and the Cohen Hennessey firm

4  resulting from their legal representation of Ms. Asher in her

5  divorce.  Westport contends that defendants "knew or could have

6  reasonably foreseen" that their acts "might be expected to be

7  the basis" for a malpractice claim against them by Ms. Asher

8  prior to the March 14, 2006 effective date of their malpractice

9  insurance policy with Westport, and thus Westport need not

10  indemnify nor defend defendants in that action.  In response,

11  Hennessey and the law firm seek partial summary judgment in

12  this action on three of their four counterclaims:

13  (Counterclaim #1) a declaratory judgment that Westport must

14  defend defendants in Ms. Asher's malpractice suit;

15  (Counterclaim #2) a claim alleging that Westport has breached

16  its insurance contract with the defendants by refusing to

17  defend them in the malpractice action; and (Counterclaim #4) an

18  award of attorney's fees in this action.

19        The Court finds that Hennessey and the law firm could

20  not have reasonably foreseen that Ms. Asher's failure to make

21  certain elections concerning her ex-husband's life insurance

22  policies set forth in the agreement resolving the divorce would

23  give rise to a malpractice claim against them.  Accordingly,

24  Westport's summary judgment motion is denied, and defendants'

25  motion for partial summary judgment is granted.  The Court

8921wesd

1    heard extensive oral argument on the motions on June 18th of

2    this year.

3            The facts are as follows:

4            Defendants Hennessey and the Cohen Hennessey firm

5    purchased a Lawyers Professional Liability Policy for

6    professional malpractice claims issued by Westport that was to

7    cover defendants for claims made between March 14, 2006 and

8    March 13, 2007.  (Plaintiff's 56.1 Statement, ¶¶1 and 2;

9    Defendant's Counterstatement Pursuant to Rule 56.1(a), ¶¶1 and

10   2.)  Exclusion B in the 2006 Policy states as follows:

11           This policy does not apply to...

12           B. any CLAIM arising out of any act, error, [or]

13   omission... occurring prior to the effective date of this

14   policy if any INSURED at the effective date knew or could have

15   reasonably foreseen that such act, error, [or] omission...

16   might be expected to be the basis of a CLAIM or suit.

17           (Lawyers Professional Liability Insurance Policy,

18   which is Exhibit A to Plaintiff's 56.1 Statement at 4.)

19           In 2000, Jayne Asher retained Cohen Hennessey to

20   represent her in her divorce from Sanford Asher.  Ms. Hennessey

21   was the lawyer primarily responsible for representing

22   Ms. Asher.  (Defendants' 56.1, ¶¶1 and 2; Hennessey Affidavit

23   dated November 20, 2007, ¶7.)  On or about October 15, 2002,

24   Jayne Asher and Sanford Asher executed a Stipulation of

25   Settlement in their divorce action, which states in part that:

1          "Wife may, at her option assume, at her expense, the

2     existing term life insurance policy on Husband's life... which

3     has a death benefit of One Million Dollars ($1,000,000).  Wife

4     shall elect, by February 1, 2003, whether she wishes to assume

5     the policy, in which event, Wife shall have sixty (60)

6     additional days, if necessary, to effectuate the transfer of

7     ownership of said policy to herself.

8          "Wife is the owner of a variable ordinary life policy

9     on the life of Husband... which has a death benefit of

10    One Million Dollars ($1,000,000)...  Wife shall transfer the

11    ownership of said policy to Husband unless, by February 1,

12    2003, Wife notifies Husband that she elects to retain ownership

13    of said policy."

14          (Defendants' 56.1(b) ¶¶10-16; Hennessey Affidavit

15    ¶¶11-13, Exhibit 1 to the Hennessey Affidavit at Article IX,

16    ¶¶1 and 2.)  On January 28, 2003, Mr. Asher's attorney wrote to

17    Ms. Hennessey that "[w]e are waiting for [Ms. Asher] to make

18    her election regarding the life insurance policies."

19    (Plaintiff's and Defendants' 56.1, ¶13; and Letter to Patricia

20    Hennessey dated January 28, 2003, Exhibit G to Plaintiff's

21    56.1.)  Ms. Asher did not elect to retain or assume ownership

22    over either policy by February 1, 2003, which is the date

23    specified in the Stipulation.  The citation there is *J.A. v.*

24    *S.A.*, 4 A.D. 3d 248,251 (1st Dep't 2004).  Three and one half

25    months later, on May 22nd, 2003, a justice of the Supreme

8921wesd

1    Court of the State of New York gave Ms. Asher additional time

2    to make her election.  (Exhibit 3 to the Hennessey Affidavit.)

3    On February 24, 2004, the Appellate Division, First Department

4    reversed that determination, however, finding that "the

5    stipulation [was] clear and unambiguous in affording the wife

6    until February 1, 2003 to exercise her life insurance options.

7    Clearly, she failed to act within the deadline and thus waived

8    her right of election."  *J.A. v. S.A.*, 4 A.D.3d at 251.

9         On or about July 26, 2006, Cohen Hennessey sent

10   Westport a June 29, 2006 letter Hennessey had received from

11   Ms. Asher's attorney, stating that Ms. Asher was damaged by

12   Cohen Hennessey's failure to timely exercise Ms. Asher's right

13   of election as to the insurance policies.  (The parties' 56.1

14   Statements, ¶4; Exhibit B to Plaintiff's 56.1, Letter from Paul

15   I. Marx, Esq.)  Seven months later, on January 23, 2007,

16   Ms. Asher filed a legal malpractice action against defendants

17   in New York State Supreme Court, alleging that "by reason of

18   defendants' failure to timely exercise the rights of election,

19   Plaintiff was barred from doing so and lost the benefit of the

20   life insurance policies."  (56.1 Statements ¶6; and Exhibit D

21   to Plaintiff's 56.1 statement at ¶¶17 and 18.)

22        On March 22, 2007, Westport sent defendants a

23   reservation of rights letter, stating that it was reserving its

24   right to investigate and possibly deny coverage as to

25   Ms. Asher's claims.  (56.1 Statement ¶12.)  On July 11, 2007,

8921wesd

1   Westport sent a letter to the defendants stating that it was in

2   fact denying coverage pursuant to Exclusion B of the Policy,

3   because

4        "there is objective evidence that [defendants] were

5   aware of an act, error or omission which [they] knew or could

6   reasonably foresee might be expected to be the basis of a claim

7   or suit against [them] when the February 24, 2004 Appellate

8   Division Order found that Ms. Asher lost any rights to the

9   policies due to the failure to comply with the Stipulation.

10  This was known prior to the Westport policy effective date of

11  March 14, 2006."

12       (56.1 Statements ¶15; Exhibit H to Plaintiff's 56.1

13  Statement.)

14       On July 26, 2007, Westport filed this action, seeking

15  a declaratory judgment absolving it of responsibility to defend

16  or indemnify defendants with respect to the Asher malpractice

17  action.  Defendants in turn asserted four counterclaims: (1)

18  Counterclaim #1: seeking a declaratory judgment that Westport

19  is required to defend defendants in the Asher malpractice

20  action; Counterclaim #2: claims that Westport has breached its

21  contract with defendants by disclaiming its duty to defend;

22  Counterclaim #3: claims that Westport has breached its contract

23  with defendants by disclaiming its duty to indemnify; and

24  Counterclaim #4: seeks attorney's fees and expenses in this

25  action.

8921wesd

1          Westport has now moved for summary judgment for

2     declaratory judgment, arguing that Exclusion B of its coverage

3     policy applies as a matter of law, and that defendants knew or

4     could have reasonably foreseen that Ms. Asher would file a

5     claim against them at least as of February 24, 2004, when the

6     Appellate Division ruled that Ms. Asher could no longer elect

7     ownership of the life insurance policies.  In response,

8     Hennessey and the Cohen Hennessey law firm argue that they did

9     not know and could not have known that Ms. Asher would file a

10    suit against them, and they ask this Court to grant a partial

11    summary judgment on three of their four counterclaims.

12    Specifically, on Counterclaim #1, they wanted declaratory

13    judgment that Westport must pay to defend Hennessey and the

14    Cohen Hennessey law firm in Ms. Asher's malpractice suit;

15    Counterclaim #2 seeks a finding that Westport breached its

16    contract with defendants by refusing to defend them in the

17    malpractice action; and Counterclaim #4 seeks an order of

18    attorney's fees, as I've said.  As to the third counterclaim,

19    which was breach of contract for Westport's refusal to

20    indemnify, defendants assert that Westport's claim for a

21    declaratory judgment that it need not indemnify defendants is

22    premature, and ask that Westport's action be dismissed without

23    prejudice or stayed insofar as it seeks a declaratory judgment

24    that there is no duty to indemnify until the underlying Asher

25    malpractice suit has been adjudicated.

1    Let's now turn to the standards on summary judgment.

2    You all know what they are.

3    It's appropriate to grant summary judgment only if the

4    evidence shows that there's no genuine issue of material fact

5    and the moving party is entitled to judgment as a matter of

6    law.    *Celotex Corp. v. Catrett,* 477 U.S. 317,322 (1986); *Allen*

7    *v. Coughlin*, 64 F.3d 77,79 (2d Cir. 1995).    In determining

8    whether a genuine issue of material fact exists, the Court "is

9    to resolve all ambiguities and draw all permissible factual

10   inferences in favor of the party against whom summary judgment

11   is sought."    *Patterson v. County of Oneida*, 375 F.3d 206,219

12   (2d Cir. 2004); see also *LaFond*, 50 F.3d at 171.    However, the

13   party opposing summary judgment "may not rely on mere

14   conclusory allegations or speculation, but instead must offer

15   some hard evidence" in support of its factual assertions such

16   that "there is sufficient evidence favoring the nonmoving party

17   for a jury to return a verdict for that party."    Those are

18   quotations from *D'Amico v. City of New York*, 132 F.3d 145,149

19   (2d Cir. 1998), and *Golden Pacific Bancorp v. FDIC*, 375 F.3d

20   196,200 (2d Cir. 2004).

21   Now here, both parties have moved, cross-moved for

22   summary judgment and the same legal standards apply.    "[E]ach

23   party's motion must be examined on its own merits, and in each

24   case all reasonable inferences must be drawn against the party

25   whose motion is under consideration."    That's *Morales v.*

1  *Quintel Entertainment, Inc.*, 249 F.3d 115,121 (2d Cir. 2001).

2       Now I want to turn to the duty to defend.

3       Under New York law, which is the applicable law here,

4  an insurer has an "exceedingly broad" duty to defend the

5  insured. *Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d

6  131,137 (2006) (quoting *Continental Cas. Co. v. Rapid-American*

7  *Corp.*, 80 N.Y.2d 640,648 (1993), and "'[i]f, liberally

8  construed, the claim is within the embrace of the policy, the

9  insurer must come forward to defend its insured no matter how

10  groundless, false or baseless the suit may be.'" *Id.* (quoting

11  *Ruder & Finn, Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663,670

12  (1981)). Once a duty to defend is triggered, the insurer must

13  continue to defend the insured unless and until the insurer

14  "can 'demonstrate that the allegations of the complaint cast

15  that pleading solely and entirely within the policy exclusions,

16  and further, that the allegations, in toto, are subject to no

17  other interpretation.'" *Id.* (quoting *Allstate Ins. Co. v.*

18  *Mugavero*, 79 N.Y.2d 153,159 (1992)).

19       The allegations in the Asher complaint -- that

20  defendants were negligent by giving Ms. Asher "incorrect and

21  fallacious advice regarding rights of election under the

22  Stipulation" (Asher Complaint ¶19) -- suggest that the claim is

23  "within the embrace of the policy" for professional liability

24  insurance. See *Ruder & Finn*, 52 N.Y.2D at 670-74. Westport

25  relies on Exclusion B to seek the declaratory judgment that it

8921wesd

1   need not defend or indemnify defendants.

2          So let's now look at the exclusion.

3          To avoid coverage on the basis of an exclusion, the

4   burden is on the insurer to demonstrate the applicability of

5   that exclusion.  *Cook*, 7 N.Y.3d at 137; see also *Village of*

6   *Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114,115-16

7   (2d Cir. 1995).  The insurer must also prove that the exclusion

8   is unambiguous.  See *Sea Ins. Co., Ltd. v. Westchester Fire*

9   *Ins. Co.*, 51 F.3d 22,26 (2d Cir. 1995).

10         With respect to the particular exclusion at issue

11  here, the New York Court of Appeals has not yet definitively

12  determined whether an objective standard -- "e.g., could a

13  reasonable lawyer foresee that his act or error might form the

14  basis of a claim" -- or a subjective standard -- "e.g., did the

15  insured lawyer actually believe that his act or error might

16  give rise to a claim" -- applies.  *Westport Ins. Co. v.*

17  *Goldberger & Dubin, P.C.*, 2006 U.S. Dist. LEXIS 31329, at *8-9

18  (S.D.N.Y. Mar. 3, 2006) (determining that New York courts would

19  apply an objective standard) aff'd, summary order at 255 Fed.

20  App'x 593 (2d Cir. Nov. 29, 2007).  When a lawyer does not

21  inform his insurance company about an incident that leads to a

22  claim, under a subjective standard, the Court must determine

23  whether the insured lawyer thought his client would file a

24  claim; under an objective standard, the Court must determine

25  whether "a reasonable lawyer would know or could reasonably

8921wesd

1    foresee that [his mistake] might give rise to a malpractice

2    claim." *Id.* at *15-16.

3         Both sides in this action have spent significant

4    portions of their briefing arguing whether the language of

5    Exclusion B is ambiguous and whether the standard the Court

6    should apply is objective or whether it is subjective.

7    Plaintiff contends that Exclusion B is unambiguous and that the

8    objective standard should apply.  It contends that because

9    defendants here had knowledge of their allegedly wrongful acts

10   and could reasonably have foreseen a claim which would be made

11   against them prior to the effective date of the policy,

12   plaintiff need not defend or indemnify defendants in the

13   underlying malpractice suit.  Defendants contend that Exclusion

14   B should be interpreted under a subjective standard, and

15   because there was no evidence that defendants thought Ms. Asher

16   was planning to sue them, then the exclusion does not apply.

17   Defendants argue alternatively that even if an objective

18   standard applies, Westport's cases are inapposite because they

19   involve lawyers who clearly failed to carry out their

20   responsibilities as attorneys, such as failing to file suits

21   before the statute of limitations expired or failing to

22   prosecute cases.

23         Even under a purely objective standard, plaintiffs

24   have failed to demonstrate to the Court that the defendants

25   knew or should have known that a claim would arise from

8921wesd

1    Ms. Asher's failure to make her election before February 1,

2    2003.  No proof has been adduced that defendants were

3    responsible for electing Ms. Asher's benefits for her or for

4    advising her as to whether or not to make the election.  No

5    provision of the Stipulation either permitted or obligated the

6    law firm itself or the attorney on the case, Ms. Hennessey, to

7    exercise Ms. Asher's election to assume the term life policy or

8    retain the variable life policy.  (Defendants' 56.1 Statement

9    at ¶¶18-21; and the Hennessey Affidavit ¶13; Exhibit 1 in the

10   Hennessey Affidavit.)  The Appellate Division's decision of

11   February 24, 2004 did not involve defendants as part of the

12   opinion and did not even mention or refer to Hennessey or Cohen

13   Hennessey in any way.  It stated that "the stipulation is clear

14   and unambiguous in affording the wife until February 1, 2003 to

15   exercise her life insurance options."  See *J.A. v. S.A.*, 4

16   A.D.3d at 251.  Plaintiff points to the January 28, 2003 letter

17   from Mr. Asher's attorney to Ms. Hennessey, but that letter

18   states that he and his client "were waiting for Jayne [Asher]

19   to make her election regarding the life insurance policies,"

20   and even notes that a copy of the letter had been sent directly

21   to Ms. Asher.  (Exhibit H, Plaintiff's 56.1.)

22        Plaintiff argued that first, "a lawyer [needs to]

23   advise his or her client about a pending deadline and the

24   consequences of failing to meet it," and, second, even if the

25   deadline was not part of defendants' original duties, it was

8921wesd

1    part of their "peripheral duties" in representing Ms. Asher.

2    As to either point, the caselaw plaintiff cites is wholly

3    inapposite to this case.

4      In contending that lawyers must advise clients of a

5    deadline, which is true, plaintiff cites cases involving

6    lawyers who failed to file a case before the applicable statute

7    of limitations ran out, see, for example, *Goldberger & Dubin*,

8    2006 U.S. Dist. LEXIS 31329; *Ingalsbe v. Chicago Ins. Co.*, 270

9    A.D.2d 684,704 (3d Dep't 2000); *Bellefonte Ins. Co. v. Albert*,

10   99 A.D.2d, 947,472 (1st Dep't 1984); or failed to prosecute a

11   case, see *Mt. Airy Ins. Co. v. Thomas*, 954 F.Supp. 1073 (W.D.

12   Pa. 1997); or failed to take other necessary action, all

13   resulting in a case being dismissed, see, e.g., *Sirignano v.

14   Chicago Ins. Co.*, 192 F.Supp.2d 199 (S.D.N.Y. 2002) (failure to

15   provide opponent with expert report led to case being taken off

16   trial calendar, and, after a 15-month standstill, the case was

17   dismissed as abandoned); *Fogelson v. Home Ins. Co.*, 129 A.D.2d

18   508,514 (1st Dep't 1987) (attorney's failure to file an answer

19   led to a default judgment against the client.)  In those cases,

20   an attorney was retained to undertake some task and failed to

21   do so within the requisite time frame, to the client's

22   detriment.  In contrast, here, based on the evidence to date,

23   the law firm was not hired to advise Ms. Asher whether to elect

24   to assume the life insurance policies; it was hired to

25   represent her in her divorce action.  There is no evidence that

8921wesd

1    defendants knew they were responsible for electing Ms. Asher's

2    coverage on her behalf or even advising her as to whether it

3    was in her financial interests to make the election one way or

4    the other -- in fact, all the evidence in this record is to the

5    contrary.    Therefore, when Ms. Asher did not elect to purchase

6    Mr. Asher's life insurance policy by the contractual deadline,

7    there is nothing in the record to make defendants aware that

8    they had committed an allegedly negligent act, and therefore

9    they could not have reasonably foreseen that any negligent act

10   would have been the basis of a claim.

11        Similarly, in arguing that lawyers have undefined

12   duties to their clients that are peripheral to those which fall

13   within the duties for which lawyers were retained, the only

14   cases plaintiff cites involve lawyers who were hired to

15   commence workers' compensation proceedings and failed to advise

16   their clients to also file a personal injury action before the

17   statute of limitations ran out.    See *Greenwich v. Markoff*, 234

18   A.D.2d, 112 (1st Dep't 1996); *Davis v. Klein*, 224 A.D.2d 196

19   (1st Dep't 1996); *Campbell v. Fine*, 642 N.Y.S.2d 819 (N.Y. Sup.

20   Ct. New York County 1996).    Plaintiffs also point to a treatise

21   on legal malpractice which discusses this peripheral duty as a

22   lawyer's obligation to a client regarding legal needs

23   collateral to the original scope of the representation for

24   which a lawyer is obligated to advise his client.    See Mallen &

25   Smith, 1 Legal Malpractice § 8:2 (2008 ed.).    The treatise

1    states that "[t]he controlling standard is whether the remedy
2    or liability should have been apparent to the ordinary lawyer
3    under the circumstances.  The rationale is that, as between the
4    client and the lawyer, the latter is much more qualified to
5    recognize and analyze the client's legal needs." *Id.*  The cases
6    and the treatise are not on point on this, as they relate
7    specifically to legal duties, such as the duty to advise a
8    client as to the applicable statute of limitations for a
9    separate but related claim, which is, as I said, inapposite
10   here, where the duties to elect the benefits was vested in the
11   client, and even under an objective standard, as noted earlier,
12   there is no evidence that defendants knew or could reasonably
13   have known that they were responsible for electing Ms. Asher's
14   coverage on her behalf or advising her as to whether she should
15   elect those benefits.

16        There is no evidence in this record that defendants
17   should have made an election regarding life insurance on her
18   behalf or even advised her in that regard, and plaintiff has
19   pointed to no source of such a duty apart from the readily
20   distinguishable cases I've just discussed.  As a matter of law,
21   a reasonable lawyer in defendants' position would not have
22   known or reasonably foreseen that Ms. Asher's own failure to
23   elect her life insurance benefits might give rise to a
24   malpractice claim, even after the Appellate Division's
25   decision.  See *Goldberger*, 2006 U.S. Dist. LEXIS 31329, at

1   *15-16.  This is true even under an objective interpretation of
2   Exclusion B.  There are no genuine issues of material fact with
3   regard to the duty to defend on the record, and summary
4   judgment on the duty to defend is denied as to plaintiff and
5   granted as to defendants on their first and second
6   counterclaims.

7        Even if Exclusion B applied, Westport would be
8   required to defend Hennessey and Cohen Hennessey against
9   Ms. Asher's claims that did not relate specifically to the
10  failure to elect the life insurance benefits.  See *New York*
11  *Central Mut. Fire Ins. Co. v. Heidelmark*, 108 A.D.2d 1093,1095
12  (3d Dep't 1985) ("That the complaint 'asserts additional claims
13  which fall outside the policy's general coverage or within its
14  exclusionary provisions' does not free the carrier of this
15  obligation" to defend) (quoting *Seaboard Sur Co. v. Gillette*
16  *Co.*, 64 N.Y.2d 304,486 (1984)); see also *Ruder & Finn*, 52
17  N.Y.2d at 669.  (The duty to defend "includes the defense of
18  those actions in which alternative grounds are asserted, even
19  if some are without the [insurance] protection purchased.")
20  Ms. Asher's complaint claims, for example, that defendants
21  "fail[ed] to provide good, proper, honest and competent legal
22  advice," "breach[ed] the contractual retainer agreement between
23  the parties," and "incorrectly advis[ed] [her] as to the
24  meaning and import of the terms of the Stipulation and in other
25  ways, not yet known, act[ed] negligently."  (Complaint ¶19,

8921wesd

1    Exhibit D to Plaintiff's 56.1 Statement.)  Although most of the

2    Asher complaint does indeed focus on defendants' failure to

3    elect the life insurance benefits, her broad allegations would

4    not be subject to Exclusion B, as they do not necessarily arise

5    out of the failure to elect life insurance benefits.  The

6    allegations at least "suggest... a reasonable possibility of

7    coverage," and thus Westport has a duty to defend Hennessey and

8    Cohen Hennessey against those allegations in the underlying

9    action.  *Cook*, 7 N.Y.3d at 137 (quoting *Rapid-American Corp.*,

10   80 N.Y.2d at 648).

11            I wish to turn now to the duty to indemnify, which is

12   narrower than the duty to defend.  See *Ruder & Finn*, 52 N.Y.2d

13   at 669.  However, the New York courts have long held that:

14            "[a]n action to declare the insurer's duty to

15   indemnify is premature and does not lie where the complaint in

16   the underlying action alleges several grounds of liability,

17   some of which invoke the coverage of the policy, and where the

18   issues of indemnification and coverage hinge on facts which

19   will necessarily be decided in that underlying action."

20            *Hout v. Coffman*, 126 A.D.2d 973 (4th Dep't 1987); see

21   also *Spoor-Lasher Co. v. Aetna Cas. & Sur. Co.*, 39 N.Y.2d

22   875,876-77 (1976).  In the interests of economy and judicial

23   efficiency, a court has the ability to dismiss or stay an

24   insurance company's declaratory judgment action on the issue of

25   indemnity while the underlying action is decided.  See *Village*

8921wesd

of *Sylvan Beach*, 55 F.3d at 115-16; *United States Underwriters Ins. Co. v. Kum Gang, Inc.*, 443 F.Supp.2d 348,354-55 (E.D.N.Y. 1996). In *Kum Gang*, the court heard the portion of the suit relating to the insurers' duty to defend, but declined to exercise jurisdiction over whether the insurers were required to indemnify the policyholder, because that issue was "theoretical... [and] might be made moot by a finding of nonliability in the state court action." *Id.* 354-55.

Plaintiff's request for a declaratory judgment that it has no duty to indemnify is denied without prejudice because there has been no determination of liability in the underlying malpractice action.

The last area on this motion is the request for attorney's fees.

Under New York law, a liability insurer's obligation to defend its policyholder includes a defense against the insurer's own declaratory judgment action. *United States Underwriters Ins. Co. v. City Club Hotel, LLC*, 3 N.Y.3d 592,598 (2004); see also *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12,21 (1979); *Am. Home Assurance Co. v. Weissman*, 79 A.D.2d 923,924-25 (1st Dep't 1981). "An insured who is 'cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations,' and who prevails on the merits, may recover attorneys' fees incurred in defending against the insurer's action." *City Club Hotel*

8921wesd

1    (quoting *Mighty Midgets*, 47 N.Y.2d at 21).

2           Westport argues that it has no duty to either defend

3    or indemnify, and it thus should not have a duty to pay

4    defendants' costs in this suit.  The Court has already

5    determined that Westport has a duty to defend Hennessey and the

6    Cohen Hennessey law firm in the underlying suit, and thus

7    defendants have prevailed on the merits to that extent.

8    Furthermore, a policyholder is entitled to the cost of

9    defending against an insurer's declaratory judgment action that

10   has put the policyholder on the defensive, even if the insurer

11   did not provide the policyholder with a defense in the

12   underlying action.  *City Club Hotel*, 3 N.Y.3d at 598; see also

13   *Mighty Midgets*, 47 N.Y.2d at 21.  Westport put defendants on

14   the defensive here, and defendants are entitled to their

15   attorney's fees and costs incurred in defending this action.

16   Summary judgment is granted as to the defendant's fourth

17   counterclaim.

18           In sum, plaintiff's motion for summary judgment

19   seeking a declaration that it has no duty to defend the

20   underlying malpractice action and no duty to indemnify is

21   denied.  Defendants' motion for summary judgment declaring that

22   plaintiff has a duty to defend the underlying malpractice

23   action is granted (Counterclaim 1); and defendants' motion for

24   summary judgment on the second and fourth counterclaims is

25   granted.  A hearing will be scheduled on what constitutes

1    reasonable attorney's fees in regard to Counterclaims 2 and 4.

2            That's my decision.  I will enter a minute order that

3    says, for the reasons set forth on the record today, the

4    pending motions were decided as set forth in the opinion given

5    orally today.

6            I think what we have to do now is structure the

7    remaining part of the litigation.  So I'm going to ask in the

8    first instance that the attorneys attempt to do that and to

9    present me with a schedule of how they see this litigation, or

10   what remains of it, proceeding.  If the parties are unable to

11   do that, they should submit to me letters on their positions

12   and I'll bring you in and we'll structure the litigation going

13   forward.  So let me give you two weeks to do that, to have a

14   joint proposed schedule in two weeks, or notify me that you're

15   unable to reach an agreement and then I'll bring you in.  Or

16   you're unable to reach an agreement and present to me each

17   side's position and I'll bring you in.

18           Is there anything else I can do?  All right.

19           MR. ANESH:  Yes, your Honor.  Just a little

20   clarification, if you don't mind, on prevailing on the merits

21   in this case.  I think your Honor will agree that there is a

22   possibility that we could prevail on the merits in this

23   declaratory judgment action once we take discovery.  So if we

24   can prevail on the merits, why is an award of attorney's fees

25   in this action granted, if we could still prevail on the

8921wesd

1    merits?

2            THE COURT:  Given the fact that you have the

3    possibility, in your view, of discovery and this so-called

4    statement that they knew about it prior to commencement of the

5    policy date, that's your position; it depends upon future

6    discovery, correct?

7            MR. ANESH:  In both the state action that we received

8    and discovery here, we can prevail on the merits.

9            THE COURT:  All right.  Defense, do you have a

10   response?  What Mr. Anesh is really saying, because this action

11   is not over and he hopes to find that smoking gun that he

12   talked about in the settlement discussions that say, you knew

13   in advance of the commencement of this policy date that you

14   were going to be sued, that the client was dissatisfied and you

15   were going to be sued, why should he be obligated, as I think

16   he's correct in the decision as I've read it, for all of the

17   attorney's fees in this litigation?  Is there a response?

18           MR. KURLAND:  If I may, your Honor.

19           THE COURT:  Yes.

20           MR. KURLAND:  I think your Honor has made a judgment,

21   a decision that we're entitled to a defense of the underlying

22   action.  The insurance company breached their duty by not

23   providing a defense.  We have expended all of the money in this

24   lawsuit up to this date, in this lawsuit, Mr. Fried had

25   expended the money based upon their failure to provide a

1    defense and to bring this action. If they had done what they

2    were supposed to do in accordance with your Honor's decision --

3        THE COURT: No, I understand that, I understand that,

4    but the point Mr. Anesh is raising, I think, is saying in a

5    way, to the extent that the action continues, he hopes to I

6    guess be able to argue otherwise in the future based on what he

7    finds in discovery. Is that correct?

8        MR. ANESH: Yes, your Honor. Based upon what I find

9    in discovery taken in the underlying case and/or the discovery

10   I'm going to take in this case, pursuant to the schedule we

11   have to submit, I could prevail in this case, at which time I

12   wouldn't owe anything. So why am I being forced to pay legal

13   fees in this case now when I could prevail?

14       THE COURT: I understand the point. It's based on

15   future discovery in this case, as you say, or the underlying

16   malpractice case.

17       MR. ANESH: Future outcome of this case.

18       THE COURT: I understand.

19       MR. FRIED: Your Honor, the way that Westport has

20   structured this case, they've in a sense divided it in half.

21   We've now completed the first portion of the case where

22   Westport, by its motions, have sought to deprive us of our duty

23   to defend. The Court has issued an order and a judgment that

24   they're obligated to provide us a defense. We've spent close

25   to $80,000 in defending that action in this court, with regard

8921wesd

1    to the duty to defend.  The way I understand the Court's

2    decision is that up until today, having obtained a judgment on

3    the duty to defend, we're entitled to an order to recover our

4    attorney's fees for that portion of the case.  If at the end of

5    the case -- if at the end of the case Westport should win, then

6    of course we're not going to renew that motion with regard to

7    the second portion of the case.  But if we prevail at the end

8    of this case, then we would make a second motion that our

9    attorney's fees be reimbursed from today going forward.  And

10   that's what I think the caselaw says, the *Mighty Midgets* case

11   says.  When a policyholder is put in a defensive posture by an

12   insurance company seeking to withdraw its obligation to provide

13   a defense, the insurance company has to reimburse the

14   policyholder's expenses.

15           THE COURT:  Probably would have made more sense for

16   Westport to move for summary judgment after it had a basis for

17   discovery in this case under its belt.  But go ahead.

18           MR. ANESH:  Well, your Honor, the reason we didn't is,

19   we thought we had -- based on the objective standard, we would

20   save insurer defense costs.  But there is no basis in law to

21   hold us responsible for these fees because we could ultimately

22   prevail in this case.  We can win this case.  And I believe we

23   will win this case.  And there's no basis in law or fact to

24   hold us responsible for legal fees in this case.  Yes, your

25   Honor has decided we owe the defense obligation.  We're going

8921wesd

1    to pay for that.  We understand that.  But there's no basis in

2    law or fact to hold us responsible for fees in this case

3    because we can ultimately prevail in this case.

4              THE COURT:  All right.  I understand that.  I was

5    dealing with the record as I had it.  And what you're saying

6    is, it can change over time in connection with discovery that

7    you find.  I'm actually correct, I believe, on the record as it

8    exists, but you're raising the point that it can change in the

9    future.  That's your real point.

10             MR. FRIED:  Your Honor, can I just make one point?

11             THE COURT:  Yes.

12             MR. FRIED:  You cited in your opinion the *Cook* case

13   from the New York State Court of Appeals.  That case makes it

14   explicitly clear that when an insurance company wants to

15   disclaim coverage for defense costs, it's limited by the facts

16   contained in the complaint.  They cannot use information

17   outside of the complaint to overcome their obligation to

18   provide a defense.  Here, what Westport is doing --

19             THE COURT:  You mean in the Asher complaint.

20             MR. FRIED:  Correct.

21             THE COURT:  Go ahead.

22             MR. FRIED:  In the Asher complaint.  They have to look

23   within the four squares of the Asher complaint.

24             THE COURT:  Right.

25             MR. FRIED:  And they can't use information extraneous

1    to the complaint, discovery information, information outside of

2    that complaint, in order to prove they have no obligation to

3    defend.  Here, what you've done is you've looked at the Asher

4    complaint, you've looked at the policy, and you've determined,

5    based upon those two documents, that they have an obligation to

6    defend.

7           THE COURT:  Well, yes, that's true, and that's exactly

8    what I had on these cross-motions for summary judgment.  He's

9    saying but that can change is what he's saying.

10          MR. FRIED:  Well, that could change, but that only

11   affects their obligation to provide indemnification.  But even

12   if the Court were to find at the end of the case that they had

13   no obligation to provide a defense, there's nothing in the

14   policy that requires us to reimburse to Westport the monies

15   that they paid to provide us with a defense.  And as a

16   consequence, having expended a lot of money to defend their

17   action, to deprive Cohen Hennessey of their right to defense,

18   we should be entitled to our attorney's fees, their attorney's

19   fees under the *Mighty Midgets* case, because they bifurcated

20   this case in half.  They've lost the first half.  Now they want

21   to try to win the second half.  Whether they win the second

22   half or not, I guess through discovery we'll find out.  But

23   having lost the first half on the *Mighty Midgets*, we should be,

24   as the Court has ordered, reimbursed the attorney's fees.

25          THE COURT:  All right.  Mr. Anesh, within a week

8921wesd

1    submit to me, I guess it would be in the form of a motion to

2    reargue that part of the decision within whatever time period

3    you have.  Do it within ten days.

4              MR. ANESH:  Can I have by next Friday, your Honor?

5              THE COURT:  Sure.  And then ten days for a response.

6    To reargue that portion that grants summary judgment on the

7    counterclaim requiring you to pay the costs of this action.

8              MR. ANESH:  Yes, your Honor.

9              THE COURT:  I want to limit it to that.  And I'll take

10   a fresh look at that.

11             MR. ANESH:  I understand, your Honor.  Thank you, your

12   Honor.

13             MR. FRIED:  Thank you, your Honor.

14             MR. KURLAND:  Thank you.

15             THE COURT:  Thank you.

16                              o0o

17

18

19

20

21

22

23

24

25